57

United States District Court
Southern District of Texas
FILED

NOV 0 2 1999

Michael N. Milby
Clerk of Court

IN THE U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JOSE GARCIA, Individually and
as Representative of the Estate
of MANUEL CRUZ, IDALIA GARCIA,
Individually; and CYNTHIA COX as
Next Best Friend of Brittany Cox,

vs.

BRK BRANDS, INC.

: CIVIL ACTION
:
:
:
: NO. B-98-186
:
:
:
:

SUR-REPLY IN SUPPORT OF THE MOTION OF
DEFENDANT BRK BRANDS, INC. TO DISMISS THE
FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF
CYNTHIA COX AS NEXT FRIEND OF BRITTANY COX

PRELIMINARY STATEMENT

1. Defendant, BRK Brands, Inc., submits this Sur-Reply to the supplemental filings of counsel for plaintiff Cynthia Cox on October 12 and 26, 1999 in opposition to defendant's Motion to Dismiss.

2. BRK has moved to dismiss plaintiff's First Original Amended Petition[1] on the grounds that the common law does not impose requirements as to how well a product must perform its intended function and, therefore, plaintiff has failed to allege

---

[1] To the extent plaintiffs Jose Garcia and Idalia Garcia have moved this Court to amend their Petition to include the same allegations as Ms. Cox, BRK's papers are equally applicable.

the breach of a legally cognizable duty BRK owed to plaintiff or that the breach of a duty caused plaintiff's injuries. Alternatively, BRK asserts that liability cannot be imposed upon it for a smoke detector's failure to perform an unintended function.

3. None of the materials or case law plaintiff offers in her Supplemental Response undermines this position.

## ARGUMENT

A.  **Information Subject to the Court's Review Under Rule 12(b)(6)**

4. In her supplemental response filed on October 12, 1999, plaintiff puts before this Court new averments of fact and information far beyond what this Court is permitted to review when considering a motion to dismiss. Specifically, as to the deposition testimony of David Minnis taken in an unrelated matter, even if it were accurate, reliable and relevant, Mr. Minnis' testimony could not be considered by this Court when deciding the sufficiency of plaintiff's amended pleading.

5. More importantly, however, the Minnis deposition testimony and other evidence would, at most, tend to establish that a particular model of BRK smoke detectors may be ineffective at detecting smoke. Plaintiff's attempt to support her factual assertions that BRK's smoke detectors were of a poor

2

quality is not even responsive to BRK's contention that tort law does not provide a remedy for a product's purported failure to perform its intended function. Indeed, for purposes of the BRK's Motion to Dismiss (and only for this purpose), BRK assumes, as it must, that its smoke detector was ineffective in detecting smoke from an unwanted residential fire. Liability cannot be imposed upon BRK on this basis if it had no duty to provide effective smoke detectors.

6. BRK must nevertheless note that Mr. Minnis' testimony about BRK's alleged falsification of test results over fifteen years ago, with respect to a model detector different than the detector alleged to be involved in this case, does not even support plaintiff's allegations. This is particularly true in that Mr. Minnis is a disgruntled former employee who raised these claims only after he was terminated and summary judgment was entered against him in litigation he subsequently commenced against BRK. His allegations are belied by his own documents and the testimony of past and present employees of BRK.

B. **Plaintiffs' Claims are Not Recoverable in Tort.**

7. Plaintiffs do attempt to identify case authority in Texas recognizing a cause of action to recover in tort based upon a product's failure to perform its intended function and

3

prevent injury to a plaintiff from harm it neither created nor aggravated by referring to <u>Koonce v. Quaker Safety Products and Manufacturing Co.</u>, 798 F.2d 700 (5th Cir. 1986) and <u>Rawlings Sporting Goods Co., Inc. v. Daniels</u>, 619 S.W.2d 435 (Ct. App. Tex. 1981). While these decisions allowed a plaintiff to recover against a product manufacturer simply because a product failed to prevent harm, they must be understood in the context of the well recognized distinction Texas courts have uniformly drawn between tort and contract claims. (See cases cited at page 14-17 of BRK's Memorandum of Law in Support of its Motion to Dismiss.)

    8. The distinction the law draws between tort recovery for physical injuries and warranty recovery is not arbitrary and does not rest on the "luck" of the plaintiff in having an accident causing physical injury. <u>Two Rivers Co. v. Curtiss Breeding Service</u>, 624 F.2d 1242, 1248 (5th Cir. 1980). Rather, the distinction rests on understanding the nature of the responsibility of a manufacturer in distributing its products. Although a manufacturer can be held liable in tort for physical injury caused by its defective product, it cannot be held liable in tort for the quality of the product's performance. <u>Id</u>.

    9. Furthermore, a strict liability claim is set within the background principle that manufacturers are not liable

4

simply because the use of their product involves some risks. See, Sandage v. Bankhead Enterprises, Inc., 177 F.3d 670, 673 (8th Cir. 1999). Instead, the law focuses its efforts on defects that are unreasonably dangerous. Where the allegations of product defect do not render a product "unreasonably dangerous", but only ineffective, there is no product liability cause of action. Texsun Feed Yards, Inc. v. Ralston Purina Co., 447 F.2d 660, 666-67 (5th Cir. 1971). See also, Aronson's Men's Stores, Inc. v. Potter Elec. Signal Co., 632 S.W.2d 472, 474 (Mo. 1982)(although the alarm system may have been defective, it was not unreasonably dangerous). Therefore, Koonce and Rawlings Sporting Goods standing alone cannot be viewed as overruling Texas' well-settled authority.

10. This is particularly so in that well after Koonce was decided, the Fifth Circuit reaffirmed in Scallan v. The Duriron Co. Inc., 11 F.3d 1249 (5th Cir. 1994) that a plaintiff may not state a claim in tort based upon a product's failure to prevent harm. In Scallan, a plaintiff was not permitted to recover when chlorine mixing with inert gases went undetected because of a defective leak monitoring device and ultimately resulted in an explosion that caused plaintiff's injuries.

11. Moreover, in Scallan, the Fifth Circuit cited with approval the Eighth Circuit's decision in Linegar v. Armour of

5

America, Inc., 909 F.2d 1150 (8th Cir. 1990). In Linegar, the wife of a murdered state patrolman claimed that a "bullet-proof" vest, manufactured by the defendant and worn by the decedent patrolman at the time of his death, was defective in that it left unprotected an area below the patrolman's arms. It was in this area that the fatal shots entered the patrolman's body. The "contour" style vest issued to the decedent was one of several types then on the market, others providing protection for the area below the armpit.

12. The Linegar court held that, as a matter of law, the product was not defective nor unreasonably dangerous because it did not cause the patrolman's injuries. Linegar, 909 F.2d at 1154. The court reasoned that it is not the place of courts or juries to set specifications as to the parts of the body a bullet-resistant garment must cover. The court further reasoned that:

> A manufacturer is not obliged to market only one version of a product, that being the very safest design possible. If that were so, automobile manufacturers could not offer consumers sports cars, convertibles, jeeps, or compact cars. All boaters would have to buy full life vests instead of choosing a ski belt or even a flotation cushion.

Linegar, 909 F.2d at 1154.

6

13. The court specifically gave special attention to safety products, stating "Personal safety devices, in particular, require personal choices, and it is beyond the province of courts and juries to act as legislators and preordain those choices." Id. Similarly, if courts impose a requirement upon smoke detector manufacturers to manufacture only the "best" detector possible, as opposed to "safe" detectors, the manufacturers may be threatened with economically devastating litigation because, although they now market a wide variety of smoke detectors, the choices they provide must necessarily include a variety of safe, albeit not the "best" models.

14. Moreover, the arguments as to lack of duty which BRK asserts here were not raised in either Koonce or Rawlings Sporting Goods. These decisions are not persuasive even in their analysis of the issues presented, particularly in that the Rawlings Sporting Goods court reached the rather startling conclusion that a football helmet manufacturer was required to warn of the obvious fact that football players may sustain head injuries even while wearing a helmet. In any event, in Koonce and Rawlings Sporting Goods, the plaintiffs only stated failure to warn claims and, thus, those decisions would support only a warnings cause of action.

7

15. Plaintiff also cites <u>In re Metcalf</u>, 530 F.Supp. 446 (S.D. Tex. 1981), <u>Ford Motor Co. v. Durrill</u>, 714 S.W.2d 329 (Tex. App. Corpus Christi 1986) and <u>Jampole v. Touchy</u>, 673 S.W.2d 569 (Tex. 1984)[2]. However, in each of these cases a defective product caused direct physical injury to the plaintiff. In <u>Metcalf</u>, defendant's failure to install fire retardant materials behind and above a stove directly led to the spread of a fire that resulted in personal injury. In both <u>Jampole</u> and <u>Ford</u>, the plaintiffs were not injured as a result of a car accident, but were injured when defective fuel systems resulted in post-accident fires that directly caused physical injury.

16. Here, plaintiff admits that the smoke detector did not produce any carbon monoxide or cause any direct physical harm[3]. The gas-fueled space heater in Mr. Cruz' house would have continued to produce (and apparently did) carbon monoxide regardless of whether the smoke detector properly operated. The BRK detector in Mr. Cruz' house did not produce or increase the

---

[2]   The opinion cited by plaintiff appears to be a discovery opinion, not related to the issues in this case.

[3]   Plaintiff's counsel has represented that, "We're not saying the smoke detector killed...this man by asphyxiation. I don't think there's any other source but the heater." (Transcript of May 13, 1999 hearing, page 18, lines 1-5, attached to BRK's motion at Exhibit "D".)

8

production of carbon monoxide. Accordingly, <u>Metcalf</u>, <u>Ford</u> and <u>Jampole</u> have no relevance to the issues raised in the instant motion.

17. Plaintiff also cites to decisions of courts from other jurisdictions, in <u>Butler v. Pittway Corp.</u>, 770 F.2d 7 (2d Cir. 1985); <u>Pearsall v. Emhart Industries, Inc.</u>, 599 F.Supp. 207 (E.D.Pa. 1984); <u>Carruth v. Pittway Corp.</u>, 643 So.2d 1340 (Ala. 1994) and <u>Interstate Engineering, Inc. v. Burnete</u>, 474 So.2d 624 (Ala. 1985), for the proposition that she has adequately asserted a tort claim against BRK, as the manufacturer of a smoke detector. Once again, the defendants in <u>Carruth</u> and <u>Interstate Engineering</u> did not contend that the plaintiffs could not prove the breach of a duty imposed at law. As such, these cases cannot be considered authority in opposition to BRK's Motion to Dismiss in this case. Furthermore, neither <u>Butler</u> nor <u>Pearsall</u> are persuasive and this court should follow Texas law and the Eighth Circuit's compelling analysis in <u>Linegar</u> and other cases rendering the same result. <u>Curtis v. General Motors Corp.</u>, 649 F.2d 808, 811 (10th Cir. 1981); <u>Dyson v. General Motors Corp.</u>, 298 F. Supp. 1064, 1073 (E.D. Pa. 1969).

18. In <u>Butler</u>, the Second Circuit held that liability could be imposed upon the manufacturer of a smoke detector for the injuries a plaintiff sustained in a fire because a smoke

9

detector's failure to alarm in a timely manner could result in the plaintiff suffering harm he would not have experienced if the detector had alarmed earlier. The court therefore reasoned that the detector's failure to alarm may have "enhanced" the plaintiff's injuries, and concluded liability could be imposed based upon cases assessing liability in tort against a manufacturer where a defective product aggravates or enhances the injuries after an initial impact.

19. However, in the cases upon which the Second Circuit relied, the product caused additional injuries which the plaitiff would not have suffered if that product were not present. See, Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir. 1968)(defect in steering aggravated injuries). Conversely, where a smoke detector allegedly fails timely to alarm, the plaintiff suffers only those injuries he would have sustained if the detector had never been installed. In other words, the detector in no manner made the situation worse[4].

---

[4] In her October 12th Supplemental Response, plaintiff cites Laaperi v. Sears, 787 F.2d 726 (1st Cir. 1986). However Laaperi relies heavily upon the rational of the Second Circuit in Butler in holding a smoke detector manufacturer may be liable under a duty to warn theory. Consequently, Laaperi should not be considered by this Court as authority for the same reasons this Court should not consider Butler authoritative.

10

20. The Second Circuit's decision is also difficult to harmonize with its own statement in its opinion that a manufacturer "cannot be held [liable] for the level of performance of his products in the consumers business unless he agrees that the products was designed to meet the consumer's demands." <u>Butler</u>, 770 F.2d at 11. <u>See also, Two Rivers</u>, 624 F.2d at 1248 (5th Cir.). Given this statement, the <u>Butler</u> decision should be limited to its facts and to the proposition that a manufacturer can only be held liable for a malfunction. <u>Butler</u> does not support imposing liability upon BRK in the instant action where plaintiff alleges that the smoke detector failed to meet a performance standard BRK never intended to satisfy.

## CONCLUSION

21. In light of the above, defendant, BRK Brands, Inc., respectfully requests this Honorable Court dismiss the First Amended Original Complaint of plaintiff Cynthia Cox as Next Friend of Brittany Cox and award it fees, costs and grant such other further relief as the Court deems appropriate.

11

Respectfully submitted,

**ROERIG, OLIVEIRA & FISHER**

BY: _____
Rene O. Oliveira
State Bar No. 15254700
Cameron County I.D. No. 3507
Elizabeth G. Neally
State Bar No. 14840400  Fed. Bar #8044
Cameron County I.D. No. 3506
855 West Price Road, Suite 9
Brownsville, TX 78520
Tel: 956/542-5666
Fax: 956/542-0016

**COZEN AND O'CONNOR**
ROBERT W. HAYES
JAMES HELLER
TERRY M. HENRY
1900 Market Street
Philadelphia, PA 19103
Tel: 215/665-2000
Fax: 215/665-2013

PHILA1\1126485\1 077252.000