*93*

**IN THE U.S. DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District C... ...
Southern District of Texas
FILED

**MAR 3 1 2000**

Michael N. ......./
Clerk of Court

| | | |
|---|---|---|
| JOSE GARCIA, Individually and | : | |
| IDALIA GARCIA, Individually and | : | |
| as Representative of the Estate | : | CIVIL ACTION |
| of MANUEL CRUZ, and CYNTHIA COX as | : | |
| Next Best Friend of Brittany Cox, | : | NO. B-98-186 |
| | : | |
| vs. | : | |
| | : | |
| BRK BRANDS, INC. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC. TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFFS JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ

### PRELIMINARY STATEMENT

1. In this action, Manuel Cruz died when a propane space heater produced or leaked fatal levels of carbon monoxide. Plaintiffs, representatives and heirs of Mr. Cruz, seek to impose liability upon defendant BRK Brands, Inc. ("BRK") for Mr. Cruz' death based upon allegations that a BRK First Alert brand smoke detector failed to alarm even though this detector did not directly inflict physical harm or start in motion a series of events that resulted in Mr. Cruz' death. Simply stated, nothing the BRK smoke detector did or failed to do resulted in physical harm to Mr. Cruz, or could have prevented the harm Mr. Cruz suffered. Smoke detectors are not intended to serve as carbon monoxide detectors.

MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.
TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS
NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFFS
JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ

**PAGE 1**

2. Under these circumstances, as a matter of law, liability cannot be imposed upon BRK. A product manufacturer cannot be held liable in tort where the product has not caused physical injury. Tort law is reserved for those who are injured as a result of a defective product. In this case, Plaintiffs do not allege that the smoke detector caused direct physical harm and is, therefore, not entitled to bring a tort claim against BRK for the failure of the smoke detector to operate as intended.

3. Even if Plaintiffs could assert a cause of action based upon a product's failure to perform its intended function, Plaintiffs have failed to plead any facts which would demonstrate the existence of a defect in the smoke detector, or that the smoke detector failed to perform its intended function when it allegedly did not timely alarm in response to carbon monoxide in Mr. Cruz' house. A product manufacturer cannot be held liable for injury resulting from an incident against which the product was not intended to protect. BRK simply has never claimed that smoke detectors will alarm in response to carbon monoxide produced by a space heater. Moreover, the industry and government standards to which smoke detectors are manufactured do not require that they provide early warning of carbon monoxide poisoning hazards.

4. Finally, although it is unclear from Plaintiffs' First Amended Original Complaints, it appears as though Plaintiffs may be pursuing causes of action for breach of warranty, violation of the Texas Deceptive Trade Practices Act, civil conspiracy and violation of the Consumer Product Safety Act. For the reasons discussed

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.**    **PAGE 2**
**TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS**
**NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFFS**
**JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ**

below, Plaintiffs have failed to adequately plead, and BRK respectfully submits that they cannot plead, one or more of the elements to these purported causes of action and they should therefore be dismissed.

## BACKGROUND

### A.   Procedural History

5.   On December 16, 1997, Manual Cruz was discovered dead in his home at 190 Thomae Lane, San Benito, Texas. Plaintiffs allege that Mr. Cruz died of asphyxiation (paragraph 2.0 of the Amended Complaint), which is technically accurate, but fails to adequately explain Mr. Cruz' cause of death. Mr. Cruz' asphyxiation was the result of carbon monoxide poisoning. (See the Certification of Death and pathology report attached to BRK's motion as Exhibit "B".)[1] Plaintiffs have not alleged, nor do the facts support a conclusion, that there was a fire in Mr. Cruz' home, that the carbon monoxide was produced by a fire or that the smoke detector emitted the carbon monoxide[2].

6.   On November 24, 1998 all Plaintiffs, represented by the Law Offices of Mark Cantu, filed suit in Texas State Court against BRK seeking in to impose liability upon it for Mr. Cruz' death. Thereafter, BRK removed the action to this Court.

---

1    BRK respectfully requests this court take judicial notice of these documents in considering its motion pursuant to Fed.R. Civ.P. 12(b)(6). <u>See</u>, Argument section, <u>infra</u>.
2    Mr. Cruz' carbon monoxide poisoning was brought about by the continuous operation of an un-vented propane space heater in his home.

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.**      **PAGE 3**
**TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS**
**NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFFS**
**JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ**

7.   Following BRK's motion to prove authority and a hearing before Magistrate Judge Black on June 13, 1999, attorney Ray Marchan entered his appearance for Plaintiff Cynthia Cox as Next Friend of Brittany Cox.  Thereafter, by leave of Court, Mr. Marchan filed a First Amended Original Complaint on behalf of Cynthia Cox as Next Friend of Brittany Cox, and Shire Salinas filed a First Amended Original Complaint on behalf of Jose Garcia, Individually, and Idalia Garcia, Individually, and as Representative for the Estate of Manuel Cruz ("Amended Complaints").  It is these pleadings that are the subject of this motion.

8.   The basis of all of Plaintiffs' claims against BRK rest upon the simple factual allegation that Mr. Cruz died of asphyxiation, "when the smoke detector in his home failed to warn him of the smoke in his house."  (Paragraph 2.0 of the Amended Complaints, Exhibit "A".)[3]  In fact, Plaintiffs have represented to this Court the opposite; that there was no fire, that the smoke detector did not kill Mr. Cruz by asphyxiation and that there was no other source of the carbon monoxide but the heater.  (Transcript of May 13, 1999 hearing, page 18, lines 1-5 and page 33, line 25 to page 34, line 1, Exhibit "D".)  Plaintiffs make no allegation connecting the alleged smoke in Mr. Cruz' home and the cause of Mr. Cruz' death.  Rather, the remainder of Plaintiffs' pleadings consists of broad, conclusory and vague allegations of wrong-doing

---

[3]   BRK contends that there was no "smoke" produced by an unwanted fire in Mr. Cruz' house.  Rather, the propane space heater may have produced soot, the product of the incomplete burning of propane as the oxygen in Mr. Cruz' house was consumed.

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.**      **PAGE 4**
**TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS**
**NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF  PLAINTIFFS**
**JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ**

by BRK and boilerplate conclusions of law that is extremely
confusing and unclear.

9.   As best as can be determined, in Counts IV and V
Plaintiffs allege that BRK had a duty to design, manufacture,
distribute, sell, inspect and provide adequate instructions and
warnings for the smoke detector and its components, that BRK
breached this duty, and that Plaintiffs' alleged injuries were
proximately caused by BRK's breach of its duty. (Amended
Complaints, paragraphs 4.0 and 5.01, Exhibit "A-1" and "A-2".)
These would appear to be Plaintiffs' negligence allegations.

10.   In Counts III and VI, Plaintiffs allege that BRK
designed, manufactured, distributed and sold the smoke detector
installed in Mr. Cruz' home, that the smoke detector was being used
in a reasonably foreseeable manner, that it was defectively
designed and/or lacked an adequate warning making it unreasonably
dangerous, and that the unreasonably dangerous condition of the
smoke detector was the cause of Plaintiffs' alleged injuries.
(Paragraphs 3.0, 6.01, 6.02 and 6.03, Exhibit "A-1" and "A-2".).
These are Plaintiffs' strict liability allegations.

11.   In Counts IV and VI, BRK believes that Plaintiffs try to
set forth a cause of action that BRK breached certain warranties
and violated the Texas Deceptive Trade Practices Act.  Plaintiffs'
allegations are that BRK impliedly and expressly guaranteed that
the smoke detector would perform its designed function without
failure, that BRK breached this warranty, and that as a result of
BRK's breach of warranty, Plaintiffs' were injured and entitled to

bring an action pursuant to the Deceptive Trade Practices Act. (Paragraphs 4.0 and 6.06, Exhibit "A-1" and A-2".)

12. Among the more inflammatory and scandalous accusations in Plaintiffs' Amended Complaints are their allegations that BRK engaged in a civil conspiracy. Plaintiffs' allegations which appear to attempt to set forth a cause of action for civil conspiracy are that BRK and the domestic smoke detector industry used the political process and their economic power to control the adoption of federal, state or industry minimum regulatory standards, that BRK and others seized and maintained control over industry trade organizations by various methods, BRK and others actively worked for the appointment of sympathetic political appointees to regulatory agencies, and BRK and others planned and agreed to resist the adoption of adequate safety standards, delay effective dates for new standards and seek minimal standards as opposed to realistic standards. (Paragraphs 8.0, 8.02, 8.03(A), 8.03(B), 8.03(C) and 8.05, Exhibit "A-1" and "A-2".)

13. It is unclear whether Plaintiffs also seek to recover pursuant to the Consumer Product Safety Act (CPSA). In any event, Plaintiffs contend that BRK concealed from the public and government agencies defects and dangers associated with its smoke detectors, BRK diverted, mislead and confused investigations by the Consumer Product Safety Commission (CPSC) and the U.S. Congress, and that the BRK smoke detector created a substantial product hazard as defined by the CPSA. (Paragraphs 8.03(H), 8.03(I), 8.03(J), 8.03(L) and 8.07.)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.**          **PAGE 6**
**TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS**
**NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFFS**
**JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ**

14.  Plaintiffs' Amended Complaints also allege, in broad, conclusory form, and without any supporting factual allegations, that BRK engaged in deceptive acts and/or made intentional misrepresentations in its advertising.  Plaintiffs contend that BRK engaged in a pattern of deception aimed at misleading and confusing government agencies.

15.  Although Plaintiffs have filed their 16 page Amended Complaints, they have failed to adequately plead any claim against BRK.  Plaintiffs have failed to articulate any theory concerning how the smoke detector was defective and how that theory relates to the facts of this case, a carbon monoxide poisoning.

## B.  Smoke Detector

16.  Many potentially dangerous conditions may exist in a home.  Smoke detectors are designed to protect against one such hazard, fire.  Carbon monoxide poisoning, on the other hand, is a different hazard that may exist in any house depending upon the type of appliances in the home.

17.  Carbon monoxide is a colorless, odorless, tasteless gas that is produced by the incomplete burning of solid, liquid and gaseous fuel, usually from fuel-burning appliances in the home. Carbon monoxide is particularly dangerous because its presence is impossible to detect with out the aid of a specific instrument and the symptoms of carbon monoxide poisoning are often disguised as the flu.  There is a specific home safety device, a carbon monoxide

CMPDF - www.fasiio.com

detector, designed to detect and give early warning of carbon monoxide poisoning dangers.

18. Smoke detectors, on the other hand, are designed to provide consumers early warning of a fire in the home by sensing smoke produced by the fire. Smoke detectors are not capable of detecting, nor do they claim to be able to detect, carbon monoxide from any source.

19. One of the standards Plaintiffs claim BRK and others conspired to influence in their Amended Complaints clearly state that it covers "Single and Multiple Station Smoke Detectors". Underwriters Laboratory (UL) Standard 217 for smoke detectors defines its scope as:

> These requirements cover electrically operated single and multiple station smoke detectors intended for open area protection in ordinary indoor locations of residential units in accordance with the Standard for household Fire Warning Equipment, NFPA 74...

> * * * *

> A single station smoke detector, as defined by these requirements, is a self-contained fire alarm device that consists of an assembly of electrical components including a smoke chamber, alarm sounding appliance, and provision for connection to a power supply source...

CibPDF - www.fenito.com

UL Standard 217, §§ 1.1 and 1.2, 4th ed., 1993.[4]

20.  Products manufactured to these standards are not concerned with detecting or giving early warning of the presence of carbon monoxide.  Rather, they are designed to detect smoke produced by unwanted residential fires and to provide consumers an audible warning of the fire.  Plaintiffs do not claim, nor is there evidence to support a conclusion that the smoke detector in this case was designed or intended to detect or give early warning of a carbon monoxide poisoning hazard.

## ARGUMENT

### A.    Standard for Dismissal Under Rule 12(b)(6)

21.  A motion to dismiss is a procedural device designed to test the sufficiency of Plaintiffs' case at an early stage of the proceedings.  Although courts are reluctant to dismiss claims unless it is clear they are without legal basis, they are also loathe to force a Defendant to incur the cost and expense in defending a cause of action which does not set forth a claim upon which relief can be granted.

22.  There are two primary principles that guide a Court's review of a complaint.  First, a Court must accept as true all well pleaded facts in the complaint, liberally construing the complaint in favor of the plaintiff. Miller v. Stanmore, 636 F.2d 986, 988

---

[4]    UL 217 is attached to BRK's motion as Exhibit "C".   BRK respectfully requests this Court take judicial notice of its provisions, as expressed in the Argument Section, infra.

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.**
**TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS**
**NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFFS**
**JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ**

**PAGE 9**

(5th Cir. 1981). However, it need not accept as true conclusory or boilerplate allegations or conclusions of law. <u>Associated Builders, Inc. v. Alabama Power Company</u>, 505 F.2d 97, 100 (5th Cir. 1974). Second, a complaint should be dismissed for failure to state a claim where it appears beyond doubt that the Plaintiffs can prove no set of facts in support of his claim that would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957) and <u>Dike V. School Board of Orange County, Florida</u>, 650 F.2d 783, 787 (5th Cir. 1981).

## B.    Information Subject to the Court's Review on s Motion to Dismiss

23. In deciding a motion to dismiss for failure to state a claim, courts must generally limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint. <u>Lovelace v. Software Spectrum, Inc.</u>, 78 F.3d 1015 (5th Cir. 1996). However, courts may also consider matters of which they may take judicial notice. Fed.R.Evid. 201(f) (Judicial notice may be taken at any stage of the proceeding.) Federal Rule of Evidence 201(b) permits a court to take judicial notice of a fact that is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

24. For example in <u>Lovelace</u>, <u>supra</u>, the court held that when deciding a motion to dismiss a claim for securities fraud, a court may consider the contents of relevant public documents. In so holding, the court reasoned that it was highly impractical and

inconsistent with Fed.R.Evid. 201 to preclude the consideration of such documents (SEC filings) on a motion to dismiss an action that is based upon allegations of material misrepresentation. <u>Lovelace</u>, 78 F.3d at 1018, n1. The documents in <u>Lovelace</u> were required to be filed by law, and their authenticity could not seriously be questioned. Furthermore, the documents being considered by the court were the very documents Plaintiffs alleged contained the misrepresentations.

25. In the instant matter, BRK respectfully requests this Court consider the Certification of Death prepared by Justice of the Peace Benny Ochoa and the pathology report prepared by Dr. Davenport following his autopsy of Mr. Cruz. The Certification of Death is an official document filed with the Texas Department of Health - Bureau of Vital Statistics. Similarly, Dr. Davenport performed the autopsy at the request of the Port Isabel Justice of the Peace and was required to prepare the official report. The death certificate and pathology report bear directly upon the cause of Mr. Cruz' death and their authenticity cannot be seriously questioned. (Exhibit "B".)

26. Likewise, BRK requests this Court consider UL Standard 217 as a matter of judicial notice. UL 217 is the primary standard to which manufacturers design and manufacture single and multiple station smoke detectors. By inference, it is one of the standards Plaintiffs claim BRK conspired to obstruct, delay and influence. BRK does not offer UL 217 for the Court's review to determine if the smoke detector in this case met the standard. Rather, even

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.**      **PAGE 11**
**TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS**
**NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFFS**
**JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ**

assuming for the purposes of this motion, that the smoke detector did not meet UL 217 standards, Plaintiffs fail to state a claim in that the standard does not, in anyway, require a smoke detector to detect carbon monoxide. (Exhibit "C".)

27. Finally, this Court must remain cognizant of comments made by Plaintiffs' counsel in open court and on the record, especially when those comments go to the heart of Plaintiffs' contentions in this case. Therefore, it is entirely appropriate for this Court to consider the transcript of the proceedings before the Court that took place on May 13, 1999. (Exhibit "D".)

## C.   Plaintiffs' Claims are Not Recoverable in Tort.

28. Product liability and related tort remedies are not available where Plaintiffs' claims amount to failure of the product to perform as expected. Nobility Homes of Texas, Inc. v. Shivers, 557 S.W.2d 77 (Tex. 1977). In Texas, tort claims require that the product cause physical harm to the plaintiff. See, Keith v. Stoelting, Inc. 915, F.2d 966, 998 (5th Cir. 1990) and cases cited therein. There is no difference between a product that is unusable because of a defect and one that causes physical harm to itself because of a defect. Arkwright-Boston Manufacturers Mutual Insurance Company v. Westinghouse Electric Corp., 844 F.2d 1174, 1177-78 (5th Cir. 1988); Mid Continent Aircraft Corp. v. Curry County Spraying Service, 572 S.W.2d 8 (Tex. 1978).

29. A product manufacturer is liable in tort only where a defective product in fact causes harm to the user or consumer.

See, Bennet v. PRC Public Sector, Inc., 931 F.Supp. 484, 501 (S.D.Tex. 1996)(repetitive stress injury allegedly caused by keyboard) and Oser v. WalMart Stores, Inc., 951 F.Supp. 115, 118 (S.D.Tex. 1996)(slip and fall allegedly caused by defective plastic bag). Accord, McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787, 788-89 (Tex. 1967)(adopting Restatement (Second) Torts, §402A). In Kelley v. American Heyer Schulte Corp., 957 F.Supp. 873 (W.D.Tex. 1997) dismissed 139 F.3d 899 (5th Cir.), the court dismissed plaintiff's tort claims because she could not show that her breast implants were capable of causing the injuries she alleged.[5] The court reasoned plaintiff must show that the product was capable of causing the injury of which she complained. Kelly, 957 F.Supp. at 875, citing Brock v. Merrell Dow Pharmaceuticals, Inc., 874 F.2d 307 (5th Cir.), modified, 884 F.2d 166 (5th Cir. 1989) and Doddy v. Oxy, 101 F.3d 448, 463 (5th Cir. 1996).

30. A product defect is a producing cause of injury if it was an efficient or exciting cause that, in natural and continuous sequence, produced the alleged injury. Moorehead v. Mitsubishi Aircraft Intern. Inc., 639 F.Supp. 385 (E.D.Tex. 1986) aff'd in part, rev'd in part 828 F.2d 278 (5th Cir.). In Moorehead, plaintiffs alleged that a defective altitude measuring device caused an aircraft to crash, resulting in their claimed injuries. The court held that because the altitude measuring device failure directly lead to a sequence of events ultimately ending in the

---

[5]   Plaintiffs' evidence was in the form of expert testimony that the court excluded for failure to pass the Daubert test.

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.**   **PAGE 13**
**TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS**
**NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF  PLAINTIFFS**
**JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ**

crash, it was a cause-in-fact of the injury and Plaintiffs were permitted to maintain an action against the altitude device manufacturer.

31.  Texas tort law is clear, it must be the product itself that causes the injury to summon the remedies available to a plaintiff under tort law.  Here, there is no allegation that the BRK smoke detector directly caused any physical injury.  Instead, Plaintiffs allege that the smoke detector failed to protect Mr. Cruz from a defective condition in his home, dangerous levels of carbon monoxide.   Any remedy Plaintiffs may have for these allegations lies in elsewhere, not tort.

32.  Where Plaintiffs allege loss of property resulting from the failure of an alarm system, Texas courts have limited consumers to recovery in contract. For example, in Vallance & Co. v. De Anda, 595 S.W.2d 587 (Tex. Civ. App. 1980), the court held that if plaintiff desired greater protection from loss, other than what the contract provided, he could have purchased insurance. See also, Schepps Grocery Supply v. American District Telegraph Co., 286 S.W.2d 684 (Tex. App. 1955)(plaintiff limited to remedy in contract). [6]

33.  Other jurisdictions have also held that even where an alarm fails to operate as intended, Plaintiffs cannot recover in

---

[6]   But see, McCane-Sondock Protection Systems, Inc. v. Emmittee, 540 S.W.2d 764 (Tex. Civ. App. 1976) plaintiff's tort claim allowed where the alarm system was not properly installed at the time of the loss.

tort.  For example, in <u>Fireman's Fund American Insurance Companies</u> <u>v. Burns Electronic Security Services, Inc.</u>, 417 N.E.2d 131 (Ill. App. 1980), the court held that plaintiffs could not recover in tort for the theft of $800,000 of jewelry due to the alleged failure of a burglar alarm system.  To illustrate its holding, the court discussed a fire alarm that fails to work resulting in a building that burns down.  Such a loss, the court reasoned, is not recoverable in tort even though the building was physically harmed. If, on the other hand, the fire is caused by a short circuit in the fire alarm itself, the loss is recoverable in tort.  <u>Id</u>.  The court concluded that the case before it might have been resolved differently had the alarm done or threatened personal injury itself.  <u>Fireman's Fund</u>, 417 N.E.2d at 134.

34.  Similarly in <u>Aronson's Men's Stores, Inc. v. Potter</u> <u>Electric Signal Co.</u>, 632 S.W.2d 472, (Mo. 1982), the court held that plaintiff was not entitled to recover in strict liability for the alleged failure of a burglar alarm resulting in a theft of over $22,000 in merchandise.  The court reasoned:

> While the burglar alarm was arguably "defective" as designed and installed, it was in no sense dangerous and certainly not "unreasonably dangerous" as contemplated by Section 402A[7].  Neither the control box, nor any other part of the system, exploded, ignited or caused harm to appellant's property in any manner, much less suddenly or violently.  The most that can be drawn from the pleadings and evidence is that the alarm did not render a level of performance which appellant thought reasonable.

<u>Aronson's Men's Stores</u>, 632 S.W.2d at 474.

---

[7]   Texas adopted 402A in <u>McKisson v. Sales Affiliates, Inc.</u>, 416 S.W.2d 787 (Tex. 1967).

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.** **PAGE 15**
**TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS**
**NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF  PLAINTIFFS**
**JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ**

35.  In this case, Plaintiffs have failed to allege, and there are no facts that can support a conclusion, that the smoke detector caused physical harm.  Plaintiffs admit that the smoke detector did not produce the carbon monoxide ingested by Mr. Cruz.  Although the allegations of negligence and strict liability in the Amended Complaints amount to a detector ineffective at detecting smoke, they certainly do not constitute allegations that the smoke detector was, itself, unsafe or dangerous.  Excluding the inflammatory and conclusory language in the Amended Complaints, Plaintiffs simply allege that the smoke detector failed to operate as intended, was of inferior quality and that Plaintiffs are not satisfied with its performance.  Plaintiffs' allegations amount to disappointed expectations, not a claim that the carbon monoxide detector was unreasonably dangerous.

36.  Plaintiffs' First Amended Original Complaints do not support a conclusion that the carbon monoxide detector, in and of itself, caused Mr. Cruz' death.  As such, Plaintiffs can prove no set of facts to state a claim in tort and BRK is entitled to judgment as a matter of law.

## D.    Plaintiffs' Tort Claims Are Without Basis.

37.  In Texas, to recover under a theory of products liability, a plaintiff must show that the smoke detector possessed a defect that rendered it "unreasonably dangerous."  Turner v. General Motors Corp., 584 S.W.2d 844, 847 n.1 (Tex. 1979).  In this respect, the fact that Plaintiffs have failed to identify any

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.**
**TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS**
**NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFFS**
**JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ**

**PAGE 16**

specific defect in BRK's smoke detector supports the conclusion
that liability in tort cannot be imposed in these circumstances.
The failure to identify even one alleged specific defect
demonstrates that Plaintiffs' claims are totally without substance.
Plaintiffs should not be permitted to attempt to recover damages
from BRK resulting from harm against which the smoke detector is
not intended to protect where they cannot even specify a single
defect.

38. In evaluating whether a product is unreasonably
dangerous, the Court must take into consideration several factors
balancing the utility of the product and risk involved in its use.
Id. One of those factors is the expectation of the ordinary
consumer. The American Tobacco Company, Inc., v. Grinnell, 951
S.W.2d 420, 432 (Tex. 1997) and Turner, supra. Plaintiffs' Amended
Complaints, however, establish that it would be unreasonable for
consumers to expect a smoke detector to alert them to the presence
of carbon monoxide. Indeed, according to Plaintiffs' own
allegations, the smoke detector was to warn of smoke accumulation.

39. As discussed in the previous section, it is not
appropriate to impose liability in tort upon a product manufacturer
when Plaintiffs' claims are based upon the failure of a product to
prevent harm. However, even if it were appropriate, it would
impose liability beyond all reasonable proportion to also hold them
responsible for harm that their product was not intended to address
or that consumers do not expect it will address. Permitting tort

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.**
**TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS**
**NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFFS**
**JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ**

**PAGE 17**

recovery in these situations will expose manufacturers to potential liability for unbargained-for and unexpected risks.  If the facts of this case were reversed, this Court would certainly not permit a plaintiff injured in a fire to bring an action against a carbon monoxide manufacturer.

40.  Plaintiffs' contention that the smoke detector in Mr. Cruz' home was defective and did not provide Mr. Cruz early warning of smoke in his home does not rescue Plaintiffs' tort claims.  The mere allegation that smoke may have been generated by the propane space heater does not change the fact that smoke detectors are not capable of addressing, or intended to address, the risk of carbon monoxide poisoning, which is the precise harm suffered by Mr. Cruz. As previously set forth, Plaintiffs have admitted that the sole source of the carbon monoxide poisoning was the heater.

41.  In light of the above and Plaintiffs' own representations to this Court, Plaintiffs' tort claims have no basis in fact or logic.  Accordingly, BRK is entitled to judgment as a matter of law as to Plaintiffs' negligence, negligence per se, gross negligence and strict liability theories of liability.

**E.  Plaintiffs Have Failed to State A Claim for Which Relief Can Be Granted for Breach of Warranty or Under the Texas Deceptive Trade Practices Act.**

42.  For the purposes of bringing and action for breach of implied warranty and violation of the Texas Deceptive Trade Practice Act, a product is "defective" if it is unfit for the ordinary purposes for which it is to be used.  <u>Hyundai Motor Co. v. Rodriguez</u>, 1999 Tex. LEXIS 58, *10 (No. 97-0648 June 10, 1999). <u>See</u>

MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.        **PAGE 18**
TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS
NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF  PLAINTIFFS
JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ

also, Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 441 (Tex. 1989). However, in a case involving a claim for personal injuries, strict liability and breach of warranty concepts of "defect" are functionally identical. Hyundai, at 11.

43. Similar to the discussion in the preceding section, Plaintiffs cannot attribute Mr. Cruz' death to the smoke detector not being fit for the ordinary purpose for which it was to be used, providing early warning of a fire, because there was no fire. Plaintiffs do not and cannot allege that BRK warranted that its smoke detector would provide early warning of carbon monoxide accumulation and was therefore unfit for its ordinary purpose. Plaintiffs recognize that the ordinary purpose of a smoke detector is to provide early warning of an unwanted residential fire. Mr. Cruz died as a result of ingesting fatal amounts of carbon monoxide. Therefore, under either a breach of warranty theory or under the Texas Deceptive Trade Practices Act and BRK is entitled to judgment as a matter of law.

**F.   Plaintiffs Have Failed to State A Claim for Which Relief Can Be Granted Under a Civil Conspiracy Theory.**

44. It is not clear to counsel for BRK that Plaintiffs are seeking relief for civil conspiracy in their Amended Complaints, but in an abundance of caution, BRK moves to dismiss any claim that they believe they have set forth or may  wish to make in the future.

45. An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a

MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.
TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS
NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF  PLAINTIFFS
JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ

**PAGE 19**

lawful purpose by unlawful means. <u>Diaz v. Southwest Wheel, Inc.</u>, 736 S.W.2d 770, 774 (Tex. App. 1987). The essential elements of an actionable civil conspiracy claim are: two or more persons; an object to be accomplished; a meeting of the minds on the object or course of action; one or more unlawful, overt acts; and damages as the proximate result. <u>Massey v. Armco Steel Co.</u>, 652 S.W.2d 932, 934 (Tex. 1983).

46. Plaintiffs allege that BRK and other domestic smoke detector manufacturers conspired to influence federal and state regulatory agencies by asserting political pressure. Plaintiffs contend that BRK and others also planned or schemed and agreed to resist the adoption of adequate safety standards, delay effective dates for new standards and seek minimal standards as opposed to realistic standards. (<u>See</u>, Count VIII, generally.)

47. Joint efforts to influence public officials are not unlawful. <u>United Mine Workers v. Pennington</u>, 381 U.S. 657, 670 (1965). In a representative democracy such as this, the branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the populace to express their wishes to their representatives. <u>Eastern Railroads Presidents Conference v. Noerr Motor Freight</u>, 365 U.S. 127, 137 (1961). It is neither unusual nor illegal for citizens to seek action on laws in the hope that they may bring about an advantage to themselves. <u>Id</u>. There is simply no cognizable cause of action for the alleged conduct of conspiring to influence public officials.

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.**
**TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS**
**NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFFS**
**JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ**

**PAGE 20**

48.  Inasmuch as the conduct in which Plaintiffs contend BRK engaged is not unlawful, Plaintiffs have failed to allege an essential element of a civil conspiracy claim.  If this Court finds in Plaintiffs' various, vague and conclusory allegations, that BRK, in concert with one or more persons, engaged in unlawful conduct, Plaintiffs are still not entitled to proceed on their civil conspiracy claim.  Plaintiffs do not allege that their injuries were caused by the alleged conspiracy in which BRK and others engaged.

49.  Taking Plaintiffs' allegations as true, the most this Court could find is that the efforts of BRK and others were aimed at reducing the standards for smoke detectors providing warning of potential fires in the home.  Regardless of whether those efforts were successful, Plaintiffs do not allege that the activities of BRK lowered the standards for carbon monoxide detectors or that BRK's impact on smoke detector standards and regulations somehow resulted in smoke detectors not being required to detect carbon monoxide.  In fact, such an allegation would be ludicrous on its face.

50.  Insofar as Plaintiffs have failed to allege an essential element of a civil conspiracy claim, an unlawful act and/or proximate cause, they have failed to state a cause of action for which relief can be granted and BRK is entitled to judgment as a matter of law.

## G. Plaintiffs Have Failed to State A Claim for Which Relief Can Be Granted for Violation of the Consumer Product Safety Act.

51. Although it is also unclear to counsel for BRK whether Plaintiffs are attempting to set forth a claim pursuant to the Consumer Product Safety Act, in an abundance of caution, BRK moves to dismiss any claim that they believe they have set forth or may wish to make in the future.

52. Section 23(a) of the Consumer Product Safety Act (CPSA) allows private damages suits by "any person who shall sustain injury by reason of any knowing violation of a consumer product safety rule, or any other rule or order issued by the Commissioner.[8] 15 U.S.C. §2072. No section, however, allows private suits for violations of the statute itself. _Klinger v. Yamaha Motor Corp._, 738 F.Supp. 898 (E.D.Pa. 1990). The CPSA does not authorize suits based upon allegations that a product contains a substantial product hazard. _Crouse v. Kawasaki Heavy Indus. Ltd._, 716 F.Supp. 723, 724-26 (N.D.N.Y. 1989). A private right action for damages under the CPSA does not exist for violation of administrative rules or interpretive statutes. _Kahn v. Sears, Roebuck & Co._, 607 F.Supp. 957 (N.D. Ga. 1985); _Sara Lee Corp. v. Homasote Co._, 719 F.Supp. 417, 424-25 (D.Md. 1989). More specifically, no private right of action is available under the

---

[8] For example, where the CPSC determines that a consumer product contains a substantial product hazard and "orders" the manufacturer to take certain measures designed to safeguard the public, a knowing violation of such an order by the manufacturer that results in injury to a consumer could subject the manufacturer to liability in a private cause of action.

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.**
**TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS**
**NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFFS**
**JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ**

**PAGE 22**

CPSA for violation of the CPSC's reporting requirements.  15 U.S.C. §§2064 and 2072; <u>Avery by Avery v. Mapco Gas Products</u>. 898 F.2d 1452 (10th Cir. 1990).

53.  Plaintiffs allege that the BRK smoke detector created a substantial product hazard and that BRK violated one or more of the reporting provisions of the CPSA (15 U.S.C. §2064) and related regulations (16 C.F.R. §1115) by failing to report the hazardous nature of its product to the CPSC.  (paragraph 8.03(H)-(L).) Plaintiffs' allegations amount to violation of administrative or reporting provisions.

54.  Plaintiffs have not alleged, nor are there facts to support a conclusion, that BRK violated a substantive rule promulgated by the CPSC.  In so far as Plaintiffs have failed to allege facts necessary to state a claim under the CPSA, BRK is entitled to judgment as a matter of law.

## H. Plaintiffs' Allegations Concerning Deception, Concealment And Misrepresentation Should Be Stricken As Scandalous And Impertinent.

55.  Federal Rule of Civil Procedure 12(f) provides the Court a means to remove material from a pleading that is redundant, immaterial, impertinent or scandalous.  An allegation that is not relevant to the issues involved in the action are impertinent or immaterial.  <u>Williams v. Jader Fuel Co.</u>, 944 F.2d 1388, 1399 (7th Cir. 1991).  An allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court is scandalous.  <u>Khalid Bin Talal v. E.F. Hutton & Co.</u>, 720 F.Supp. 671, 686 (N.D. Ill. 1989).

MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC. TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF  PLAINTIFFS JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ

**PAGE 23**

56. Inasmuch as Plaintiffs failed to allege that the standards BRK sought to influence resulted in a defective product, BRK respectfully submits that this Court must strike all allegations concerning BRK's purported efforts to influence, obstruct or delay the adoption of standards as not relevant to this action, impertinent and immaterial. (Paragraphs 8.0, 8.01, 8.02, 8.03(A)-(G), 8.04, 8.05 and 8.06.)   Similarly, to the extent this Court grants BRK's motion as it relates to Plaintiffs' civil conspiracy and CPSA claims, BRK submits that this Court must strike all allegations related to these claims as not relevant to this action, impertinent and immaterial. (Paragraphs 8.0, 8.01, 8.02, 8.03, 8.04, 8.05, 8.06, 8.07, 8.08.)

57. BRK respectfully submits that certain of Plaintiffs' allegations adversely bear upon the moral character of BRK, include repulsive language that detracts from the dignity of this Court, are neither relevant nor material to the issues in controversy and should be stricken from Plaintiffs' Amended Complaints as scandalous. (See paragraphs 5.01(19), 5.01(20), 8.01, 8.03(F), 8.03(I), 8.03(M), 8.06 and 8.12.)

58. Finally, BRK respectfully submits that certain of Plaintiffs' allegations are redundant in that the repeat allegations stated elsewhere in Plaintiffs' Amended Complaints and should therefore be stricken as immaterial and impertinent. (Paragraphs 8.04, 8.09, 8.10, 8.11 and 8.13.)

# CONCLUSION

59.   In light of the above, defendant, BRK Brands, Inc., respectfully requests this Honorable Court dismiss the First Amended Original Complaint of Plaintiff Cynthia Cox as Next Friend of Brittany Cox, the First Amended Original Complaint of Jose Garcia, Individually and Idalia Garcia, Individually and as Representative of the Estate of Manuel Cruz, and award it fees, costs and grant such other further relief as the Court deems appropriate.

Respectfully submitted,

**ROERIG, OLIVEIRA & FISHER**
855 West Price Road, Suite 9
Brownsville, Texas   78520
Telephone: (956) 542-5666
Facsimile: (956) 542-0016

BY: _____
    Rene O. Oliveira
    State Bar No. 15254700
    Federal Bar No. 4033

    Elizabeth G. Neally
    State Bar No. 14840400
    Federal Bar No. 8044

**COZEN AND O'CONNOR**
    JAMES HELLER
    TERRY M. HENRY
1900  Market Street
Philadelphia, PA   19103
Telephone: (215) 665-2000
Facsimile: (215) 665-2013

## CERTIFICATE OF SERVICE

I, the undersigned hereby certifies that a true and correct copy of the foregoing *Memorandum in Support of Defendant's Motion to Dismiss Plaintiffs' First Amended Original Complaints*, has been served upon Shiree Salinas, counsel for Plaintiff, at The Atrium, Suite 400, 1300 North Tenth Street, McAllen, TX 78501 and Mr. Ray Marchan, Harris & Watts, 1926 E. Elizabeth, Brownsville, TX 78520, on this __31__ day of March, 2000.

Elizabeth G. Neally

MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS, INC.
TO DISMISS THE FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFF CYNTHIA COX AS
NEXT FRIEND OF BRITTANY COX AND FIRST AMENDED ORIGINAL COMPLAINT OF PLAINTIFFS
JOSE GARCIA, INDIVIDUALLY, AND IDALIA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF MANUEL CRUZ

PAGE 26