IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 1 9 2000

Michael N. Milby
Clerk of Court

| | |
|---|---|
| JOSE GARCIA, Individually and as Representative of the Estate MANUEL CRUZ, IDALIA GARCIA, individually and CYNTHIA GARCIA | ) ) ) ) ) |
| VS. | ) CIVIL ACTION NO. ) ) B-98-186 ) |
| BRK BRANDS, INC. | ) ) |

## PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANT BRK BRANDS, INC.'S MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Jose Garcia, Individually and as Representative of the Estate of Manuel Cruz, Idalia Garcia, Individually and Cynthia Cox as next friend of Brittany Cox, plaintiffs in the above styled and numbered cause, by and through their attorneys of record, and file this their Supplemental Response to Defendant BRK Brands, Inc.'s Motion to Dismiss, and in support thereof would respectfully show the court as follows:

I.

The attempt of BRK to dismiss this death action because their product, even if defective, did not cause Manuel Cruz's death is a factual fallacy and corporate mindset of this defendant to wisp away rights of

1

parties by their ignorance of their responsibilities as manufacturers of life saving devices. Their acts may even show a continued intentional deception regarding the defectively manufactured smoke detector involved in Manuel Cruz's death.

Attached hereto, as Supplemental Exhibit A, is the deposition of David A. Minnis in **Gorton vs. BRK Brands**. Mr. Minnis, an employee of BRK testified, that when the smoke detectors defectiveness were showing up in field reports, the Vice President of the corporation instructed Mr. Minnis that, in spite of having serious problems sleeping at night because he knew of all of the defective smoke detectors out in the field, Mr. Minnis had to look at the defective smoke detector situation as a situation that the smoke detector is not causing the fire and that if someone dies in the fire, you can't blame the smoke detector because it didn't cause the fire. That Vice President was the head person in charge of quality control, Mr. Shoenfelder. Pages 140-144 of Plaintiffs' Supplemental Exhibit A.

BRK has been successfully sued and found liable for injuries and death throughout this country. See supplemental Exhibit B. Smoke detectors have been the subject of litigation in other actions. Carruth v. Pittway Corp., **643 So. 2d 1340 (Ala. 994) (fact issues existed regarding whether placement instructions were adequate);**

2

**Laaperi v. Sears, Roebuck & Co.**, 787 F.2d 726 (1st Cir. 1986) (failure to warn; smoke detector connected to house electrical system failed to activate when electrical power went out); **Coleman v. United Savings Ass'n of Texas**, 846 S.W.2d 128 (Tex.App.--Fort Worth 1993, n.w.h.)(duty to install smoke detector).

According to the defendant's analysis, a defective parachute manufacturer could not be held liable for causing someone's death because in fact, the ground killed the parachuters. Another way, a defective life jacket or ring manufacturer could not be held liable for a failure in their life saving equipment because it would be the water that would have drowned the victim. As will be shown below, there are factual scenarios that exist to show the culpability of defendant BRK in producing a defective smoke detector to such an extent that factual questions will exist as to them being grossly negligent and that their acts may sink to a level that may be in fact distastefully scandalous.

As mentioned above, Mr. Minnis's testimony shows that he worked for BRK and had a job position of electronic technician, assistanting project engineers in getting test samples built and tested and helped write reports and collected data. Supplemental Exhibit A, Pages 9 - 19.

3

That department was called the residential smoke detector department in charge of designing smoke detectors for use in residential applications installed by the consumer or construction industry. Supplemental Exhibit A, page 20. His job duties included putting the smoke detectors through a series of performance tests and replicate Underwriter's Laboratory type tests to prepare for Underwriter's Laboratory review. Supplemental Exhibit A, Page 23 to 25. In the UL certification process, failure rate analysis calculations as well as listing component parts and manufacturers had to be submitted to Underwriter's Laboratory and to provide ample number of samples for testing to see if an Underwriter's Laboratory label could be obtained. Pages 26 - 29. Even after certification, Underwriter's Laboratory requires that the company manufacturer make it in exactly the form it was submitted. Supplemental Exhibit A, Page 40. There was a log-in book kept for the samples that went to Underwriter's Laboratory and that log contained test results showing the unacceptability of the results by Underwriter's Laboratory, See Supplemental Exhibit A, Pages 42-43.

Mr. Minnis's role as a witness in cases against BRK is significant because in 1984 he was promoted as associate engineer with the responsibility of being liaison between Underwriter's Laboratories and

4

BRK electronics department for smoke detectors. He would initiate letters to Underwriter's Laboratories announcing either a new product or design change and would receive from UL an outline of what was necessary to get the UL approval. See supplemental exhibit A, pages 53-55. However, he became aware of fraudulently submitted products to Underwriter's Laboratory and he participated with others in BRK to submit an altered product that would not be representative of the manufactured product and on a second occasion, refused to again submit adultered samples for UL testing. See supplemental exhibit A, pages 88-92.

His opinion of the products that he was involved in testing for BRK namely, residential smoke detectors, was that a failure could occur any time to such an extent that they were having 50% failure rates and even had times when the failure rate was 75%. See supplemental exhibit A, pages 100-101. When BRK continued to submit adulterated test samples, Mr. Minnis felt that that was a violation of the UL's standard. Again, the Vice President in charge of quality control, Mr. Shoenfelder, when confronted by Mr. Minniss's concern of the high failure rate, Mr. Minnis was advised by the man that reported to BRK's president, that the design would not be changed because he would be admitting to Underwriter's Laboratory that BRK knew it had a problem. See supplemental exhibit A,

pages 120-122. In the end upon further protest, Mr. Minnis was told by Mr. Shoenfelder that if he wanted to keep his job to shut up and do as he was told. See Supplemental Exhibit A, pages 123-124. Mr. Minnis admits that upon instruction from BRK he was told to lie to Underwriter's Laboratory regarding the failures and defects in the product and that he became aware after his refusal to participate with the subsequent Underwriter's Laboratories' approval that BRK was able to get. See supplemental Exhibit A, Pages 128-133. Mr. Minnis could no longer stand the pressure of participating with the fraud of defective smoke detectors and reported that BRK had fraudulently submitted products to cover up the design products known by BRK to the Consumer Product Safety Commission. See Supplemental Exhibit A, page 75.

II.

Discovery is continuing in this case with expert reports being due on October 15, 1999. However the designation deadline has been met and reports have been filed by some of the experts. Included is the expert report of Morris Cranmer, Ph.D. which in great detail comes to the conclusion that the ionizing type smoke detector located in the home where Mr. Manuel Cruz slept had failed to sound a loud and sustainable audible alarm and as such failed to alert Mr. Cruz of the development of a

dangerous atmosphere from which he would have been able to escape. The amount of smoke and thus particulates in the air was of sufficient volume and density that the smoke detector should have sounded a loud and sustainable audible alarm hours before Mr. Cruz would have had any effect from carbon monoxide. Plaintiffs have submitted additional expert reports that supports causation and therefore plaintiffs have pled viable causes of action against the defendants. As mentioned above, there is evidence of breach of warranties and violations of the Texas Deceptive Trade Practices Act as well as proof of civil conspiracy. As to the Consumer Products Safety Act, Plaintiff believes that violations of the standards can be alleged and used as evidence of breach of the duty and standard of care required by this manufacturer of smoke detectors promoted as life saving devices.

Respectfully submitted this the ___19___ day of April, 2000.

HARRIS & WATTS, P.C.
1926 E. Elizabeth
Brownsville, Texas   78520
(956)  546-0333
(956)  541-0255   FAX

_____
Ray R. Marchan
Attorney for Plaintiff Cynthia Cox
ANF of Brittany Cox
State Bar No. 12969050
Federal I.D. No. 9522

Law Office of Mark A Cantu
The Atrium
McAllen, Texas   78501
Tel:   956-687-8181
FAX:   956-687-8868

_____
SHIREE D. SALINAS
State Bar No. 17537000
Federal I.D. No. 22613
Attorney for Plaintiffs
Jose Garcia, Individually
and Idalia Garcia, Individually
and as Representative of the Estate
of Manuel Cruz

8

## CERTIFICATE OF SERVICE

On this the ___19___ day of April, 2000, a true and correct copy of the foregoing instrument was forwarded to opposing counsel via fax, by hand-delivery or by certified mail, return receipt requested.

_____
RAY R. MARCHAN

9

## AFFIDAVIT OF AUTHENTICITY

STATE OF TEXAS )
)
COUNTY OF CAMERON )

BEFORE ME, the undersigned Notary Public, on this day personally appeared RAY R. MARCHAN, known to me, and first being by me duly sworn according to law upon his oath deposed and stated as follows:

"My name is RAY R. MARCHAN, I am a licensed attorney engaged in the general practice of law in Brownsville, Cameron County, Texas. I am attorney with HARRIS & WATTS, P.C., 1926 E. Elizabeth, Brownsville, Texas. The law firm of Harris & Watts, P.C., has been retained by Plaintiffs Cynthia Cox as next friend of Brittany Cox in connection with the above-referenced lawsuit.

I am of sound mind, capable of making this affidavit, and I have personal knowledge of each and every statement stated below.

I hereby certify that the copies attached as Exhibit "A" and Exhibit "B" respectively, are authentic true and correct copies of the originals."

Further affiant sayeth not.

_____
RAY R. MARCHAN

10

SWORN TO AND SUBSCRIBED before me, the undersigned authority, by the said RAY R. MARCHAN, on the \_\_\_19\_\_\_ day of April, 2000, to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC, STATE OF TEXAS

[SEAL: LETICIA FIERROS, MY COMMISSION EXPIRES June 3, 2000]

11

## AFFIDAVIT OF AUTHENTICITY

STATE OF TEXAS        )
                      )
COUNTY OF CAMERON     )

BEFORE ME, the undersigned Notary Public, on this day personally appeared SHIREE D. SALINAS, known to me, and first being by me duly sworn according to law upon his oath deposed and stated as follows:

"My name is SHIREE D. SALINAS, I am a licensed attorney engaged in the general practice of law in McAllen, Texas. I am attorney with the Law Offices of Mark Cantu, The Atrium, McAllen, Texas. The law office of Mark Cantu has been retained by Plaintiff Jose Garcia Individually and Idalia Garcia, individually and as Representative of the Estate of Manuel Cruz in connection with the above-referenced lawsuit.

I am of sound mind, capable of making this affidavit, and I have personal knowledge of each and every statement stated below.

I hereby certify that the copies attached as Exhibit "A" and Exhibit "B" respectively, are authentic true and correct copies of the originals."

Further affiant sayeth not.

_Shiree D. Salinas_
SHIREE D. SALINAS

12

SWORN TO AND SUBSCRIBED before me, the undersigned authority, by the said SHIREE D. SALINAS, on the ___19___ day of April, 2000, to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC, STATE OF TEXAS

[Seal: LETICIA FIERROS, MY COMMISSION EXPIRES June 3, 2000]

13

STATE OF TEXAS            )
                          )
COUNTY OF CAMERON         )

On this the ___19___ day of April, 2000, came before me, the undersigned authority, appeared RAY R. MARCHAN, who after being duly sworn upon his oath stated and deposed as follows:

"My name is Ray R. Marchan. I am over the age of 18 years and am fully competent and not disqualified by law to make this affidavit. I am the attorney for the Plaintiffs Cynthia Cox as next friend of Brittany Cox . I hereby certify that all of the facts stated in the foregoing Plaintiffs' Supplemental Response to Defendant's Motion to Dismiss are true and correct to my knowledge."

Signed this the ___19___ day of April, 2000.

_____
RAY R. MARCHAN

SWORN TO AND SUBSCRIBED on this the ___19___ day of April, 2000.

_____
NOTARY PUBLIC, STATE OF TEXAS

[SEAL: LETICIA FIERROS — MY COMMISSION EXPIRES June 3, 2000]

14

STATE OF TEXAS        )
                      )
COUNTY OF CAMERON     )

On this the __19__ day of April, 2000, came before me, the undersigned authority, appeared SHIREE D. SALINAS, who after being duly sworn upon his oath stated and deposed as follows:

"My name is Shiree D. Salinas. I am over the age of 18 years and am fully competent and not disqualified by law to make this affidavit. I am the attorney for the Plaintiffs Jose Garcia, Individually and Idalia Garcia, Individually and as Representative of the Estate of Manuel Cruz, Deceased. I hereby certify that all of the facts stated in the foregoing Plaintiffs' Supplemental Response to Defendant's Motion to Dismiss are true and correct to my knowledge."

Signed this the __19__ day of April, 2000.

_____
SHIREE D. SALINAS

SWORN TO AND SUBSCRIBED on this the __19__ day of April, 2000.

_____
NOTARY PUBLIC, STATE OF TEXAS

LETICIA FIERROS
MY COMMISSION EXPIRES
June 3, 2000

15