IN THE U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

MAY 0 1 2000

Michael [illegible]
Clerk of Court

| | |
|---|---|
| JOSE GARCIA, Individually and as Representative of the Estate of MANUEL CRUZ, IDALIA GARCIA, Individually; and CYNTHIA COX as Next Best Friend of Brittany Cox, | : : : : : : |
| vs. | CIVIL ACTION NO. B-98-186 |
| BRK BRANDS, INC. | : : : : |

**REPLY IN SUPPORT OF THE MOTION OF
DEFENDANT BRK BRANDS, INC. TO DISMISS
PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

**PRELIMINARY STATEMENT**

1. Defendant, BRK Brands, Inc., submits this Reply to the Response and supplemental papers filed by plaintiffs on April 19, 2000 in opposition to BRK's Motion to Dismiss.

2. BRK has moved to dismiss plaintiffs' First Original Amended Petition on the grounds that common law does not impose requirements as to how well a product must perform its intended function and, therefore, plaintiffs have failed to allege the breach of a legally cognizable duty BRK owed to plaintiffs or that the breach of a duty caused plaintiffs' injuries. Alternatively, BRK asserts that liability cannot be imposed upon it for a smoke detector's failure to perform an unintended function.

3. None of the assertions, materials or case law plaintiffs offer in their responsive papers undermines BRK's position. Plaintiffs' response includes, however, the assertion that there was a fire in Mr. Cruz' home. In that plaintiffs have previously represented to this Court that there was

no fire, which is entirely consistent with the facts of this case, such assertions now are at best disingenuous; at worst, they are misrepresentations. Regardless of these new allegations, the single fact that precludes plaintiffs' action against BRK, manufacturer of a smoke detector, is that Manuel Cruz died when a propane space heater produced or leaked fatal levels of carbon monoxide.

4. Plaintiffs believe that they can simply conclude that the BRK smoke detector caused Mr. Cruz' injury and thereby defeat BRK's motion to dismiss. Plaintiffs must do more, however, and plead facts that, if true, would establish that the detector caused Mr. Cruz' injuries. Plaintiffs amended pleading, simply stated, reveals that nothing the BRK smoke detector did or failed to do resulted in physical harm to Mr. Cruz, or could have prevented the harm Mr. Cruz suffered. Smoke detectors are not intended to serve as carbon monoxide detectors. Under these circumstances, as a matter of law, liability cannot be imposed upon BRK.

5. Even if plaintiffs could assert a cause of action based upon a product's failure to perform its intended function, plaintiffs have failed to plead any facts that would demonstrate the existence of a defect in the smoke detector, or that the smoke detector failed to perform its intended function when it allegedly did not timely alarm in response to carbon monoxide in Mr. Cruz' house. Plaintiffs assert that there was a fire in Mr. Cruz' home simply to argue that the fire was a danger against which the detector was designed to protect. However, consistent with plaintiffs' representations to this Honorable Court, there was no fire.

6. Plaintiff's claims of breach of warranty, violation of the Texas Deceptive Trade Practices Act, civil conspiracy and violation of the Consumer Product Safety Act are similarly wanting. For the reasons discussed below, BRK respectfully submits that these causes of action should be dismissed.

## ARGUMENT

A. **Standard for Dismissal and Information Subject to the Court's Review Under Rule 12(b)(6)**

7. There is no dispute, nor could there be, regarding the standard for granting dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). However, plaintiffs argue that BRK placed improper material before this Court in its motion to dismiss. In reality, it was plaintiffs that introduced inappropriate material before the Court.

8. As BRK set forth in its initial brief, in deciding a Rule 12(b)(6) motion, courts must generally limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint. Lovelace v. Software Spectrum, Inc., 78 F.3d 1015 (5th Cir. 1996). Courts can also consider matters of which they may take judicial notice. Fed.R.Evid. 201(f). Federal Rule of Evidence 201(b) permits a court to take judicial notice of a fact that is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

9. The facts submitted with BRK's motion, the Certification of Death, the pathology report, UL Standard 217 and transcript of May 13, 1999, fit this description.[1] Each of these documents are neutral on their face, are from governmental or quasi-governmental sources, produced in the normal course of official business and the facts or information they contain cannot reasonably be questioned. More importantly, they do not seek to address the heart of plaintiffs' allegation, whether the smoke detector was itself defective. Rather, they point to facts demonstrating that

---

[1] In fact, the reasoning by the Court in Lovelace, as discussed in BRK's original brief, is applicable here. As plaintiffs contend in paragraph 21 of their response, BRK allegedly conspired to influence UL 217. BRK's purpose in asking the Court to take judicial notice of UL 217 is to demonstrate that the standard does not address carbon monoxide poisoning hazards, but hazards associated with unwanted residential fires. Moreover, even if BRK's alleged influence resulted in some modification to the standard, it could not have caused plaintiffs injuries in this case, a carbon monoxide poisoning death.

**REPLY IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS IN TO DISMISS THE PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT**   **PAGE 3**

plaintiffs have failed to sufficiently plead a cause of action; that there was no fire, that Mr. Cruz died of carbon monoxide poisoning and that smoke detectors are not intended to detect carbon monoxide.

10.     On the other hand, plaintiffs put before this Court material inappropriate for a motion for judgment on the pleadings. One such document is a self-serving affidavit from a purported fire cause and origin investigator. Mr. McClintock's affidavit, attached as Exhibit "A" to plaintiffs' response, is rank with unsupportable conclusory statements from a private investigator whose qualifications to render such an affidavit are, at best, questionable. Mr. McClintock displays no apparent expertise or experience in smoke detection systems, toxicology, pathology, fuel burning appliances or the like. His primary involvement in this matter to date was as custodian of the smoke detector for plaintiffs.

11.     Plaintiffs also submit the deposition testimony of David Minnis, a former BRK employee, taken in an unrelated matter. Even if Mr. Minnis' testimony were accurate, reliable and relevant, such testimony can not be considered by this Court when deciding the sufficiency of plaintiffs' amended pleadings.

12.     More importantly, however, Mr. Minnis' deposition testimony may, at most, tend to establish that a particular model of BRK smoke detectors may be ineffective at detecting smoke.[2] Plaintiffs' attempt to produce evidence that BRK's smoke detectors were of a poor quality is not even responsive to BRK's contention that tort law does not provide a remedy for a product's purported failure to perform its intended function. Indeed, for purposes of BRK's Motion to Dismiss (and only for this purpose), BRK assumes, as it must, that its smoke detector was ineffective in detecting smoke from an unwanted residential fire.

---

[2]     Mr. Minnis' testimony and allegations, the truth and accuracy of which are disputed by BRK, concerned smoke detector models SA1201 and 86RAC. The model plaintiffs allege was involved in this case was an SA67D.

13. BRK must nevertheless note that Mr. Minnis' testimony about the alleged falsification of test results over fifteen years ago, while he was employed by a company not a party to this litigation, with respect to a model detector different than the detector alleged to be involved in this case, does not even support plaintiffs' allegations. This is particularly true in that Mr. Minnis is a disgruntled former employee who raised these claims only after he was terminated and summary judgment was entered against him in litigation he subsequently commenced against BRK. His allegations are belied by his own documents and the testimony of past and present employees of BRK.

14. Accordingly, BRK respectfully requests that the affidavit of Mr. McClintock and the deposition testimony of Mr. Minnis be stricken, as should the related allegations in plaintiffs' responsive papers.

B. **Plaintiffs' Claims are Not Recoverable in Tort.**

15. As stated in BRK's brief, product liability and tort remedies are not available where the plaintiff's claim is that the product failed to perform. In Texas, the product must cause physical harm for plaintiff to recover in tort. See, Nobility Homes of Texas, Inc. v. Shivers, 557 S.W.2d 77 (Tex. 1977) and Keith v. Stoelting, Inc. 915, F.2d 966, 998 (5th Cir. 1990). Therefore, where a product fails to perform an intended function, but does not directly cause physical injury, recovery in tort is not permitted.

15. Here, plaintiffs admit that the smoke detector did not cause any direct physical harm. Before this Court, counsel for Ms. Cox clearly stated that, "We're not saying the smoke detector killed...this man by asphyxiation. I don't think there's any other source but the heater." (Transcript of May 13, 1999 hearing, page 18, lines 1-5, attached to BRK's motion at Exhibit "D".) Plaintiffs' allegations do not support a conclusion that the smoke monoxide detector, in and of itself, caused

**REPLY IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS IN TO DISMISS THE PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT**

**PAGE 5**

Mr. Cruz' death. As such, plaintiffs can prove no set of facts to state a claim in tort and BRK is entitled to judgment as a matter of law.

16. Even if recovery in tort were permitted in cases where a product fails to perform an intended function, plaintiffs' amended pleadings claim that the smoke detector failed to perform an unintended function, to protect Mr. Cruz from carbon monoxide poisoning. In response to BRK's Motion, plaintiffs now assert new facts in an effort to demonstrate that Mr. Cruz died as a result of a "fire" so that they can argue that a fire is a danger against which BRK's detector was to protect. These allegations, revived from plaintiffs' original state court petition, are pure fabrication.

17. At paragraph 5 of their response, plaintiffs assert that, "the heater was lit and was the fire source which plaintiffs contend caused the discharge of smoke." Plaintiffs continue at paragraph 10 that "Mr. Cruz died as a result of a fire or smoky conditions brought about by a heater fire in his home"[3]. By creating the illusion that there was a fire in Mr. Cruz' home, plaintiffs hope to survive BRK's motion to dismiss.

18. There was, however, absolutely no fire in Mr. Cruz' home and plaintiffs have admitted that there was no fire to this Court. At the May 13, 1999 hearing, counsel for Ms. Cox stated, "We claimed that there was not a fire, that it was smoke and soot and that the man asphyxiated without a fire." (Page 3, lines 21-23, Exhibit "D".) In response to the Court's direct question regarding the existence of a fire, counsel for Ms. Cox admitted that there was no fire. (Page 33, line 25 to page 34, line 1, Exhibit "D".)

19. It would impose liability beyond all reasonable proportion to hold a manufacturer responsible for harm that its product was not intended to address or that consumers do not expect it will address. Such is the case where plaintiffs claim a smoke detector should protect a person from

---

[3] It is unclear from their papers, but plaintiffs may have meant that the lit propane space heater, operating as intended, constituted a fire that should have caused the smoke detector to alarm. Unless the fire spreads beyond the confines of the burner of the heater unit, a propane space heater is not the type of unwanted house fire that smoke detectors are intended to detect.

carbon monoxide poisoning. Permitting tort recovery in these situations will expose manufacturers to potential liability for unbargained-for and unexpected risks.

20. Both in their responsive papers and in a letter brief previously filed with this Court, plaintiffs attempt to identify case authority in recognizing a cause of action for recovery in tort based upon a product's failure to perform its intended function and prevent injury to a plaintiff from harm it neither created nor aggravated. See, for example, plaintiffs references to Koonce v. Quaker Safety Products and Manufacturing Co., 798 F.2d 700 (5th Cir. 1986) and Rawlings Sporting Goods Co., Inc. v. Daniels, 619 S.W.2d 435 (Ct. App. Tex. 1981). While these decisions allowed a plaintiff to recover against a product manufacturer simply because a product failed to prevent harm, they must be understood in the context of the well recognized distinction Texas courts have uniformly drawn between tort and contract claims. (See cases cited at page 14-17 of BRK's Memorandum of Law in Support of its Motion to Dismiss.)

21. The distinction the law draws between tort recovery for physical injuries and warranty recovery is not arbitrary and does not rest on the "luck" of the plaintiff in having an accident causing physical injury. Two Rivers Co. v. Curtiss Breeding Service, 624 F.2d 1242, 1248 (5th Cir. 1980). Rather, the distinction rests on understanding the nature of the responsibility of a manufacturer in distributing its products. Although a manufacturer can be held liable in tort for physical injury caused by its defective product, it cannot be held liable in tort for the quality of the product's performance. Id.

22. Furthermore, a strict liability claim is set within the background principle that manufacturers are not liable simply because the use of their product involves some risks. See, Sandage v. Bankhead Enterprises, Inc., 177 F.3d 670, 673 (8th Cir. 1999). Instead, the law focuses its efforts on defects that are unreasonably dangerous. Where the allegations of product defect do

**REPLY IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS IN
TO DISMISS THE PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT**

**PAGE 7**

not render a product "unreasonably dangerous", but only ineffective, there is no product liability cause of action. <u>Texsun Feed Yards, Inc. v. Ralston Purina Co.</u>, 447 F.2d 660, 666-67 (5th Cir. 1971). <u>See</u> <u>also</u>, <u>Aronson's Men's Stores, Inc. v. Potter Elec. Signal Co.</u>, 632 S.W.2d 472, 474 (Mo. 1982)(although the alarm system may have been defective, it was not unreasonably dangerous). Therefore, <u>Koonce</u> and <u>Rawlings Sporting Goods</u> standing alone cannot be viewed as overruling Texas' well-settled authority.

23. This is particularly so in that well after <u>Koonce</u> was decided, the Fifth Circuit reaffirmed in <u>Scallan v. The Duriron Co. Inc.</u>, 11 F.3d 1249 (5th Cir. 1994) that a plaintiff may not state a claim in tort based upon a product's failure to prevent harm. In <u>Scallan</u>, a plaintiff was not permitted to recover when chlorine mixing with inert gases went undetected because of a defective leak in a monitoring device and ultimately resulted in an explosion that caused plaintiff's injuries.

24. Moreover, in <u>Scallan</u>, the Fifth Circuit cited with approval the Eighth Circuit's decision in <u>Linegar v. Armour of America, Inc.</u>, 909 F.2d 1150 (8th Cir. 1990). In <u>Linegar</u>, the wife of a murdered state patrolman claimed that a "bullet-proof" vest, manufactured by the defendant and worn by the decedent patrolman at the time of his death, was defective in that it left unprotected an area below the patrolman's arms. It was in this area that the fatal shots entered the patrolman's body. The "contour" style vest issued to the decedent was one of several types then on the market, others providing protection for the area below the armpit.

25. The <u>Linegar</u> court held that, as a matter of law, the product was not defective nor unreasonably dangerous because it did not cause the patrolman's injuries. <u>Linegar</u>, 909 F.2d at 1154. The court reasoned that:

> A manufacturer is not obliged to market only one version of a product, that being the very safest design possible. If that were so, automobile manufacturers could not offer consumers sports cars, convertibles, jeeps, or compact cars. All boaters would have to buy full life vests instead of choosing a ski belt or even a flotation cushion.

<u>Linegar</u>, 909 F.2d at 1154.

26. The court gave special attention to safety products, stating "Personal safety devices, in particular, require personal choices, and it is beyond the province of courts and juries to act as legislators and preordain those choices." Id. Similarly, if courts impose a requirement upon smoke detector manufacturers to manufacture only the "best" detector possible, as opposed to "safe" detectors, the manufacturers may be threatened with economically devastating litigation because, although they now market a wide variety of smoke detectors, the choices they provide must necessarily include a variety of safe, albeit not the "best" models. Id.

27. Plaintiffs also cite In re Metcalf, 530 F.Supp. 446 (S.D. Tex. 1981), Ford Motor Co. v. Durrill, 714 S.W.2d 329 (Tex. App. Corpus Christi 1986) and Jampole v. Touchy, 673 S.W.2d 569 (Tex. 1984)[4]. However, in each of these cases a defective product caused direct physical injury to the plaintiff. In Metcalf, defendant's failure to install fire retardant materials behind and above a stove directly led to the spread of a fire that resulted in personal injury. In both Jampole and Ford, the plaintiffs were not injured as a result of a car accident, but were injured when defective fuel systems resulted in post-accident fires that directly caused physical injury.

28. In the present case, plaintiffs admit that the smoke detector did not produce any carbon monoxide or cause any direct physical harm[5]. The gas-fueled space heater in Mr. Cruz' house would have continued to produce (and apparently did) carbon monoxide regardless of whether the smoke detector properly operated. The BRK smoke detector in Mr. Cruz' house did not produce or increase the production of carbon monoxide. Accordingly, Metcalf, Ford and Jampole have no relevance to the issues raised in the instant motion.

---

[4] The opinion cited by plaintiff appears to be a discovery opinion, not related to the issues in this case.

[5] Ms. Cox' counsel explained that, "We're not saying the smoke detector killed...this man by asphyxiation. I don't think there's any other source but the heater." (Transcript of May 13, 1999 hearing, page 18, lines 1-5, attached to BRK's motion at Exhibit "D".)

29. Plaintiffs also cite to decisions of courts from other jurisdictions, in <u>Butler v. Pittway Corp.</u>, 770 F.2d 7 (2d Cir. 1985); <u>Pearsall v. Emhart Industries, Inc.</u>, 599 F.Supp. 207 (E.D.Pa. 1984); <u>Carruth v. Pittway Corp.</u>, 643 So.2d 1340 (Ala. 1994) and <u>Interstate Engineering, Inc. v. Burnete</u>, 474 So.2d 624 (Ala. 1985), for the proposition that they have adequately asserted a tort claim against BRK, as the manufacturer of a smoke detector. Once again, the defendants in <u>Carruth</u> and <u>Interstate Engineering</u> did not contend that the plaintiffs could not prove the breach of a duty imposed at law. As such, these cases cannot be considered authority in opposition to BRK's Motion to Dismiss in this case. Furthermore, neither <u>Butler</u> nor <u>Pearsall</u> are persuasive and this court should follow Texas law and the Eighth Circuit's compelling analysis in <u>Linegar</u> and other cases rendering the same result. <u>Curtis v. General Motors Corp.</u>, 649 F.2d 808, 811 (10th Cir. 1981); <u>Dyson v. General Motors Corp.</u>, 298 F. Supp. 1064, 1073 (E.D. Pa. 1969).

30. In <u>Butler</u>, the Second Circuit held that liability could be imposed upon the manufacturer of a smoke detector for the injuries a plaintiff sustained in a fire because a smoke detector's failure to alarm in a timely manner could result in the plaintiff suffering harm he would not have experienced if the detector had alarmed earlier. The court therefore reasoned that the detector's failure to alarm may have "enhanced" the plaintiff's injuries, and concluded liability could be imposed based upon cases assessing liability in tort against a manufacturer where a defective product aggravates or enhances the injuries after an initial impact.

31. However, in the cases upon which the Second Circuit relied, the product caused additional injuries which the plaintiff would not have suffered if that product were not present. <u>See</u>, <u>Larsen v. General Motors Corp.</u>, 391 F.2d 495 (8th Cir. 1968)(defect in steering aggravated injuries). Conversely, where a smoke detector allegedly fails to timely alarm, the plaintiff suffers only those injuries he would have sustained if the detector had never been installed. In other words, the detector

**REPLY IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS IN TO DISMISS THE PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT**

**PAGE 10**

in no manner made the situation worse[6].

32. The Second Circuit's decision was intended to be narrowly construed in that its opinion states that a manufacturer "cannot be held [liable] for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands." Butler, 770 F.2d at 11. See also, Two Rivers, 624 F.2d at 1248 (5th Cir.). Given this statement, the Butler decision should be limited to its facts and to the proposition that a manufacturer can only be held liable for a malfunction. Butler does not support imposing liability upon BRK in the instant action where plaintiff alleges that the smoke detector failed to meet a performance standard BRK never intended to satisfy.

33. Accordingly, BRK is entitled to judgment as a matter of law as to plaintiffs' negligence, negligence per se, gross negligence and strict liability theories of liability.

## C. Plaintiff Has Failed to State A Claim for Which Relief Can Be Granted for Breach of Warranty or Under the Texas Deceptive Trade Practices Act.

34. For the purposes of bringing an action for breach of implied warranty and violation of the Texas Deceptive Trade Practice Act, a product is "defective" if it is unfit for the ordinary purposes for which it is to be used. Hyundai Motor Co. v. Rodriguez, 1999 Tex. LEXIS 58, *10 (No. 97-0648 June 10, 1999). See also, Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 441 (Tex. 1989). However, in a case involving a claim for personal injuries, strict liability and breach of warranty concepts of "defect" are functionally identical. Hyundai, at 11.

35. Because there was no fire, plaintiffs cannot attribute Mr. Cruz' death to the smoke detector not being fit for the ordinary purpose for which it was to be used, providing early warning

---

[6] In their April 19th Response, plaintiffs cite Laaperi v. Sears, 787 F.2d 726 (1st Cir. 1986). However Laaperi relies heavily upon the rational of the Second Circuit in Butler in holding a smoke detector manufacturer may be liable under a duty to warn theory. Consequently, Laaperi should not be considered by this Court as authority for the same reasons this Court should not consider Butler authoritative.

of a fire. To overcome this fatal defect in her pleadings, at paragraph 12 of their response plaintiffs allege that "the BRK smoke detector should have been fit for the purpose of detecting or providing early warning of the presence of products of combustion, ie. smoke." Again, plaintiffs fail to recognize the significant difference between a product performing its intended function and a product failing to perform a function for which it was not intended.

36. A smoke detector is not designed to alarm every time there is combustion in the home. If it were, it would signal its alarm every time a stove was turned on, someone smoked a cigarette or a propane heater was lit. Instead, the ordinary purpose of a smoke detector is to provide early warning of unwanted house fires. Curiously, plaintiffs distance themselves from the contention in their amended pleadings that the smoke detector was designed to prevent carbon monoxide poisoning when they assert only that the smoke detector was "capable of protecting a person from carbon monoxide poisoning." (Plaintiffs' response at paragraph 11.)

37. Mr. Cruz died as a result of ingesting fatal amounts of carbon monoxide produced by a propane space heater he intentionally lit to provide heat during a cold night. In other words, Mr. Cruz' carbon monoxide poisoning was the result of his operation of the propane space heater - a desired form of combustion. Plaintiffs do not and cannot allege that BRK warranted that its smoke detector would provide early warning of every instance of combustion within the home or of carbon monoxide accumulation and was, as a consequence, unfit for its ordinary purpose. Therefore, under either a breach of warranty theory or under the Texas Deceptive Trade Practices Act and BRK is entitled to judgment as a matter of law.

D. **Plaintiff Has Failed to State A Claim for Which Relief Can Be Granted Under a Civil Conspiracy Theory.**

38. An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. <u>Diaz v. Southwest Wheel, Inc.</u>, 736 S.W.2d 770, 774 (Tex. App. 1987). Joint efforts to influence public

officials are not unlawful. United Mine Workers v. Pennington, 381 U.S. 657, 670 (1965). It is neither unusual nor illegal for citizens to seek action on laws in the hope that they may bring about an advantage to themselves. Eastern Railroads Presidents Conference v. Noerr Motor Freight, 365 U.S. 127, 137 (1961). There is simply no cognizable cause of action for the alleged conduct of conspiring to influence public officials.

39. If, however, this Court finds in plaintiffs' various, vague and conclusory allegations, that BRK, in concert with one or more persons, engaged in unlawful conduct, as they claim in paragraph 15 of their response, plaintiffs are still not entitled to proceed on their civil conspiracy claim. Plaintiffs do not allege that their injuries were caused by the alleged conspiracy in which BRK and others engaged.

40. Taking plaintiffs' allegations as true, the most this Court could find is that the efforts of BRK and others were aimed at reducing the standards for smoke detectors providing warning of potential fires in the home. Regardless of whether those efforts were successful, plaintiff does not allege that the activities of BRK lowered the standards for carbon monoxide detectors or that BRK's impact on smoke detector standards and regulations somehow resulted in smoke detectors not being required to detect carbon monoxide.

41 Insofar as plaintiffs have failed to allege an essential element of a civil conspiracy claim, an unlawful act and/or proximate cause, they have failed to state a cause of action for which relief can be granted and BRK is entitled to judgment as a matter of law.

E. **Plaintiff Has Failed to State A Claim for Which Relief Can Be Granted for Violation of the Consumer Product Safety Act.**

42. At paragraphs 17, 18 and 19 of plaintiffs' response to BRK's motion, plaintiffs admit that they have failed to state a claim for which relief can be granted under the Consumer Product Safety Act (CPSA). Plaintiffs misguided belief that their allegations concerning the CPSA are

**REPLY IN SUPPORT OF THE MOTION OF DEFENDANT BRK BRANDS IN TO DISMISS THE PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT**

**PAGE 13**

evidence in support of their tort claims, is not sufficient to permit the allegations to remain. Moreover, plaintiffs have failed to allege that any of the acts in which they contend BRK engaged caused Mr. Cruz' death or their injuries. Accordingly, plaintiffs have failed to state a claim under which CPSA and paragraphs 8.0-8.08 of plaintiffs' First Amended Original Petition should be stricken as impertinent and/or scandalous.

## CONCLUSION

42.   In light of the above, defendant, BRK Brands, Inc., respectfully requests this Honorable Court dismiss the First Amended Original Complaint of plaintiffs Jose Garcia, Idalia Garcia, individually and as admistratrix of the estate of Manual Cruz, and Cynthia Cox as Next Friend of Brittany Cox and awards BRK fees, costs and grants such other further relief as the Court deems appropriate.

Respectfully submitted,

**ROERIG, OLIVEIRA & FISHER**
855 West Price Road, Suite 9
Brownsville, TX 78520
Telephone: (956)542-5666
Facsimile: (956)542-0016

By: _____
René O. Oliveira
State Bar No. 15254700
Federal Bar No. 4033
Elizabeth G. Neally
State Bar No. 14840400
Federal Bar  No. 8044
855 West Price Road, Suite 9
Brownsville, TX 78520
Tel: 956/542-5666
Fax: 956/542-0016

**COZEN AND O'CONNOR**
JAMES HELLER
TERRY M. HENRY
1900 Market Street
Philadelphia, PA  19103
Tel: 215/665-2000
Fax: 215/665-2013

## CERTIFICATE OF SERVICE

I, the undersigned hereby certifies that a true and correct copy of the foregoing *Reply In Support of the Motion of Defendant BRK Brands, Inc. to Dismiss Plaintiffs' First Amended Original Complaint,* has been served via Certified Mail, Return Receipt requested upon Shiree Salinas, counsel for Plaintiff, at The Atrium, Suite 400, 1300 North Tenth Street, McAllen, TX 78501 and to Mr. Ray Marchan, Harris & Watts, 1926 E. Elizabeth, Brownsville, TX 78520, on this 1st day of May, 2000.

_____
Elizabeth G. Neally