/ 0✓

IN THE U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 2 5 2000

Michael N. Milby
Clerk of Court

| | |
|---|---|
| JOSE GARCIA, Individually and as Representative of the Estate of MANUEL CRUZ, IDALIA GARCIA, Individually; and CYNTHIA COX as Next Best Friend of Brittany Cox, | : CIVIL ACTION : : : NO. B-98-186 : |
| vs. | : : |
| BRK BRANDS, INC. | : |

**EMERGENCY MOTION OF DEFENDANT
BRK BRANDS, INC. FOR SANCTIONS**

**I.**

**Preliminary Statement**

1. This action arises out of the December 1997 carbon monoxide poisoning death of Manual Cruz. Mr. Cruz died when a space heater, improperly fueled with propane gas and not vented to the outside of the house, produced fatal levels of carbon monoxide. Plaintiffs, representatives and heirs of Mr. Cruz, seek to impose liability upon BRK Brands, Inc. ("BRK") for Mr. Cruz' death by alleging that a BRK, First Alert brand **smoke detector** failed to alarm in sufficient time to warn Mr. Cruz of the dangerous levels carbon monoxide in his house.

2. At the very outset of this product liability case, this Court expressed its deep concern that Plaintiffs would be unable to sustain their burden of proof in that the autopsy report indicated Mr. Cruz died of carbon monoxide poisoning. The Court also desired an early resolution of *Daubert* issues, considering that Plaintiffs would have a difficult time finding competent expert witness testimony to meet the Fifth Circuit's stringent standard for expert testimony. For this reason, the Court set an early expert disclosure schedule so that the parties would have an opportunity to examine and move to preclude, well in advance of trial, the testimony of those experts each side

deemed unqualified. (Transcript of May 13, 1999 hearing, pages 31-33, Exhibit "A", and May 18, 1999 Order, Exhibit "B".)

3. Regrettably, Plaintiffs have acted to frustrate the Court's plan. Starting in September, 1999, when they failed to properly and completely serve their Rule 26 expert disclosures and continuing through the present, Plaintiffs have obstructed BRK's efforts in discovering the true identification of Plaintiffs' experts, the opinions Plaintiffs' experts intend to offer at trial and the basis of or facts relied upon in arriving at those opinions.

4. Plaintiffs have either produced incomplete expert reports or failed to produce reports all together. Additionally, Plaintiffs have agreed to deposition dates, only to cancel them at the last minute. Of the expert depositions that have actually gone forward, Plaintiffs withdrew one witness as an expert during the deposition. Another expert was withdrawn and subsequently re-designated as an expert, and yet another expert's testimony was not in anyway consistent with his report; the witness admitting his report was irrelevant to his opinion.

5. Under these circumstances, Plaintiffs' conduct works at cross purposes to this Court's directives on expert disclosures and discovery, imposes substantial prejudice upon BRK and this Court should impose appropriate sanctions.

## II.

### BACKGROUND FACTS

A.   **The Carbon Monoxide Poisoning Incident.**

6. This case arises out of the carbon monoxide poisoning death of Manuel Cruz in his home at 190 Thomae Lane, San Benito, Texas on December 15, 1997. At about 11:30 p.m. on December 16, 1997, one of Mr. Cruz's girlfriends discovered his body. The autopsy of Mr. Cruz determined that he died of carbon monoxide poisoning and that his lungs and trachea showed no signs of soot or smoke deposits. The autopsy also showed that Mr. Cruz had been dead for in excess of 24 hours.

7. The investigation into his death concluded that Mr. Cruz had incorrectly installed the space heater in his house. The space heater, designed to burn natural gas, was fueled with propane. Additionally, the space heater was designed so that the products of its combustion would be vented to the outside of the house. Mr. Cruz failed to vent the space heater so that the products of its combustion, made more toxic because of the improper fuel, vented directly into the living quarters of his house. After burning continuously in his closed house for several hours, and long after Mr. Cruz had become incapacitated and ultimately died, the pollutants produced by the space heater became so concentrated that they reduced the oxygen necessary for the space heater to operate efficiently and the space heater began to produce soot. It was this soot that subsequent investigators found on the ceiling and walls of Mr. Cruz's house.

8. Investigators also found a smoke detector in Mr. Cruz' house. This smoke detector was later identified by Plaintiffs as a First Alert brand smoke detector manufactured by BRK Brands, Inc.

## B. Procedural History.

9. As the Court may recall, Plaintiffs initiated this action by the filing of a Complaint in state court in November, 1998. Plaintiffs alleged that BRK manufactured the smoke detector in Plaintiffs house, that the smoke detector was defective and that it failed to alarm in time to wake Mr. Cruz to the carbon monoxide poisoning hazard in his home. BRK removed the action to this Court and subsequently answered the Complaint.

10. On May 18, 1999, this Court entered an Order directing, *inter alia*, Plaintiffs to designate experts and produce reports and curricula vitae by September 30, 1999. (May 18, 1999 Order, Exhibit "B".)

11. After Plaintiffs filed an Amended Complaint in June, 1999, BRK filed a Motion to Dismiss. While BRK's Motion to Dismiss was pending in the fall of 1999, discovery was suspended except for expert disclosures. This Court dismissed BRK's motion without prejudice and BRK has

re-filed its motion, which is now pending.

12. In their Rule 26 expert disclosures, Plaintiffs identified the following individuals as witnesses expected to give expert testimony on liability issues at trial:

> Douglas Holmes
> E. Wayne McCain
> B. Don Russell
> Morris Cranmer
> Reed McClintock
> Robert Ross
> Michael Schulz
> Jesse Aronstein

(Plaintiffs' Initial and Amended Expert Disclosures, Exhibit "C".) However, the material that accompanied their disclosure was substantially incomplete. For example, Plaintiffs failed to produce any report, list of qualifications, list of testimony or compensation schedule for Dr. Aronstein. Similarly, Plaintiffs did not produce and Mr. McClintock admits to not having prepared an expert report. (R. McClintock, p. 246, Exhibit "D".) As for Mr. Holmes, although his report was produced, it is incomplete in that there is no opinion section. (Report of Mr. Holmes, Exhibit "E".)

13. Following a February 11, 2000 conference before the Court, discovery was placed back on track and the parties attempted to pursue further fact and expert witness discovery. By agreement of counsel, BRK noticed the depositions of Reed McClintock and Robert Ross, for April 5 and 6, 2000. These depositions were to be taken in San Antonio, Texas, a location mutually agreed to by the parties as being convenient to counsel and the experts being deposed. However, late on April 4th, after BRK's counsel had arrived in San Antonio to take the depositions, BRK was advised that Mr. McClintock would not be appearing for his deposition because he had bronchitis. (R. McClintock, pp. 2-3, Exhibit "F".) In lieu of Mr. McClintock's deposition on April 5th, his file as it relates to this matter was produced and reviewed. (Id.) On April 6th, the deposition of Robert Ross went forward, but during the deposition Plaintiffs' de-designated Mr. Ross as an expert and instructed Mr. Ross not to answer questions exploring his opinions and/or conclusions regarding the

facts of this case. (R. Ross, pp. 81-84, Exhibit "G".)

14.     On May 10, 2000, BRK took the deposition of B. Don Russell. During his deposition, Dr. Russell explained that the opinion testimony he intends to provide at the time of trial is completely different than the opinion expressed in his report dated September 28, 1999. In fact, Dr. Russell testified that the opinion he expressed in his expert report was not the relevant issue in this case and that he has had this revised opinion "for a long time." (D. Russell, pp. 63 and 235 and Report of Dr. Russell, Exhibits "H" and "I".)

15.     Even though BRK had been advised at the earlier scheduled deposition where Mr. McClintock failed to appear that Plaintiffs were withdrawing Mr. McClintock as an expert and expected him only to testify as a fact witness, Mr. McClintock's deposition was rescheduled as a fact witness for May 17, 2000. Prior to beginning his deposition BRK's counsel sought confirmation that Plaintiffs intended to withdraw Mr. McClintock as an expert. Even though McClintock had failed no expert report, the Plaintiffs' counsel responded that they would not de-designate Mr. McClintock and that he would provide expert testimony "within his areas of expertise."

16.     In their expert designation, Plaintiff identified McClintock as an expert in the accumulation of smoke and soot to such an extent that the smoke detector would have sounded an alarm before Cruz died. (Exhibit "C".) Nevertheless, during his deposition, Mr. McClintock stated that he was not an expert in smoke detectors, fire cause and origin, gas fueled appliances, fuel gas delivery systems, toxicology, forensics or pathology. (R. McClintock, pp. 51-53, 167, 239, Exhibit "D".)

17.     Additionally, Mr. McClintock testified during his deposition that he relied on several articles in forming his opinion that the subject smoke detector was defectively designed, manufactured and tested. (R. McClintock, pp. 236-237, Exhibit "D".) Although Mr. McClintock was commanded to produce these documents by a properly issued and served subpoena, he failed to produce or even identify them during his deposition. (R. McClintock, p244, and subpoena, Exhibits "D" and "F".) BRK is now required to take his deposition yet again.

# III.

# ARGUMENT

### A. Standard for Disclosure of Expert Witnesses and Sanctions for Failure to Make Expert Disclosures

18.     Federal Rule of Civil Procedure 16(b) authorizes federal courts to control and expedite the discovery process through a scheduling order.  See, <u>Barrett v. Atlantic Richfield Co.</u>, 95 F.3d 375, 380 (5th Cir. 1996).  This Court, in an express effort to control the discovery process as to expert discovery and *Daubert* motions entered its May 18, 1999 Order requiring Plaintiffs to "designate experts and produce reports and curricula vitae by **September 30, 1999**."  May 18, 1999, Exhibit "B".) (emphasis in original.)

19.     The Court's Order simply set the date for expert disclosures required by Fed. R. Civ. P. 26(a)(2).  Furthermore, Rule 26 defines exactly what the report required by this Court's order should contain:

> The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed.R.Civ.P. 26(a)(2)(B).  The Advisory Committee Notes to Rule 26 of the Federal Rules of Civil Procedure state that such reports must be "detailed and complete"  Fed.R.Civ.P. 26 advisory committee's note.  The Notes also explain that the purpose of the report is to avoid the disclosure of "sketchy and vague" expert information.  <u>Id</u>.  Therefore, the report must be written in such a manner that it reflects the testimony to be given by the witness.  <u>Id</u>.

20.     Rule 37(c) of the Federal Rules provides an incentive for disclosure; namely, that a

party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed. Fed.R.Civ.P. 37(c)(1) and Fed.R.Civ.P. 26 advisory committee's notes. Rule 37(c)(1) states:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed...In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under subparagraphs (A), (B) and (C) of subdivision (b)(2) of this rule and may include informing the jury of the failure to make the disclosure.

Rule 37 of the Federal Rules of Civil Procedure does not require that a party file a motion to compel before moving for sanctions. <u>Sierra Club v. Cedar Point Oil Co. Inc.</u>, 73 F.3d 546, 572 (5th Cir. 1996).

21. Indeed, the Advisory Committee Notes to Rule 37 contemplate that it may be more effective in some situations to impose a sanction of excluding evidence instead of an order compelling production:

> If the party required to make the disclosure would need the material to support its own contentions, the more effective enforcement of the disclosure requirement will be to exclude the evidence not disclosed....

Fed.R.Civ.P. 37 advisory committees' note. <u>See also</u>, <u>Sierra Club</u>, 73 F.3d at 572.

**B.   Plaintiffs Should Be Sanctioned For Their Conduct In Relation To The April 5-6, 2000 Ross-McClintock Depositions**

22. Plaintiffs retained Robert Ross in July, 1999 to inspect the space heater involved in Mr. Cruz's carbon monoxide poisoning death. Apparently, Mr. Ross was retained as an expert in order to provide opinion testimony concerning whether the space heater malfunctioned or what role the space heater played in Mr. Cruz's carbon monoxide poisoning death. However, at some point between Mr. Ross's July 23, 1999 inspection of the heater and his April 6, 2000 deposition,

Plaintiffs decided they would not rely upon Mr. Ross to provide expert testimony at trial. Nevertheless, Plaintiffs waited until midway through Mr. Ross' deposition (at 12:02 p.m. precisely) to advise BRK that Plaintiffs were not relying upon him to provide expert testimony.[1] (R.Ross, pp. 81-84, Exhibit "G".) Plaintiffs concealed this information from BRK and its counsel, caused BRK to invest a significant time researching Mr. Ross's background, reviewing Mr. Ross's involvement in other matters and in preparing to take his deposition generally.

23. As previously stated, McClintock did not appear at his April 5, 2000 deposition because he was suffering from bronchitis. Although BRK does not contend that Mr. McClintock's bronchitis was a fabrication intended as a dilatory tactic, bronchitis is certainly not a 24 hour bug or short term virus. If Mr. McClintock was ill or suspected that he may not be able to appear for his deposition, it was Plaintiffs' duty to notify BRK prior to BRK incurring the expense of travelling to San Antonio for the deposition. Had BRK known that Mr. McClintock had bronchitis and that Mr. Ross was not being offered to provide expert testimony, BRK would have postponed the expense and time in traveling to San Antonio so that it could reschedule the depositions for more appropriate times.

24. In traveling to San Antonio for these depositions, BRK expended considerable time, expense and effort and committed significant resources, to prepare for and take the deposition of two of Plaintiffs' experts. Because of the last minute cancellation of Mr. McClintock's deposition and the concealment of Mr. Ross' true role as a fact witness in this matter, BRK incurred substantial costs only to obtain the deposition of one fact witness. Accordingly, this Court should award BRK its fees and expenses incurred in travelling to San Antonio and bar Mr. Ross from giving expert

---

[1] Nevertheless, Plaintiffs have left open the potential to re-offer Mr. Ross as an expert by not formally notifying this Court that he is no longer an expert and by conditioning his withdrawal as an expert on the phrase, "if that changes..." (R. Ross, p. 83, Exhibit "G".)

testimony at the trial of this matter.

C. **Plaintiffs Should Be Sanctioned For Their Conduct Related To Mr. McClintock's May 17, 2000 Deposition.**

25. In Plaintiffs' expert designation, they identified Mr. McClintock as an:

> Expert regarding the accumulation of smoke and soot to such an extent that the smoke detector would have sounded an alarm. Such alarm should have triggered hours earlier than at the time of Mr. Cruz's demise. That such warning would have been effective in alerting Mr. Cruz hours before he was poisoned by carbon monoxide.

(Plaintiffs' Expert Disclosures, Exhibit "C"). Plaintiffs never produced an expert report from McClintock. Indeed, McClintock admitted he never prepared a report in this matter. (R. McClintock, p. 246, exhibit "D").

26. At the May 17, 2000 deposition, Mr. McClintock admitted that he is not an expert in the areas of smoke detection, fire cause and origin, operation of gas fueled appliances, fuel gas delivery systems, forensics, chemistry, toxicology or pathology. (R. McClintock, pp. 51-53, 167, 239, Exhibit "D".) Indeed, Mr. McClintock admitted that has never prepared a report in this matter. (R. McClintock, p. 246, Exhibit "D".) Essentially, Mr. McClintock is an investigator and does not have the education, knowledge or experience to provide the expert testimony for which Plaintiffs have designated him.

27. Despite Mr. McClintock's lack of expertise, particularly in the area of smoke detectors (*Id.* at pp. 167, 236), he attests in an affidavit filed with this Court in support of Plaintiffs' opposition to BRK's Motion to Dismiss, that BRK's smoke detector is defectively designed, manufactured and tested. In his deposition, Mr. McClintock testified that he relied upon a videotape of a 20/20 news show and some articles in the news media to support that statement in the affidavit. (*Id.* at pp. 236-237) Additionally, he relied on testing in which he claims to have participated while employed with the Southwest Research Institute. (*Id.* at pp. 220.) He failed to produce any of this

material either before, or during his deposition.

28. The news articles and test reports were responsive to a subpoena BRK served upon Mr. McClintock in March in conjunction with the original scheduling of his deposition and then again in May for the continuation of his deposition. (*Id.* at pp. 244 and subpoena, Exhibit "F".) However, Mr. McClintock failed to identify or produce any of the news articles or test reports upon which he claims to rely in forming his opinions. (*Id.*)

29. If Mr. McClintock eventually produces material responsive to the subpoena, a further deposition may be necessary to explore the basis of the testing and his understanding of the news articles that Mr. McClintock contends supports his opinions.[2] In other words, counsel for BRK will have to prepare for and travel to take the deposition of Mr. McClintock a third time.

30. In that Plaintiffs' conduct has obstructed BRK's ability to adequately examine Mr. McClintock, Mr. McClintock does not possess any expertise relevant to this case and Mr. McClintock has failed to produce materials responsive to BRK's subpoena and the Federal Rules, and because he did not author a report in this matter, this Court should award BRK its fees and costs incurred in travelling to and taking the deposition of Mr. McClintock and bar Mr. McClintock from offering expert testimony at the time of trial.

**D. Plaintiffs Should Be Sanctioned For Their Failure To Provide A Proper Rule 26 Disclosure Concerning The Anticipated Expert Testimony Of Dr. Russell.**

31. Dr. Russell authored an expert report that indicated he would provide expert testimony at trial regarding the difference between ionization and photoelectric smoke detectors, concluding that BRK's smoke detector was defective because it employed the ionization technology.

---

[2] Although BRK is skeptical about the existence of any such articles or that any reputable "expert" would rely upon information reported by the news media in forming an opinion, BRK must have the opportunity to examine Mr. McClintock concerning his reliance on this material.

(Report of Dr. Russell, Exhibit "I".)

32. However, to defense counsel's complete surprise, during Mr. Russell's deposition, he testified that he does not intend to offer an opinion at trial that the detector in this case failed to alarm because it used ionization rather than photoelectric technology. (D. Russell, p. 63, Exhibit "H".) In fact, Dr. Russell testified that the opinions he expressed in his report are not the relevant issue in this case. (*Id.*) Rather, Dr. Russell intends to offer the opinion that Mr. Cruz's smoke detector purportedly failed to alarm because of alleged corrosion on an internal component of the detector. (*Id.* at p. 28.)

33. Until BRK took Dr. Russell's deposition on May 10th, BRK had no knowledge that he intended to change the opinion he would offer at trial. Nevertheless, Dr. Russell testified that he has had this opinion "for a long time." (D. Russell, p. 235, Exhibit "H".)

34. Since Dr. Russell's proposed testimony is not consistent with his September 28, 1999 expert report, and, by his own admission, his prior opinion is not relevant to this case, this Court should bar Dr. Russell from testifying at the trial of this matter.

E. **Defendant Should Be Sanctioned For The Incomplete Designation Of Jessie Aaronstein As An Expert Witness.**

35. In their Rule 26 expert disclosures, Plaintiffs identify Jesse Aronstein as an expert to testify at time of trial. However, Plaintiffs have failed to produce a list of Dr. Aronstein's qualifications, his fee agreement, his list of trial and/or deposition testimony and, most importantly, Dr. Aronstein's expert report. Accordingly, BRK has no information concerning what opinion or opinions Dr. Aronstein will offer at the time of this trial.

36. Plaintiffs were required by this Court's May 18, 1999 Order to produce all expert reports by September 30, 1999. Plaintiffs' failure to do so has substantially prejudiced BRK in that is does not know what opinion or opinions Dr. Aronstein will offer at trial, does not know the basis

for those opinions and does not know Dr. Aronstein's qualifications to render those opinions.

37.     This Court has ordered *Daubert* motions be filed on or before August 3, 2000. To comply with the Court's Order, Dr. Aronstein's deposition is presently scheduled for June 8, 2000. Absent an expert report produced in compliance with this Court's May 18, 1999 Order and Rule 26(a)(2)(B), it will be impossible for BRK to conduct an effective examination of Dr. Aronstein. Nevertheless, before incurring the substantial costs involved in preparing to take Dr. Aronstein's deposition without the aid of his report or curriculum vitae, BRK respectfully requests that prior to June 8, 2000, this Court bar Dr. Aronstein's testimony at trial.

## IV.

## CONCLUSION

38.     As a result of the last minute cancellation of Mr. McClintock's April 5, 2000 deposition (notice on April 4, 2000 after counsel arrived in San Anotonio) and the withdrawal of Mr. Ross as an expert mid-way through his April 6, 2000 deposition, BRK respectfully requests this Court award it fees and costs incurred related to its preparation for and travel to the April 5-6, 2000 depositions of Mr. McClintock and Mr. Ross.BRK also respectfully requests that this Honorable Court bar any expert or opinion testimony from Mr. Ross at the trial of this matter.

39.     Since Mr. McClintock has not prepared an expert report, has been withdrawn as an expert, only to be re-designated as an expert, has failed to produce material upon which he relied in forming his opinion and cannot possibly offer the expert testimony for which Plaintiffs have designated him, BRK respectfully requests that this Court bar any expert or opinion testimony from Mr. McClintock at the trial of this matter.

40.     Since Dr. Russell has indicated that he will not offer testimony at trial consistent with his expert report and because the opinion expressed in his report is not relevant, BRK respectfully requests that this Court award it fees and costs associated with the preparation for and taking of Dr.

Russell's deposition and that Dr. Russell be barred from providing any expert or opinion testimony at the trial of this matter.

41.     As a result of Plaintiffs failure to produce any expert report or other material related to the anticipated expert testimony of Dr. Aronstein, BRK respectfully requests that this Court bar any expert or opinion testimony from Dr. Aronstein at the trial of this matter.

42.     Finally, BRK respectfully requests that this Court award it the fees and costs incurred in the preparation of the instant motion.

Respectfully submitted,

**ROERIG, OLIVEIRA & FISHER, LLP**
855 West Price Road, Suite 9
Brownsville, Texas 78550
Telephone: (956) 542-5666
Facsimile: (956) 542-0016

By: _____
Rene O. Oliveira
Texas Bar No. 15254700
Federal Bar No. 4033
Elizabeth G. Neally
State Bar No. 14840400
Federal Bar No. 8044

Counsel for Defendant

**COZEN AND O'CONNOR**
JAMES HELLER
TERRY M. HENRY
1900 Market Street
Philadelphia, PA   19103
Tel: 215/665-2000
Fax: 215/665-2013

## CERTIFICATE OF CONSULTATION

I, Elizabeth G. Neally, certify that Terry Henry made an attempt to contact Ray Marchan and Shiree Salinas on May 23, 2000.  Further, correspondence was faxed in the morning of May 24, 2000 to Mr. Marchan and Ms. Salinas, regarding our sanctions request . Mr. Marchan and Shiree Salinas are both opposed to our filing of the Emergency Motion of Defendant BRK Brands, Inc. for Sanctions.

_____
Elizabeth G. Neally

## CERTIFICATE OF SERVICE

I, the undersigned hereby certifies that a true and correct copy of the foregoing ***Emergency Motion of Defendant BRK Brands Inc. For Sanctions***, has been served upon Shiree Salinas, counsel for Plaintiffs, at The Atrium, Suite 400, 1300 North Tenth Street, McAllen, TX 78501 and Mr. Ray Marchan, Harris & Watts, 1926 E. Elizabeth, Brownsville, TX  78520, on this 24th day of May, 2000.

_____
Elizabeth G. Neally