United States District Court
Southern District of Texas
FILED

JUN 16 2000

Michael N. Milby
Clerk of Court

IN THE U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JOSE GARCIA, Individually and IDALIA GARCIA, Individually And as Representative of the Estate of MANUEL CRUZ, Deceased | CIVIL ACTION |
| CYNTHIA COX as Next Friend of BRITTANY COX, | NO. B-98-186 |
| v. | |
| BRK BRANDS, INC. | |

## DEFENDANT'S RESPONSE TO
## (1) PLAINTIFFS' MOTION TO COMPEL SMOKE DETECTOR
## AND (2) PLAINTIFFS' INITIAL RESPONSE TO DEFENDANT'S
## MOTION FOR PROTECTIVE ORDER AND MOTION FOR SANCTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the BRK Brands, Inc., Defendant in the above entitled and numbered cause of action, and files this its Response to Plaintiff Cynthia Cox as next friend of Brittany Cox's Motion to Compel Smoke Detector, and (2) Plaintiffs' Initial Response to Defendant's Motion for Protective Order and Motion for Sanctions, and in support thereof, avers as follows:

I.

Plaintiff filed a Motion to Compel Smoke Detector on June 13, 2000. Plaintiff asked for the first time to have the smoke detector sent to Jesse Aronstein the first week of June, 2000, after the court had already set a hearing on Defendant's Motion for Sanctions and Motion to Compel, that was filed May 25, 2000.

DEFENDANT'S RESPONSE TO (1) PLAINTIFFS' MOTION TO COMPEL SMOKE DETECTOR AND (2) PLAINTIFFS' INITIAL RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND MOTION FOR SANCTIONS
21410.compel.wpd

PAGE 1

At issue in the Defendant's Motion for Sanctions is whether or not Jesse Aronstein should be allowed to testify, given the fact that no report or supporting documentation was filed at the time expert designations were due, with the exception of his name. Therefore, when the request for the smoke detector was made, Plaintiffs were advised that Defendant was opposed to providing the smoke detector to Jesse Aronstein at this time pending a ruling on the Court on this issue.

Defendant would further show that Jesse Aronstein's report was written June 7, 2000, and the request for the smoke detector was made that same week.

Additionally, Reed McClintock's deposition testimony, as well as the Inventory log attached as Exhibit "A" establishes that Plaintiff had every opportunity to provide Dr. Aronstein with the smoke detector in a timely manner prior to the deadline for Plaintiffs' expert reports of November 1, 1999. McClintock, on behalf of Plaintiffs, testified he retained custody of the smoke detector on January 23, 1998. The smoke detector was not moved to a mutual location until November 17, 1999. Plaintiffs' experts had every opportunity to examine the smoke detector during that time. Jesse Aronstein testified in his deposition that he was retained by Plaintiffs in 1999. It is presumed that Plaintiffs retained Aronstein prior to the time they made their initial disclosure of him on October 15, 1999.

Plaintiff's motion fails to indicate any of the above information and seems to indicate that Defendant has globally refused to provide the smoke detector, which is simply not true.

## II.

Defendant would further show that when Plaintiffs requested the deposition of Mark Devine, we advised them that we would oppose such deposition. We also advised that we were not in control of Fred Conforti, George Schoenfelder, or Nick Bellavia. However, until the Plaintiff filed a notice of deposition or subpoenaed these individuals who were not employees of BRK Brands, Inc., there was no need for us to file a motion for protective order. Plaintiffs criticize Defendant for not filing the Motion for Protective Order earlier; however, Defendant did not have standing to object to a deposition that was not yet noticed.

Plaintiffs are relying solely on a former employee of Defendant, David Minnis, to provide testimony that will link a corrosion problem to the subject smoke detector. Minnis' prior testimony has concerned smoke detectors that were manufactured by Pittway Corp. in the 1980s.

BRK Brands, Inc. was not formed until August, 1992. In fact, it will be shown that the subject SA67D smoke detector was not manufactured until 1996. It is not a Pittway product.

There is not a shred of evidence linking Minnis' testimony with any activities by BRK Brands, Inc. and specifically the SA67D detector, except for the fact that it is a smoke detector.

In fact, Minnis has not provided any testimony that would indicate that there was any problem with the contacts in the SA67D smoke detector, which is the smoke detector at issue.

There has been no litigation or substantiated testing that battery powered smoke detectors, such as the SA67D, have failed because of corrosion.

### III.

Defendants had been told on several occasions by Plaintiffs' counsel that they intended to de-designate Jesse Aronstein as a expert witness. Correspondence attached hereto evidences that Defendant had attempted to clarify this situation with Plaintiffs on numerous occasions without success.

Defendant next addresses the Plaintiffs' failure to timely produce designated expert reports and their designation and then de-designation of Plaintiff's experts. Defendants have continually been placed in limbo throughout the discovery phase of this litigation.

Attached is correspondence from defense counsel to Plaintiff's counsel evidencing our numerous attempts to resolve these issues.

In March 2000, when scheduling depositions, defense counsel was told that Plaintiffs were going to de-designate Jesse Aronstein. Defendant prepared a Rule 11 Agreement to that effect. See correspondence dated March 21, 22 & 24, 2000, Exhibit "B" collectively. April 17, 2000 correspondence, Exhibit "C", is attached which reflects that Plaintiffs had advised that they were now not de-designating Aronstein as an expert. Despite Defendant's requests, Plaintiff continued to refuse to provide Aronstein's report, CV, or provide dates for his deposition.

By letter dated May 8, 2000, Exhibit "D", Plaintiffs advised that they were de-designating Doug Holmes as an expert.

Plaintiffs indicate in their response on page 6, "Defense counsel has been effective in neutralizing Plaintiffs' expert Mr. Bob Ross' testimony limiting it to only factual observations of the heater involving this action." This clearly indicates that the deposition of Robert Ross was taken by Defendant because Mr. Ross was identified as an expert. This is direct evidence of Defendant's wasted time and expense in deposing Mr. Ross, prior to the time Plaintiffs designated him.

It was not until Plaintiffs and Defendant returned from lunch, after 80 pages of deposition testimony, that Plaintiff advised for the record that Robert Ross would not be an expert in this case.

> MS. SALINAS: I think probably what we need to do is rather than do it in deposition question/answer format, what we can probably state is this, is that — this is Shiree Salinas from the Law Office of Mark Cantu. It's been presented to me by Helen, an attorney associated with Mr. Ray Marchan, that Mr. Bob Ross is here today for the purposes of providing his deposition regarding factual occurrences of information that he'd gathered while at the scene; that his testimony is limited to that which is factual, rather than for the purposes of offering any expert opinion in this case; and that he also will not be reviewing the defendant's experts' reports for purposes of providing any opinion one way or another.
> If that changes, then Mr. Henry and I've discussed the fact that, of course, he would be entitled to continue the deposition or reschedule the deposition of Mr. Ross; but that's not anticipated at this time.
> MS. DELGADILLO: And that's correct.
> MR. HENRY: It's also correct that Mr. Ross was originally designated as an expert in Plaintiffs' Rule 26 disclosure statement?
> MS. SALINAS: We're not going to do this in deposition fashion. The records reveal whatever they reveal. If Mr. Marchan and Mr. Cantu need to withdraw that, then that will be done; but I don't think we need to do this in a — I mean, this is not the deposition of that attorney.

> MR. HENRY: Well, fair enough. Fair enough. Then just let me state as a statement the, and that is that Mr. Ross was originally designated as an expert in Plaintiffs' Rule 26 expert disclosure statement. And that now, during the deposition, plaintiffs' counsel is advising us that he is being withdrawn as an expert witness and will only testify as to facts that he has obtained knowledge about or came across in his inspection and examination of the space heater.

See deposition of Robert Ross, p.83,1.25 - p.84,1.8, attached hereto for reference as Exhibit "E."

As to Dr. Russell, his testimony best states our position regarding his testifying that corrosion caused the detector not to sound:

> Q. Anywhere in your September 28th, 1999 report reference corrosion being the reason this particular detector did not sound?
> A. No.
> Q. As of September 28, 1999, were you of the opinion that corrosion was the reason this detector did not sound its alarm?
> A. This report did not offer an opinion about why it didn't alarm. I wasn't at that point prepared to do so.
> Q. My question, though, is were you of the opinion at that point that corrosion was the reason this detector did not sound?
> A. I didn't have an opinion one way or the other at that time.
> Q. When did you first derive this opinion?
> A. Once I was presented with materials sufficient to know hat there had been substantial smoke deposition generated by the heater, deposited on the ceiling, et cetera, and under the assumption this was a properly powered and located smoke detector, there are very few alternatives and that would have been one of the few.

Deposition of Dr. Russell, p. 231,15.25 - p.232,1.12 (emphasis added), a copy of which is attached hereto for reference as Exhibit "F".

This testimony clearly indicates that Russell held opinions, other than the opinions that he stated in his report, and that his report was misleading, at the very least to this Defendant, on which theory he would rely on at trial. It was not until his deposition on May 10, 2000, that Defendant first learned of Russell's new theory, even though Russell testified he had reached this conclusion for a long time and advised Plaintiffs' counsel of this prior to his deposition.

Federal Rule of Civil Procedure 26, Disclosures, require expert reports:

> "Shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the date or other information considered by the witness in forming the opinions. . ."

Russell's testimony should be limited to the testimony reflected in his September 28, 1999, report and any reference to corrosion should not be permitted.

### IV.

Plaintiffs' newly devised theory of corrosion would force Defendant to reinvent the wheel. Defendant would have to retain additional experts and rethink this case. It would be unduly burdensome and expensive.

The simple truth is Plaintiffs are unable to rely on their initial theory that the ionization chamber was insensitive to soot, and now have formulated the corrosion theory. At this late date, Plaintiffs should be barred from asserting their new theory as it

would be procedurally incorrect and cause undue hardship on Defendants.

Even if the Plaintiffs were to show that there was corrosion on this detector, they still have a serious problem with establishing causation--that Mr. Cruz died from carbon monoxide before the smoke detector would have sounded. Until Plaintiffs can prove this theory, Plaintiff should not be allowed to go forward on the proposed failure of the detector. The cart is before the horse.

**WHEREFORE, PREMISES CONSIDERED,** Defendant BRK Brands, Inc. requests that this Court strike Plaintiff's Motion to Compel Smoke Detector, and grant Defendant's Motion for Protective Order and For Sanctions as previously filed, and for such other and further relief as is allowed by law and equity.

Respectfully submitted,

ROERIG, OLIVEIRA & FISHER, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520
Telephone: (956) 542-5666
Facsimile: (956) 542-0016

By: _____
Elizabeth G. Neally
State Bar No. 14840400
Federal Bar No. 8044
Cameron County I.D. No. 3506

Rene O. Oliveira
State Bar No. 15254700
Federal Bar No 4033
Cameron County I.D. No. 3507

```
                    COZEN AND O'CONNOR
                    JAMES HELLER
                    TERRY M. HENRY
                    1900  Market Street
                    Philadelphia, PA   19103
                    Telephone: (215) 665-2000
                    Facsimile: (215) 665-2013
```

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certifies that a true and correct copy of the foregoing **Defendant's Response to Plaintiffs' Motion to Compel Smoke Detector and (2) Plaintiff's Initial Response to Defendant's Motion for Protective Order and Motion for Sanctions** by U.S. Postal Service, Certified Mail, Return Receipt Requested, to counsel of record to wit:

| | |
|---|---|
| Ray Marchan | Shiree Salinas |
| **HARRIS & WATTS** | **LAW OFFICES OF MARK CANTU** |
| 1926 E. Elizabeth | The Atrium, Suite 400 |
| Brownsville, Texas 78520 | 1300 North Tenth Street |
| | McAllen, Texas 78501 |

on the 16th day of June, 2000.

_____
Elizabeth G. Neally