*128*

**IN THE U.S. DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

**SEP 2 2 2000**

Michael N. Milby
~~Clerk of Court~~

| | | |
|---|---|---|
| JOSE GARCIA, Individually; | § | |
| IDALIA GARCIA, Individually | § | |
| and as Representative of the Estate of | § | CIVIL ACTION |
| of MANUEL CRUZ;  and CYNTHIA COX | § | |
| as Next Best Friend of BRITTANY COX, | § | NO. B-98-186 |
| | § | |
| vs. | § | |
| | § | |
| BRK BRANDS, INC. | § | |

**ANSWER OF DEFENDANT, BRK BRANDS, INC.**
**TO THE FIRST AMENDED ORIGINAL COMPLAINT OF**
**CYNTHIA COX, AS NEXT FRIEND OF BRITTANY COX**

Defendant, BRK Brands, Inc., by and through its undersigned counsel, hereby files and serves upon plaintiff its Answer and Affirmative Defenses to the First Amended Original Complaint of plaintiff Cynthia Cox, next friend of Brittany Cox.  As such, BRK Brands, Inc. answers and avers as follows:

**I.**

1.0    BRK is without sufficient information or knowledge to form a belief as to the truth of the averment in this paragraph.  Therefore it is denied.

1.01.    Admitted in part, denied in part.  BRK admits that this Court has original jurisdiction over this matter.  However, BRK denies that its principal place of business is in Delaware.  Rather, BRK is incorporated under the laws of the State of Delaware, but maintains its principal place of business in Illinois.

CNLPDF - www.fasoo.com

## II.

2.     Admitted in part, denied in part. BRK admits that the events made subject to this law suit took place at and around 190 Thorne Lane, San Benito, Cameron County, Texas. However, BRK specifically denies that Mr. Cruz died of asphyxiation on December 16, 1997, when a smoke detector failed to warn him of the smoke in his house. Rather, Mr. Cruz died of carbon monoxide poisoning as a result of an improperly installed and fueled gas fired space heater between December 14, 1997 and December 16, 1997. (See Death Certificate, pathology report and Affidavit of Dr. DeWitt Davenport, attached hereto as Exhibit "A".)

## III.

3.     Admitted in part, denied in part. BRK admits that it was and is engaged in, among other things, the business of designing, manufacturing, distributing and selling smoke detectors. By way of further answer, BRK specifically denies that any of its smoke detectors are designed or intended to provide early warning of a carbon monoxide poisoning hazard. Many of plaintiff's allegations, such as those averring defect, are conclusions of law to which no response is required. Nevertheless, BRK denies these and the remaining allegations of paragraph 3.0.

## IV.

4.     Denied. BRK denies the many and varied factual allegations in paragraph 4.0. By way of further answer, BRK specifically denies that any of its smoke detectors are designed or intended to provide early warning of a carbon monoxide poisoning hazard. To the extent allegations in paragraph 4.0 constitute conclusions of law, no response is required. Nevertheless, they are denied.

## V.

5.01    Denied. BRK denies that it was negligent, negligent per se and/or grossly negligent in any way, including but not limited to, in the designing, testing, distributing, manufacturing and/or selling of any smoke detector or component system. By way of further answer, BRK specifically denies that any of its smoke detectors are designed or intended to provide early warning of a carbon monoxide poisoning hazard. BRK further denies each and every specific instance of negligence alleged by plaintiffs in paragraph 5.01. To the extent the allegations of sub-paragraphs 19 and 20 constitute scandalous and/or impertinent material, they should be stricken. Finally, many of plaintiff's allegations, such as those averring defect, are conclusions of law to which no response is required. Nevertheless, BRK denies these and all remaining allegations of paragraph 5.01.

5.02.    Denied. BRK denies that its smoke detectors were designed or intended to provide early warning of "smoking hazards" or carbon monoxide poisoning hazards. To the extent the allegations of paragraph 5.02 constitute conclusions of law, no response is required. Nevertheless, they are denied. BRK also denies that its actions reflected a total want of care and/or conscience and willful indifference to the life and safety of plaintiffs and others.

## VI.

6.01    Denied. BRK denies that it produced any smoke detector or other product with either no or inadequate instructions concerning the useful life of the product. BRK denies that the smoke detector allegedly in Mr. Cruz' house during the events leading to this lawsuit was unreasonably dangerous for its intended use. Furthermore the allegations of this paragraph constitute conclusions of law to which no response is required. Therefore, they are denied.

3

6.02.    Admitted in part, denied in part. BRK admits that it has not recalled any of its battery powered ionization smoke detectors. As to product identification, BRK only admits that it designed and manufactured the smoke detector produced by plaintiff for examination.  BRK denies that its failure to recall its battery powered ionization smoke detectors was negligent, grossly negligent or reflected a conscious indifference to the rights, welfare and safety of the public.  BRK also denies that its failure to recall its battery powered ionization smoke detectors was a proximate cause of Mr. Cruz' death.  The allegations of paragraph 6.02 constitute conclusions of law to which no response is required.  To the extent a response is required, they are denied.

6.03.    BRK specifically denies that its battery powered ionization smoke detectors are or were, in any way, defective.  By way of further answer, BRK denies that its smoke detectors were designed or intended to provide consumers early warning of "smoke accumulation".  By way of further response, the allegations of this paragraph constitute conclusion of law to which no response is required.  Therefore, they are denied.

6.04.    Admitted in part, denied in part.  BRK denies that its battery powered ionization smoke detectors are, in any way, defective or unreasonably dangerous. By way of further response, the allegations of this paragraph constitute conclusion of law to which no response is required. Therefore, they are denied.

6.05.    Denied.  BRK denies that the smoke detector allegedly installed in Manuel Cruz' house was, in any way, unsafe.  BRK further denies that its actions, in any way, reflect a total want of care, conscience disregard or indifference to the life and safety of plaintiffs or disregard of its duties.  By way of further response, the allegations of this paragraph constitute conclusion of law to which no response is required.  Therefore, they are denied.

4

6.06.   Denied.  BRK denies that smoke detector allegedly installed in Mr. Cruz' house was, in any way, defective or not as warranted nor fit for the purpose for which it was to be used.  BRK denies, in any way, that it breached any warranties or that its actions, in any way, constituted violations of the Texas Deceptive Trade Practices Consumer Protection Act. By way of further response, the allegations of this paragraph constitute conclusion of law to which no response is required.  Therefore, they are denied.

## VII

7.0.   Denied.  The allegation of paragraph 7.0 constitutes a conclusion of law to which no response is required.  To the extent a response is required, it is denied.

## VIII

8.0.   Denied.  BRK denies each and every allegation of paragraph 8.0.

8.01.   Denied.  BRK denies each and every allegation of paragraph 8.01.  To the extent the allegations of paragraph 8.01 constitute scandalous and/or impertinent material, they should be stricken.

8.02   Denied.  BRK denies each and every allegation of paragraph 8.02.

8.03.   Denied.  BRK denies each and every allegation of paragraph 8.03.  To the extent the allegations of paragraph 8.03 constitute scandalous and/or impertinent material, they should be stricken.

8.04.   Denied.  BRK denies each and every allegation of paragraph 8.04.

8.05   Denied.  BRK denies each and every allegation of paragraph 8.05.

8.06. Denied.  BRK denies each and every allegation of this paragraph.  To the extent the allegations of this paragraph constitute conclusions of law, no response is required.  Therefore they are denied.

5

8.07.    Denied. BRK denies each and every allegation of this paragraph.  To the extent the allegations of this paragraph constitute conclusions of law, no response is required.  Therefore they are denied.

8.08    Denied. BRK denies each and every allegation of this paragraph.  To the extent the allegations of this paragraph constitute conclusions of law, no response is required.  Therefore they are denied.

8.09.    Denied. BRK denies each and every allegation of this paragraph.  To the extent the allegations of this paragraph constitute conclusions of law, no response is required.  Therefore they are denied.

8.10.    Denied. BRK denies each and every allegation of this paragraph.  To the extent the allegations of this paragraph constitute conclusions of law, no response is required.  Therefore they are denied.

8.11.    Denied.  BRK is not aware of any other incident in which a consumer alleges that a smoke detector manufactured by BRK failed to provide warning of a carbon monoxide poisoning hazard produced by a home appliance, such as a space heater.  By way of further answer, BRK denies the remaining allegations in paragraph 8.11.

8.12.    Denied. BRK denies each and every allegation of this paragraph.  To the extent the allegations of this paragraph constitute conclusions of law, no response is required.  Therefore they are denied.

8.13.    Denied. BRK denies each and every allegation of this paragraph.  To the extent the allegations of this paragraph constitute conclusions of law, no response is required.  Therefore they are denied.

6

## IX

9.01.   BRK is without sufficient knowledge or information to form a belief as to the truth of the averments in paragraph 9.01.  Therefore, they are denied.  To the extent the allegations of paragraph 9.01 aver that Mr. Cruz' death was a result of a smoke detector failure, they are specifically denied.  To the extent the allegations of this paragraph constitute conclusions of law, no response is required.  Therefore, they are denied.

## X

10.01.  BRK is without sufficient information or knowledge to form a belief as to the truth of the averments in paragraph 10.01.  Therefore, they are denied.  To the extent the allegations of this paragraph constitute conclusions of law, no response is required.  To the extent the allegations of paragraph 10.01 aver that Mr. Cruz' death was caused by or in any way related to BRK's conduct, they are denied.

## XI

11.0.   Denied.

**WHEREFORE, PREMISES CONSIDERED**, Defendant, BRK Brands, Inc., respectfully requests that upon the trial of this cause, (1) Plaintiffs take nothing by their claims; (2) judgment be entered awarding BRK its reasonable costs and expenses, including reasonable attorneys' fees for the preparation of trial, and any appeals of this action; and (3) such other and further relief to which BRK may show itself to be justly entitled.

### AFFIRMATIVE DEFENSES
### FIRST DEFENSE

1.      Plaintiff's First Amended Original Complaint fails to state a claim against BRK upon which relief can be granted.

CIMPDF - www.fenrir.com

## SECOND DEFENSE

2.      The product described in Plaintiff's First Amended Original Complaint was misused, improperly applied, or improperly installed by a party other than BRK, and therefore Plaintiffs may not recover against BRK.

## THIRD DEFENSE

3.      The damages of which Plaintiff complains were not proximately caused by BRK's actions.

## FOURTH DEFENSE

4.      Plaintiff is barred from recovering damages for breach of implied warranties that were part of a valid disclaimer by BRK.

## FIFTH DEFENSE

5.      In the unlikely event that any issue on exemplary damages against BRK may be submitted to the jury and/or to be awarded, BRK invokes the definitions, requirements and limitations on exemplary damages provided by §41.001 et seq. of the Texas Civil Practice & Remedies Code.

## SIXTH DEFENSE

6.      If it is proven that BRK manufactured any products installed in Mr. Cruz' home, plaintiff cannot recover any consequential damages because they are expressly excluded by a written limited warranty.

## SEVENTH DEFENSE

7.      Plaintiff's claims for punitive damages are barred in a strict liability defect case involving a mass-produced, widely-marketed product.

8

## EIGHTH DEFENSE

8.     BRK gives notice that it intends to rely upon any other defenses that may become available during discovery in this case, and reserves the right to amend this Answer to assert those defenses.

## NINTH DEFENSE

9.     Plaintiffs' causes of action are barred in whole or in part by the applicable Statutes of Limitations.

## TENTH DEFENSE

10.     Plaintiff's causes of action are barred in whole or in part by the Doctrines of Latches, Waiver and Estoppel.

## ELEVENTH DEFENSE

11.     Plaintiff's original petition is defective in that plaintiff has failed to join indispensable parties.

## TWELFTH DEFENSE

12.     BRK relies upon the Doctrine of Comparative Fault as a bar to, or mitigate, any recovery by any plaintiff in this action.

## THIRTEENTH DEFENSE

13.     The plaintiff's alleged damages resulted from independent, superseding and/or intervening causes unrelated to any conduct of BRK.

## FOURTEENTH DEFENSE

14.     BRK relies upon the Doctrine of Comparative Fault, and avers that plaintiff's injuries and damages were directly and proximately caused by Manuel Cruz' negligence.  Mr. Cruz' negligence, upon information and belief, includes but is not limited to causing his own death, which resulted in the injuries and damages, if any, Plaintiff claims to have suffered as a result of his death.

9

### FIFTEENTH DEFENSE

15.     Mr. Cruz' failure to exercise reasonable care by installing a space heater in his home, or by having a space heater installed in his house, without proper or adequate ventilation for the reasonably foreseeable flue gases, such as carbon monoxide, that would be produced by the space heater was the direct and proximate cause of his death.

### SIXTEENTH DEFENSE

16.     Mr. Cruz' failure to exercise reasonable care by installing a space heater in his home, or by having a space installed in his home, supplied with an improper fuel that resulted in a deficient fuel mixture was the direct and proximate cause of his death.

### SEVENTEENTH DEFENSE

17.     Mr. Cruz' failure to exercise reasonable care by installing a device to provide early warning of carbon monoxide poisoning danger was the direct and proximate cause of his death.

### EIGHTEEN DEFENSE

18.     The product plaintiffs clam was defective, a smoke detector, was not designed, manufactured, marketed or sold for the intended purpose of providing early warning of carbon monoxide poisoning hazards.

### NINETEEN DEFENSE

19.     It was not reasonably foreseeable that Mr. Cruz would rely upon a smoke detector to provide early warning of carbon monoxide poisoning hazards.

### TWENTIETH DEFENSE

20.     BRK relies upon the Doctrine of Comparative Fault and avers, upon information and belief, that a non-party manufactured a certain space heater that caused, along with Manuel Cruz' own negligence, the death of Manuel Cruz, which resulted in the injuries and damages, if any, Plaintiff claims to have suffered as a result of his death.

10

## TWENTY-FIRST DEFENSE

21.     Plaintiff's alleged injuries and damages were not directly and proximately caused by any act or omission of BRK.

## TWENTY-SECOND DEFENSE

22.     BRK denies that it is guilty of any negligence or wrong doing of any nature whatsoever, denies that it manufactured or sold any product that was in a defective condition or unreasonably dangerous in any regard and specifically denies that it is liable to plaintiff under any theory of law alleged in the First Amended Original Petition.

## TWENTY-THIRD DEFENSE

23.     To the extent plaintiff alleges fraud, those allegations are not pled with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

## TWENTY-FOURTH DEFENSE

24.     Plaintiff's claims for punitive damages are in contravention of the rights of BRK under the below listed constitutional provisions:

A.     The commerce clause of Article I, Section 8 of the United States Constitution;

B.     The contracts clause of Article I, Section 10 of the United States Constitution;

C.     The prohibition against ex-post facto laws embodied in Article I, Section 10 of the United States Constitution;

D.     The supremacy clause of Article VI of the United States Constitution;

E.     The free speech clause of the First Amendment of the United States Constitution;

F.     The due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution;

G.     The takings clause of the Fifth Amendment of the United States Constitution;

H.     The excessive fines clause of the Eighth Amendment of the United States Constitution;

I.     The equal protection clause of the Fourteenth Amendment of the United States Constitution; and

J.     The Constitution of the State of Texas.

11

## TWENTY-FIFTH DEFENSE

25.     Because of the lack of clear standards, any imposition of punitive damage against BRK is unconstitutionally vague and/or overly broad.

## TWENTY-SIXTH DEFENSE

26.     BRK did not breach any warranties, express or implied.

## TWENTY-SEVENTH DEFENSE

27.     BRK denies that it was guilty of any fraudulent conduct.

## TWENTY-EIGHTH DEFENSE

28.     Due to spoliation, BRK has been prejudiced in that it has been unable to make an appropriate investigation in order to prepare defenses on its own behalf.

## TWENTY-NINTH DEFENSE

29.     Plaintiff has failed to state a claim for which relief can be granted for breach of warranty.

## THIRTIETH DEFENSE

30.     Plaintiff has failed to state a claim for which relief can be granted for violation of the Texas Deceptive Trade Practices Act.

## THIRTY-FIRST DEFENSE

31      Plaintiff has failed to state a claim for which relief can be granted under a civil conspiracy theory.

## THIRTY-SECOND DEFENSE

32.     Plaintiff has failed to state a claim for which relief can be granted for violation of the Consumer Product Safety Act.

## THIRTY-THIRD DEFENSE

33.     BRK hereby gives notice to Plaintiff, as stated in its Answer that it lacks sufficient
knowledge or information upon which to form a belief as to the truth of certain allegations contained
in plaintiff's First Amended Original Complaint or specific knowledge of actions on the part of
plaintiff or other persons, that may have contributed to or caused plaintiff's alleged damages.  Until
BRK avails itself of its rights in discovery, it cannot be determined if it will assert the above-stated
affirmative defenses at trial.  BRK asserts these defenses now to preserve its right to assert them at
trial, to give Plaintiff notice of BRK's intention to assert these defenses and avoid waiver of any
defenses.

## THIRTY-FOURTH DEFENSE

34.     All allegations not heretofore admitted or denied are here and now denied as if
specifically set forth and denied.  BRK reserves the right to amend its Answer in the event additional
information becomes available or comes to the attention of BRK through further investigation or
discovery.

**WHEREFORE, PREMISES CONSIDERED**, Defendant, BRK Brands, Inc., respectfully
requests that upon the trial of this cause, (1) Plaintiffs take nothing by their claims; (2) judgment be
entered awarding BRK its reasonable costs and expenses, including reasonable attorneys' fees for
the preparation of trial, and any appeals of this action; and (3) such other and further relief to which
BRK may show itself to be justly entitled.

Respectfully submitted,

**ROERIG, OLIVEIRA & FISHER**
855 West Price Road, Suite 9
Brownsville, TX 78520
Telephone: (956) 542-5666

By:_____
Rene O. Oliveira
State Bar No. 15254700
Federal Bar No. 4033
Fax No. 542-0016

13

Elizabeth G. Neally
State Bar No. 14840400
Federal I.D. No. 8044

### COZEN AND O'CONNOR

JAMES HELLER

TERRY M. HENRY
1900 Market Street
Philadelphia, PA 19103
Tel: 215/665-2000
Fax: 215/665-2013

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certifies that a true and correct copy of the foregoing *Answer of Defendant BRK Brands, Inc. to the First Amended Original Complaint of Jose Garcia, Individually and Idalia Garcia Individually and as Representative of the Estate of Manuel Cruz, Deceased* has been served upon counsel of record by Certified Mail, Return Receipt Requested, to counsel of record, to wit:

Ms. Shiree Salinas
**LAW OFFICES OF MARK CANTU**
1300 North Tenth Street, Suite 400
McAllen, Texas 78501

Mr. Ray Marchan
Mr. Brian Harris
Mr. Mikal Watts
**HARRIS & WATTS, P.C**
1926 E. Elizabeth
Brownsville, TX   78520

on this 22nd day of September, 2000.

Elizabeth G. Neally

Case 1:98-cv-00186   Document 128   Filed in TXSD on 09/22/2000   Page 15 of 20

# STATE OF TEXAS — CERTIFICATE OF DEATH

TE FILE NUMBER

| 1 NAME OF DECEASED (a) FIRST | (b) MIDDLE | (c) LAST | (d) MAIDEN | 2 SEX | 3 DATE OF DEATH |
|---|---|---|---|---|---|
| MANUEL | | CRUZ | | MALE | 12-16-1997 |

| 4 DATE OF BIRTH | 5. AGE (IN YEARS) | IF UNDER 1 YR MO DAYS | IF UNDER 1 DAY HOURS MIN | 6 BIRTH PLACE (CITY & STATE OR FOREIGN COUNTRY) | 7 SOCIAL SECURITY NO |
|---|---|---|---|---|---|
| 06-07-1968 | 29 | | | ARBERTHY, TEXAS | 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 |

| 8 RACE | 9a WAS THE DECEDENT OF HISPANIC ORIGIN? | 9b. IF YES, SPECIFY (MEXICAN, CUBAN PUERTO RICAN, ETC.) | 10 WAS DECEDENT EVER IN U.S. ARMED FORCES? | 11 EDUCATION (SPECIFY HIGHEST GRADE COMPLETED, ELEM OR SECONDARY (0-12) COLLEGE (13-16, 17+) |
|---|---|---|---|---|
| WHITE | ☒ YES ☐ NO | MEXICAN | ☒ YES ☐ NO | 12 |

| 12 MARITAL STATUS | 13. SURVIVING SPOUSE (IF WIFE, GIVE MAIDEN NAME) | 14a DECEDENT'S USUAL OCCUPATION | 14b KIND OF BUSINESS OR INDUSTRY |
|---|---|---|---|
| ☒ MARRIED ☐ NEVER MARRIED ☐ WIDOWED ☐ DIVORCED | SOFIA CASTILLO | POLICE OFFICER | LAW ENFORCEMENT |

| 15a RESIDENCE STREET ADDRESS | 15b CITY OR TOWN |
|---|---|
| 190 THOMAE LANE | SAN BENITO |

| 15c COUNTY | 15d STATE | 15e ZIP CODE | 15f INSIDE CITY LIMITS |
|---|---|---|---|
| CAMERON | TEXAS | 78586 | ☒ YES ☐ NO |

| 16 FATHER'S NAME | 17 MOTHER'S MAIDEN NAME |
|---|---|
| JOSE GARCIA | IDALIA ZUNIGA |

18 PLACE OF DEATH (CHECK ONLY ONE)

HOSPITAL: ☐ INPATIENT ☐ ER/OUTPATIENT ☐ DOA   OTHER ☐ NURSING HOME ☒ RESIDENCE ☐ OTHER (SPECIFY)

| 19 COUNTY OF DEATH | 20 CITY OR TOWN (IF OUTSIDE CITY LIMITS, GIVE PRECINCT NO) | 21 NAME OF HOSPITAL OR INSTITUTION (If not in institution, show street address) |
|---|---|---|
| CAMERON | SAN BENITO | 190 THOMAE LANE |

| 22. INFORMANT — SIGNATURE & RELATIONSHIP | 23 MAILING ADDRESS OF INFORMANT |
|---|---|
| x Idalia Z Garcia   mother | 174. Chappell LN· SAN Benito |

| 24 METHOD OF DISPOSITION | 25a PLACE OF DISPOSITION (NAME OF CEMETERY, CREMATORY OR OTHER PLACE) | 25b | 29 NAME & ADDRESS OF FUNERAL HOME |
|---|---|---|---|
| ☒ BURIAL | MONT META MEMORIAL PARK | Section Lawn Crypt | THOMAE-GARZA FUNERAL DIR. I. |
| ☐ CREMATION | 26 LOCATION (CITY, STATE) | Block | 395 S. SAM HOUSTON |
| ☐ REMOVAL FROM STATE | SAN BENITO, TEXAS | Lot 2D | SAN BENITO, TEXAS 78586 |
| ☐ DONATION | 27 SIGNATURE OF FUNERAL DIRECTOR OR PERSON ACTING AS SUCH | Space 3 | |
| ☐ OTHER (SPECIFY) | #10182 | Unknown ☐ | |
| | (signature) | 28 DATE OF DISPOSITION 12-20-1997 | |

30. CERTIFIER

☐ CERTIFYING PHYSICIAN — TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE TIME, DATE, AND PLACE, AND DUE TO THE CAUSE(S) AND MANNER AS STATED

☒ MEDICAL EXAMINER ☐ JUSTICE OF THE PEACE — ON THE BASIS OF EXAMINATION AND/OR INVESTIGATION, IN MY OPINION, DEATH OCCURRED AT THE TIME, DATE, PLACE, AND DUE TO THE CAUSE(S) AND MANNER AS STATED

| 31 SIGNATURE & TITLE OF CERTIFIER | 32 DATE SIGNED MO DAY YEAR | 33 TIME OF DEATH |
|---|---|---|
| (signature) | 01-26-98 | 12:40 A M |

34 PRINTED NAME & ADDRESS OF CERTIFIER

J.P. BENNY OCHOA P.O. Box 1563 Port Isabel Texas 78578

35 PART 1 ENTER THE DISEASES, INJURIES OR COMPLICATIONS THAT CAUSED THE DEATH. DO NOT ENTER THE MODE OF DYING SUCH AS CARDIAC OR RESPIRATORY ARREST, SHOCK, OR HEART FAILURE. LIST ONLY ONE CAUSE ON EACH LINE.

Approximate Interval Between Onset and Death

IMMEDIATE CAUSE (Final disease or condition resulting in death) → a. Carbon monoxide poisoning — unknown

DUE TO (OR AS A LIKELY CONSEQUENCE OF):

Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (disease or injury that initiated events resulting in death) LAST

b. _____

DUE TO (OR AS A LIKELY CONSEQUENCE OF):

c. _____

DUE TO (OR AS A LIKELY CONSEQUENCE OF):

d. _____

PART 2 OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN PART 1 (i.e., substance abuse, diabetes, smoking, etc.)

| 36a. AUTOPSY? | 36b AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? |
|---|---|
| ☒ YES ☐ NO | ☒ YES ☐ NO |

| 37 DID TOBACCO USE CONTRIBUTE TO DEATH | 38 DID ALCOHOL USE CONTRIBUTE TO DEATH | 39 WAS DECEDENT PREGNANT |
|---|---|---|
| ☐ YES ☐ PROBABLY ☐ NO ☒ UNKNOWN | ☐ YES ☐ PROBABLY ☐ NO ☒ UNKNOWN | AT TIME OF DEATH ☐ YES ☒ NO ☐ UNK / WITHIN LAST 12 MO ☐ YES ☒ NO ☐ UNK |

| 40 MANNER OF DEATH | 41a DATE OF INJURY | 41b TIME OF INJURY | 41c INJURY AT WORK | 41d PLACE OF INJURY — AT HOME, FARM, STREET, FACTORY, OFFICE ETC. (SPECIFY) |
|---|---|---|---|---|
| ☒ NATURAL | found on 12/16/97 | unknown M | ☐ YES ☒ NO | home |
| ☐ ACCIDENT | | | | |
| ☐ SUICIDE | 41e LOCATION (STREET AND NUMBER, CITY OR TOWN, STATE) | | | |
| ☐ HOMICIDE | 190 Tomae Lane, Green Valley Farms a subdivision of San Benito, Texas | | | |
| ☐ PENDING INVESTIGATION | 41f DESCRIBE HOW INJURY OCCURRED victim died of ashphyxiation from Carbon Monoxide which came from a gas heating system(heater). Victim was in bed when found. | | | |
| ☐ COULD NOT BE DETERMINED | | | | |

| 42a. REGISTRAR FILE NO. | 42b. DATE RECEIVED BY LOCAL REGISTRAR | 42c. SIGNATURE OF LOCAL REGISTRAR |
|---|---|---|
| 05-030-97 | 01/28/98 | (signature) |

(left margin vertical text): Texas Department of Health — Bureau of Vital Statistics   WARNING The penalty for knowingly making a false statement in this form can be 2-10 years in prison and a fine of up to $10,000. (Health and Safety Code, Sec. 195, 1989)

## AFFIDAVIT OF DEWITT S. DAVENPORT, M.D.

STATE OF TEXAS       :
                            : S.S.
COUNTY OF CAMERON    :

**BEFORE ME,** the undersigned authority, on this day personally appeared Dewitt S. Davenport, M.D., known to me to be the person whose name is subscribed hereto. Being first duly sworn, upon oath as stated as follows:

My name is Dewitt S. Davenport. I am over the age of 18 (eighteen) years, of sound mind and I am competent to make this Affidavit. The facts contained in this Affidavit are based upon my personal knowledge and are true and correct. I make this Affidavit freely, voluntarily and without coercion.

I am a pathologist employed by the Valley Baptist Medical Center.

On December 17, 1997 at 10:30 a.m. I performed an autopsy on Manuel Cruz. My findings were that, at the time of his death, Mr. Cruz had a carboxyhemoglobin level of 49.1% and a blood alcohol of 0.055g/dl. There was no evidence of foul play and no evidence of significant natural disease. Mr. Cruz' larynx, trachia, bronchi and lungs were unremarkable, showing no evidence of soot or smoke inhalation.

The conclusion I formed based upon the findings of Mr. Cruz' autopsy was that he died of carbon monoxide poisoning before he inhaled any smoke or soot and more than 24 hours before his autopsy.

"As a pathologist with Valley Baptist Medical Center, I am the records custodian for Pathology Department, Valley Baptist Medical Center.

"Attached hereto are three (3) pages of the pathology records at Valley Baptist Medical Center. These documents were prepared at my direction and signed by me.

"These said three (3) pages of records pertaining to Manuel Cruz, deceased, are kept by the Valley Baptist Medical Center, and it was in the regular course of business at Valley Baptist Medical Center, for an employee thereof, with personal knowledge of the act, event or condition recorded to make the memorandum or record or to transmit information thereof to be included in such record and the memorandum was made at or near the time of the act or event recorded or reasonably soon thereafter.

"The autopsy records of Manuel Cruz, deceased, attached hereto are exact duplicates of the originals.

Further Affiant Sayeth Not."

_____
Dewitt S. Davenport, M.D.

SWORN TO AND SUBSCRIBED before Me DEWITT S. DAVENPORT, M.D., on this 19TH day of March, 2000, to certify which witness my hand and seal of office.

_____
Notary Public, Sate of Texas

Printed Name: ANA MIA CHAVEZ

My Commission Expires: 02-04-2003

PATHOLOGY
P.O. Drawer 2588
Harlingen, Texas 78551


Lawrence J. Dahm, M.D.                    DeWitt S. Davenport, M.D.
Margie W. Cornwell, M.D.                  Wm. Eddy,HT,CT(ASCP)CT(IAC)

                    January 6, 1998

OA-97-0234                          Date of Autopsy: 12/17/97
CRUZ,MANUEL                         Time of Autopsy: 10:30 a.m.
Authorized by: Justice of the Peace Performed by: Dr. Davenport
               Bennie Ochoa, III    Assisted by: Argullin/Picacio
                                    Witnessed by: None

===========================================================================

FINAL ANATOMIC DIAGNOSES:

   1.  Early decompositional changes (approximately 24 hours of post
       mortem interval).

   2.  Chemical findings of carbon monoxide poisoning (49.1%).


FINAL SUMMARY:

     This man died of carbon monoxide poisoning.  The level was 49.1%.
The blood alcohol was 0.055 g/dl.  No other evidence of foul play was seen
and no significant natural disease was identified.


                         DeWitt S. Davenport, M.D.
                                  Pathologist
DSD/bpc
01/06/98


(continued on next page)

PROPERTY:

The decedent is wearing plaid underwear.  No other property is seen.

GROSS DESCRIPTION:

EXTERNAL EXAMINATION:

The body is of a man who is approximately 5 feet, 10 inches and
approximately 200 pounds.  Livor mortis and rigor mortis are absent.  He
has short brown hair with male-pattern baldness.  The eyes are brown and
the mouth is unremarkable.  He has skin slip on his back and extensive
greenish discoloration from the groin up.  The scrotum is edematous.
Unidentifiable tattoos are present on the left forearm and left index
finger.  The right shoulder contains a tattoo of an eagle.  No additional
abnormalities are seen.

INTERNAL EXAMINATION:

The body is opened in the standard fashion.  Organ position is
normal.  The cavities are dry and the membranes are smooth and glistening.
Soft tissue, especially muscle, are bright pink.

CARDIOVASCULAR:

The heart weights 290 gm.  The coronary arteries are patent and the
chambers and valves are normal.

RESPIRATORY TRACT:

The larynx, trachea, and bronchi are unremarkable.  The right and
left lungs weigh 530 and 580 gm, respectively, and they are unremarkable.

GASTROINTESTINAL TRACT:

The esophagus is normal.  The stomach is empty.  The small and large
bowel, gallbladder, vermiform appendix, pancreas, and biliary tree of
normal.  The liver weighs 1120 gm and it is normal.

ENDOCRINE:

No abnormalities are seen in the thyroid or adrenal glands.

HEMIC-LYMPHATIC:

The lymph nodes are normal.  The thymus is atrophied, and the bone
marrow is dark brown.  The spleen weighs 150 gm and is normal.

(continued on next page)

## GENITOURINARY TRACT:

Each kidney weighs 105 gm.  The capsule strips with ease revealing a smooth shiny cortical surface.  Cortices are normal thickness.  The medullae, collecting systems, and urinary bladder are normal.

## MUSCULOSKELETAL/INTEGUMENTARY:

No additional lesions seen.

## CENTRAL NERVOUS SYSTEM:

Not examined.

## MICROSCOPIC EXAMINATION:

Sections of skeletal muscle, lungs, spleen, heart, liver, and kidney were examined microscopically.  All show marked autolytic effect.  Toxicology, please see attached results.

DSD:bpc