/70

IN THE U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**JUL 1 2 2002**

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JOSE GARCIA, Individually and | : | |
| as Representative of the Estate | : | CIVIL ACTION |
| of MANUEL CRUZ, IDALIA GARCIA, | : | |
| Individually; and CYNTHIA COX as | : | |
| Next Best Friend of Brittany Cox, | : | NO. B-98-186 |
| | : | |
| vs. | : | |
| | : | |
| BRK BRANDS, INC. | : | |

## THE OPPOSITION OF BRK BRANDS, INC.
## TO THE OBJECTIONS OF PLAINTIFFS AND INTERVENORS
## TO THE JUNE 17, 2002 ORDER AND OPINION OF
## MAGISTRATE JUDGE JOHN BLACK

Defendant, BRK Brands, Inc. by and through its undersigned counsel, hereby responds to

the objections raised by plaintiffs and intervenors to the June 17, 2002 Order of Magistrate Judge

John Black setting forth this Court's determination on BRK's Motion to Exclude Plaintiffs' Experts.

**I.     STATEMENT OF FACTS AND PROCEDURAL HISTORY**

1.     On December 16, 1997, Manual Cruz was discovered dead in his home at 190

Thomas Lane, San Benito, Texas. Mr. Cruz had previously installed a large, gas-fueled space heater

with a supply of LP-Gas (liquid propane gas) and without venting. The heater, however, was

designed to burn natural gas and to be connected to a flue. His improper fueling and installation

caused lethal gases from the combustion process, including carbon monoxide, to be vented directly

into the living space of his house. An autopsy revealed that Mr. Cruz died as a result of carbon

monoxide poisoning and before he inhaled any soot or smoke.

1

2.      The plaintiffs in this case filed suit against BRK, a manufacturer of smoke detectors, alleging that a BRK model SA67D smoke detector, installed in the Cruz residence at the time of the incident, "failed to warn [Cruz] of the smoke in his house." (See Plaintiffs' First Amended Complaint, Docket No. 27). Plaintiffs contend that soot emitted from the space heater would have caused a properly functioning smoke detector to alarm, and that the space heater in this instance produced soot in sufficient quantities to cause the detector to alarm before Mr. Cruz became incapacitated by carbon monoxide. (See Plaintiffs' First Amended Complaint, Docket No. 27).

3.      To support this theory of liability, plaintiffs seek to offer at trial the opinion of Michael Schulz, among other purported experts, to explain why, in the absence of any evidence of smoke inhalation, BRK should be held liable for Mr. Cruz's undisputed carbon monoxide poisoning death.

4.      On April 16, 2002, BRK Brands, Inc. filed and served a motion to preclude plaintiffs' experts from testifying at trial pursuant to Federal Rule of Civil Procedure 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). On May 15 and 16, 2002, a hearing was held before Magistrate Judge John Black to hear additional evidence and to take testimony from witnesses, including, but not limited to, Michael Schulz, on the issues presented in BRK's motion.

5.      On June 17, 2002, Judge Black issued his Memorandum Opinion and Order, granting in part, and denying in part BRK's motion.

6.      Judge Black determined that the opinion of Mr. Schulz is not admissible because he is not qualified as a smoke detector expert and he based his opinion, in large part, on a "demonstration" he conducted, which was neither reliable nor relevant to this case. (Magistrate Judge Black's Opinion and Order, pages 6-9.)

2

7.    On June, 28, 2002, plaintiffs and intervenors objected to that portion of Judge Black's Opinion and Order precluding Mr. Schulz from offering at trial his opinion testimony that "a properly designed and operating smoke detector would detect the by-products of combustion from a propane fueled space heater."

## II.    ARGUMENT

### A.    Standard Of Review

8.    Pursuant to Federal Rule of Civil Procedure 72(a), a party has ten days after being served with a copy of the magistrate judge's order to serve and file objections to the order. See F.R.C.P. 72(a).  The parties were served with a copy of Magistrate Judge Black's Memorandum Opinion and Order on June 18, 2002.  Accordingly, the objections of plaintiffs and intervenors are timely made.

9.    Further under Rule 72(a), a district court is required to modify or set aside any factual or legal ruling of a magistrate judge found to be clearly erroneous or contrary to law.  See Young v. Conductron Corp., 899 F. Supp. 39, 40 (D.N.H. 1995); Castano v. American Tobacco Co., 896 F. Supp. 590, 594 (E.D. La. 1995); OPNAD Fund, Inc. v. Watson, 863 F. Supp. 328, 330 (S.D. Miss. 1994).  The "clearly erroneous" standard applies to factual findings made by the magistrate judge, whereas conclusions of law are reviewed under a "contrary to law" standard.  See Jochims v. Isuzu Motors, Ltd., 151 F.R.D. 338, 340 (S.D. Iowa 1993).

10.    A magistrate judge's factual finding is considered clearly erroneous only when: (a) although there is evidence to support the finding, the reviewing court, based upon the entire evidence, is left with a definite and firm conviction that a mistake has been committed; or (2) in situations where the finding is contrary to the clear weight of the evidence.  Young, 899 F. Supp.

3

at 40; Jochims, 151 F.R.D. at 340.  Conversely, when a dissatisfied litigant objects to a magistrate judge's legal ruling, the district court is to consider whether the ruling was contrary to law.  Young, 899 F. Supp. at 40.

11.    In their Objections to Judge Black's Opinion and Order, rather than identify why Judge Black's determination as to Mr. Schulz was clearly erroneous or contrary to law, plaintiffs attack BRK with allegations of misconduct, which even if true, which they are not, are unrelated in any way to Mr. Schulz' proposed testimony, BRK's motion to preclude Mr. Schulz and/or Judge Black's Order and Opinion as it relates to Mr. Schulz.  Plaintiffs' intent in making these baseless allegations is transparent.  Judge Black saw through plaintiffs' misguided intentions and so should this Honorable Court.  Plaintiffs also improperly attempt to reargue their opposition to BRK's motion.  Consequently, on its face, plaintiffs' fail to properly raise any meritorious objections to Magistrate Judge Black's Opinion and Order and their objections should be denied.

**B.     The Magistrate Judge Did not Err Or Commit An Error Of Law In Precluding the Testimony of Michael Schulz At Trial In This Matter**

12.    Faced with a proffer of expert testimony, the trial judge must determine at the outset whether the expert is qualified and his testimony is admissible.  Significantly, the burden of proof is on the party proffering an expert witness to establish by a preponderance of the evidence the admissibility of his/her testimony.  Daubert, 509 U.S. at n.10 (quoting Bourjaily v. United States, 483 U.S. 171, 175-76 (1987)); Rothfos Corporation v. M/V Neuvo Leon, 123 F.Supp.2d 362, 371 (S.D. Tex. 2000); Bennett v. PRC Public Sector, Inc., 931 F.Supp. 484, 490 (S.D. Tex. 1996).

4

13.     For brevity and judicial economy, with respect to a detailed analysis of the standard for the admission of expert testimony, BRK relies upon and incorporates herein by reference its Memorandum Of Law In Support Of Its Motion To Preclude Plaintiffs' Experts as though fully set forth herein, including, but not limited to its arguments concerning Mr. Schulz, as made on pages 17-22, 25-32, 41-45 and 56-58.

14.     In additions, however, there have been several cases published since BRK filed its Motion to Preclude that apply the teachings of Daubert. Specifically, these recent decisions stress that an expert witness must review all of the facts and information related to the case in order to form a reliable opinion. See e.g., Hollander v. Sandoz Pharmaceutical Corp., No. 00-6135, 2002 U.S. App. Lexis 9066 (10th Cir. May 10, 2002); Paoline v. Kilgo Trucking, Inc., No. 00-CV-956 ( E.D. Pa. April 30, 2002); Lassiegne v. Taco Bell Corp., No. CIV.00-3259, 2002 U.S. Dist. Lexis 6808 (E.D. La. April 11, 2002); and Knotts v. Black & Decker, Inc., No. 3:00 CV 7734 (N.D. Ohio), attached to BRK's Objections to Judge Black's Opinion and Order as Exhibit "B."

15.     Indeed, expert opinions failing to take all material facts into consideration are based upon weak foundations, and are inherently unreliable. See Lassiegne, 2002 U.S. Dist. Lexis 6808, at *19.

16.     More importantly, these recent decisions have also clarified that, to be admissible, the proffered testimony of an expert must be able to link the plaintiffs' "theory" to the facts of the specific case in which the expert intends to testify. See generally, Hollander, 2002 U.S. App. Lexis 9066; Paoline, No. 00-CV-956 ( E.D. Pa. April 30, 2002); Lassiegne, 2002 U.S. Dist. Lexis 6808; Knotts, No. 3:00 CV 7734 (N.D. Ohio), attached as Exhibit "B."

5

17.    Where the expert contends that there is a substantial amount of literature that supports his theory, the expert is still required to bridge the theoretical cause of plaintiff's injury to what actually occurred in the specific matter. See Hollander, 2002 U.S. App. LEXIS 9066, at *45; Knotts, No. 3:00 CV 7734 (N.D. Ohio), p. 24.  To accomplish this, the expert may make no speculative leaps, and must close all analytical gaps between the existing data and the proffered opinion. See Hollander, 2002 U.S. App. LEXIS 9066, at *33; Knotts, No. 3:00 CV 7734 (N.D. Ohio), pp. 15 and 24.

18.    Notably, in the recent case of Knotts v. Black & Decker, these principles were applied by the District Court for the Northern District of Ohio to exclude unreliable expert testimony. See Knotts, No. 3:00 CV 7734 (N.D. Ohio), p. 24. The Knotts case arises out of a fire which occurred in a house, killing two of its residents. See id. at 4.  Plaintiffs in that case brought claims for wrongful death and product liability against Black & Decker alleging that a defective Black & Decker VP130 electrical battery charger was the cause of the fire. See id. at 5.  To support their theory, plaintiffs offered the testimony of Dr. Kramerich to show the functional capacity of Black & Decker's product to overheat and potentially cause a fire due to a lack of thermal protection in its design.  Id. at 15.  In response, Black & Decker filed a motion challenging the admissibility of Dr. Kramerich's opinions under Daubert. See id.

19.    Consequently, Black & Decker's motion was granted based on the court's finding that Dr. Kramerich's opinions were speculative, unreliable, and at best showed the possibility of a failure mode on the part of all battery chargers, **but failed to establish a probability as to the specific battery charger at issue**. See id. at 24 (emphasis supplied).  Significantly, in coming to this conclusion, the court noted that there had been no independent testing of the product at issue to

6

validate Dr. Kramerich's opinion that Black & Decker's product could cause the battery to overheat and the plastic charger case to ignite. Id. at 24. Rather, Dr. Kramerich's opinions were based solely upon literature which involved various types of battery chargers made by a variety of manufacturers, all for the proposition that the "same technology" was applicable to the Black & Decker VP130 for the purpose of asserting this possible scenario with the alleged offending product. Id. at 24. Accordingly, the court outright rejected Dr. Kramerich's methodology as unreliable and speculative, stating:

> [T]his extrapolation theory when coupled with the lack of any independent testing qualifies Dr. Kramerich's opinion as tenuous at best because there is simply too great an analytical gap between the data and the opinion offered.

Id. at 24.

20.    As set forth below, the magistrate judge's rulings with respect to Mr. Schulz is neither clearly erroneous nor contrary to law. The evidence supporting BRK's original motion and the overwhelming evidence presented at the May hearing demonstrate that the opinion of Mr. Schulz concerning the expected operation of the smoke detector is neither reliable nor relevant.

### (1)    The Judge Black Correctly Determined that Mr. Schulz is not Qualified to Testify as an Expert on Smoke Detectors

21.    In their objections to Judge Black's determination, plaintiffs suggest that "qualification of an expert has taken a back see to reliability." (Plaintiffs' Objections at page 7.) Plaintiffs fail to offer any support for this brazenly incorrect statement of the law under Federal Rule of Evidence 702. Prior to analyzing whether an expert's proffered opinion is reliable or relevant, the court *must first* determine whether the purported expert possess special knowledge, skill, experience, training or education to opine on the issue at hand. F. R. E. 702. Watkins v. Telsmith,

7

Inc., 121 F.3d 984, 990-91 (5th Cir. 1997) (district judge should assure himself, before admitting expert testimony, that the expert knows whereof he speaks).

22.      In this case, Judge Black correctly held that Mr. Schulz possessed no special knowledge, skill, experience, training or education to answer the specific question at issue, whether the smoke detector should have alarmed in response to the products of combustion produced by the space heater. (Judge Black's Opinion and Order, page 6.)  Clearly, as Judge Black determined, Mr. Schulz has an impressive resume and may very well be qualified to investigate and analyze fires and fire explosions. (*Id.*)  Even as plaintiffs tacitly admit in their objections, Mr. Schultz impressive list of achievements is conspicuous by the absence of any training, studies, experience or work with smoke detectors in any way, shape or form. (Plaintiffs' Objections, pages 12-13.)

23.      Judge Black's reasoning was recently echoed in Stolting v. Jolly Rogers Amusement Park, 2002 U.S. App. LEXIS 11925 (4th Cir. June 17, 2002).  In Stolting, the plaintiff asserted that his expert's experience as a recreation maintenance supervisor qualified him to render an opinion concerning the hazardous nature of a water slide.  The court in Stolting acknowledged that the expert was a certified aquatics facilities operator, but noted he had "no experience as a designer or builder of water slides." Stolting, at *8, n3.

24.      Consequently, not only is there substantial evidence to support Judge Black's legally correct determination that Mr. Schultz is not qualified to offer an opinion about smoke detectors, but plaintiffs have presented no evidence that he is qualified.  As such, plaintiffs have not met their burden in demonstrating that Judge Black's determination is clearly erroneous or contrary to law.

8

**(2)      The Judge Black Correctly Determined that Mr. Schulz' Opinion
is Not Reliable**

25.      Judge Black determined that Mr. Schulz' opinion was not reliable because it

was based upon his "demonstration" that was deficient in, among other things, its methodology and

provided insufficient support for his proposition that an ionization smoke detector will sound when

a propane fueled heater emits by-products of combustion. At the <u>Daubert</u> hearing, Judge Black heard

testimony that the most important factors in determining when a smoke detector will alarm in the

presence of smoke are the amount of smoke present at the detector and the speed of smoke

movement through the detector. In his Opinion and Order, Judge Black specifically noted that Mr.

Schulz admitted that he does not know the speed by which smoke must move into and through the

smoke detector to trigger the alarm. Judge Black also noted that during his "demonstration," Schulz

did not measure the production of soot, smoke, carbon dioxide or hydrogen cyanide to determine the

cause of the alarm during his tests. (Judge Black's Opinion and Order at page 7.) More importantly,

Judge Black noted that Mr. Schulz did not know whether it was the ionization or photoelectric sensor

in the alarm he used that caused the detector to sound an alarm. (*Id.*) Also, because he only

conducted one test and he could not point to other tests or studies upon which he could rely, it was

impossible to attribute any rate of error to his "demonstration." (*Id.*)

26.      Based on these and other factors, Judge Black concluded that Mr. Schulz

failed to use a scientifically valid method of determining when the space heater emissions would

have reached sufficient volume to cause the smoke detector to alarm. (*Id.* at 7-8.) Mr. Schulz'

failure to take all material facts into consideration makes the foundation upon which his opinion is

based inherently unreliable. <u>See</u>, <u>Lassiegne</u>, 2002 U.S. Dist. Lexis 6808, at *9.

9

27. Alternatively, plaintiffs assert that Mr. Schulz' demonstration complied with the guidelines of the National Fire Code. This bare assertion aside, plaintiffs offer no citation or other discrete reference by which this Court, or anyone else, can access the standard to which Mr. Schulz' demonstration was conducted. Rather, they attach to their Objections Chapter 14 of NFPA 921, *A Guide for Fire and Explosion Investigations*. (Plaintiffs' Objections at Exhibit 8.) This reference, however, provides:

> A wide variety of standardized tests are available, depending on the physical evidence and the issue or hypothesis being examined or tested. Such tests should be performed and carried out by procedures that have been standardized by some recognized group. Such conformance will be comparable to results from other laboratories or testing facilities.
>
> It should be noted that the results of many laboratory examinations and tests may be affected by a variety of factor. These factors include the abilities of the person conducting or interpreting the test, the capabilities of the particular test apparatus, the maintenance or condition of the particular test apparatus, sufficiency of the test protocol and the quality of the sample or specimen being tested. Fire investigators should be aware of these factors when using the interpretations of test results.

(NFPA 921 §14.10.1, Exhibit 8 to Plaintiffs' Objections.) This section of NFPA 921 lists numerous standardized tests to examine, *inter alia*, Room Fire Experiments (§14.10.2.21 - ASTM E 603), Measurement of Gases Present or Generated During Fires (§14.10.2.23 - ASTM E 800) and Heat and Visible Smoke Release Rates for Materials and Products (§14.10.2.24 – ASTM E 906). Mr. Schulz failed to use any of these standardized protocols for his "demonstration" nor any other reliable or recognized methodology.

10

28.     Rather than demonstrating that Judge Black's determination is so clearly erroneous that it should be set aside, plaintiffs have, in fact, confirmed that Mr. Schulz' methodology was not in accordance with any known testing protocol or standard and his "demonstration" is patently unreliable.

29.     Moreover, Judge Black correctly held that Schulz' "demonstration" was not relevant because he did not attempt to replicate the conditions that existed at the time of Mr. Cruz' death.  As Judge Black noted in his opinion, Schulz testified in his deposition and at the <u>Daubert</u> hearing that his demonstration was not similar to the conditions to which Mr. Cruz was exposed on the night of his death in the following ways:

a)      the external temperature during his test was approximately fifty degrees warmer;

b)      the doors to all of the bedrooms and bathroom were open during his test;

c)      no measurements of the temperature of the plume of the products of combustion were taken;

d)      no measurements were taken of soot, smoke and other products of combustion that were inside the heater or released in the testing atmosphere;

e)      the position of the heater was not for a certain placed in the same location vis-a-vis the smoke detector;

f)      the orifice of the heater opening was not measured;

g)      the smoke detector was a completely different type than the Cruz smoke detector; and

h)      the window in the living room was fully opened during the Schulz "demonstration" despite it being open only approximately 1 –2 inches on the night of Cruz' death;

(Judge Black's Order and Opinion, pages 8-9.)

11

30.     As a result, Judge Black correctly determined that Schulz' "demonstration"
does not satisfy the requirements of Daubert as it provides no support for the conclusion that a
smoke detector should have alarmed in response to conditions existing at any time before Mr. Cruz'
death.

31.     Plaintiffs then argue that Mr. Schulz did not rely upon his demonstration, but
instead relied upon First Alert User Manuals, National Fire Protection Association Handbook and
National Fire Alarm Code for the proposition that smoke detectors, *may* alarm in response to a space
heater. (Plaintiffs' Objections at pages 13-17.) But these citations contradict Mr. Schulz proffered
opinion.

32.     During the Daubert hearing, Mr. Schulz testified that the smoke detector in
Mr. Cruz' house was designed to alarm to the very products of combustion produced by Mr. Cruz'
space heater and, when alarming under these non-hostile circumstances, it should not be
characterized as a nuisance alarm.  However, each of the documents upon which Mr. Schulz now
relies clearly states that a smoke detector alarming in response to a space heater, as well as many
other non-hostile conditions in the home, is an undesirable nuisance alarm.

33.     Even if these materials supported his general theory, Judge Black's decision
to preclude Mr. Schulz' opinion is correct because Mr. Schulz is unable to connect his theory, that
the smoke detector should have alarmed, to the facts of this case.

34.     Like Dr. Kramerich in Knotts, supra, Mr. Schulz' opinion is based solely on
documents that generally stand for the proposition that a smoke detector *may* alarm under conditions
other than a hostile fire. Mr. Schulz did nothing to define under what specific conditions an SA67D
smoke detector will alarm in response to an unvented propane fueled space heater and that those
conditions were present in Mr. Cruz' house on December 14 and 15, 1997.

12

35.    Because Mr. Schulz failed to tie his general "theory" to the facts of this case and because he failed to test his theory in relation to the specific smoke detector at issue, his proffered testimony is neither reliable nor relevant and the Magistrate Judge's determination that Mr. Schulz is not permitted to testify at trial is neither clearly erroneous nor contrary to law.

## III.    CONCLUSION

36.    As set forth above, in its original motion and at the hearing before this Court, BRK Brands, Inc. respectfully requests this Court affirm that portion of Magistrate Judge Black's Memorandum Order and Opinion related to the proffered opinion testimony of Michael Schulz and preclude Mr. Schulz from testifying at the trial of this matter.

Respectfully submitted,

**COZEN O'CONNOR**

BY: _____

JAMES HELLER
TERRY M. HENRY
1900  Market Street
Philadelphia, PA   19103
Tel: 215/665-2000
Fax: 215/665-2013

**ROERIG, OLIVEIRA & FISHER**

Rene O. Oliveira
State Bar No. 15254700
Cameron County I.D. No. 3507
Elizabeth G. Neally
State Bar No. 14840400
Cameron County I.D. No. 3506
855 West Price Road, Suite 9
Brownsville, TX  78520
Tel: 956/542-5666
Fax: 956/542-0016

13

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and correct copy of **The Opposition of BRK Brands, Inc. To The Objections of Plaintiffs and Intervenors to the June 17, 2002 Order And Opinion of Magistrate Judge John Black** has been forwarded via certified mail, return receipt requested to the attorneys for Plaintiffs, as follows:

Juan Gonzalez, Esq.
The Atrium, Suite 400
1300 North Tenth Street
McAllen, TX 78501
[CM/R.R. # 7160 3901 9844 7054-7061]

Ray Marchan, Esq.
**EDDINGTON & ASSOCIATES, L.L.P.**
1926 E. Elizabeth
Brownsville, TX  78520
[CM/R.R. # 7160 3901 9844 7054 7078]

on this 12th day of July, 2002.

Elizabeth G. Nealy

14