United States District Court
Southern District of Texas
FILED

*18.*

JAN 0 6 2003

Michael N. Milby
Clerk of Court

## IN THE U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE GARCIA, Individually, | : | |
| IDALIA GARCIA, Individually and | : | |
| as Representative of the Estate of | : | |
| MANUEL CRUZ and CYNTHIA COX as | : | |
| Next Best Friend of Brittany Cox, | : | CIVIL ACTION NO. B-98-186 |
| | : | |
| vs. | : | |
| | : | |
| BRK BRANDS, INC. | : | |

## REPLY IN SUPPORT OF THE
MOTION OF DEFENDANT BRK BRANDS, INC.
FOR SUMMARY JUDGEMENT

**ROERIG, OLIVEIRA & FISHER**
Rene O. Oliveira
State Bar No. 15254700
Cameron County I.D. No. 3507
Elizabeth G. Neally
State Bar No. 14840400
Cameron County I.D. No. 3506
855 West Price Road, Suite 9
Brownsville, TX 78520
Tel: 956/542-5666
Fax: 956/542-0016

**COZEN O'CONNOR**
ROBERT W. HAYES
JAMES HELLER
TERRY M. HENRY
1900 Market Street
Philadelphia, PA 19103
Tel: 215/665-2000
Fax: 215/665-2013

# I.

## PRELIMINARY STATEMENT

1.      BRK Brands, Inc. ("BRK") has moved for summary judgment on a number of issues, but central to its Motion are undisputed facts which confirm that plaintiffs are unable to establish that the smoke detector in Mr. Cruz's house played any role in his death.

2.      Although BRK denies that its smoke detector was defective, it did not move for summary judgment on that basis.  Consequently, the response filed by plaintiffs, Jose Garcia, Idalia Garcia and the Estate of Manuel Cruz, which consists of much bitter rhetoric, but little substance, is largely irrelevant to the issues pending before the Court.  It is interesting, however, that these plaintiffs failed to oppose BRK's contention that Jose Garcia is not entitled to recover for Manual Cruz's death.  Therefore, BRK's Motion for Summary Judgment on Jose Garcia's claims, absent any opposition, should be granted.

3.      As to the remaining issues on which BRK Brands moves for Summary Judgment, the most important is that plaintiffs are not able to establish the element of causation.  To reach the jury on the issue of causation, plaintiffs' must present record evidence that demonstrates:

> The volume of emissions from the space heater that are required to cause the smoke detector to alarm;
>
> The time at which a sufficient volume of emissions reached Mr. Cruz's smoke detector that would have caused a properly operating smoke detector to alarm;
>
> Mr. Cruz did not become incapacitated until after a sufficient amount of emissions reached the smoke detector, which should have caused it to alarm; and
>
> If the smoke detector had alarmed as plaintiffs claim it should have, Mr. Cruz would have heeded the alarm from a smoke detector and escaped the house (where there was no evidence of a fire).

Page 2

4.      Evidence on these timing issues is necessary for plaintiffs to prove that an alleged defect in the smoke detector proximately caused Mr. Cruz's death under the circumstances existing here.  Plaintiffs, however, are precluded by this Honorable Court's ruling on defendants' *Daubert* motion from presenting direct evidence and have no circumstantial evidence on any of these points.

5.      Even if the circumstantial evidence could lead to an inference that the smoke detector should have alarmed before Mr. Cruz became incapacitated, which it does not, such an inference amounts to speculation since plaintiffs' own experts have opined that it would be impossible to determine the rate at which soot and/or carbon monoxide were produced.  (*McCain*, p. 8, Exhibit D.) Therefore, any inference that relies upon the rate at which the space heater produced soot and carbon monoxide is unreasonable.

6.      More importantly, plaintiffs admit that:

> Nobody can determine the exact timing, quantity, and flow of soot and carbon monoxide produced by the heater.  (See Plaintiff Cox's Response to BRK's Motion for Summary Judgment ("Cox Response"), p. 4);
>
> Nobody will ever know the exact time Mr. Cruz became incapacitated or when there was enough soot to trigger the alarm. (See Cox Response, p. 7);  and
>
> There is no way to absolutely prove what Mr. Cruz would have done had the alarm sounded.  (See Cox Response, p. 4).

7.      Plaintiffs' admissions combined with the undisputed facts that the space heater operated throughout the night, producing carbon monoxide, but no perceptible soot, (*Garcia Aff.*, p. 3, Exhibit E; *Perez*, pp. 2-3, Exhibit F), and that Mr. Cruz died of carbon monoxide poisoning before he inhaled any soot or smoke,  (See *Davenport*, Exhibit H), can only mean that Manual Cruz's carbon monoxide poisoning death has no relation to the alleged failure of a properly operating smoke detector to alarm.  Accordingly, these circumstances warrant the entry of judgment in favor of BRK Brands and against plaintiffs.

Page 3

## II.

## ARGUMENT

**A.    Plaintiffs' Evidence Is Legally Insufficient To Connect the
Alleged Failure of the Smoke Detector to Mr. Cruz's Death**

8.    The harsh reality is that plaintiffs may not recover against BRK Brands on their

claims of strict products liability, negligence, negligence *per se* and breach of warranty, because they

are unable to connect the failure of the smoke detector at issue to Mr. Cruz's death.  See Wal-Mart

Stores, Inc. v. Gonzalez, 968 S.W.2d 934 (Tex. 1998).  In responding to BRK Brands' Motion,

plaintiffs have failed to present admissible expert testimony and/or other legally sufficient evidence

(direct or circumstantial) upon which a jury could reasonably conclude that enough soot reached the

smoke detector to sound its alarm before Mr. Cruz became incapacitated by carbon monoxide.

9.    Specifically, plaintiffs base their opposition to BRK Brands' Motion upon three

independent arguments.  First, plaintiffs argue that a disputed issue of material fact exists, because

several of plaintiffs' expert witnesses, namely Don Russell, Morris Cramner, E. Wayne McCain and

Michael Schulz, have testified that the smoke detector should have sounded its alarm before Mr.

Cruz became incapacitated by carbon monoxide.  However, this argument lacks merit, as even the

plaintiffs candidly admit, in light of this Court's Order dated September 18, 2002, wherein each of

these witnesses were barred from offering testimony as to when the smoke detector should have

alarmed, when Mr. Cruz became incapacitated or died from the carbon monoxide and/or whether

the detector should have alarmed before Mr. Cruz was incapacitated or died.  (See *Daubert Ruling*,

Exhibit M).

10.    Second, plaintiffs erroneously argue that BRK is not entitled to summary judgment

in its favor on any of plaintiffs' tort claims, because there may have been microscopic soot particles

in Mr. Cruz's lungs at the time he died, and because BRK has failed to conclusively prove that there

was no soot to sound the alarm before Mr. Cruz became incapacitated. These arguments are equally without merit, where it is well-settled under Texas law that it is the plaintiffs, and not BRK, who has the burden of presenting evidence to support the element of causation. See Ambrosio v. Carter's Shooting Center, 20 S.W.3d 262, 265 (Tex. App. – Houston [14 Dist.] 2000); Minnesota Mining and Manufacturing Co. v. Atterbury, 978 S.W.2d 183, 197 (Tex. App. 1998). To properly oppose BRK's Motion for Summary Judgment, plaintiffs are required to set forth specific record facts showing a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Yeatman v. Inland Property Management, Inc., 845 F. Supp. 625, 627 (N.D. Ill. 1994). The mere possibility that evidence may exist is not sufficient. In spite of this, plaintiffs have identified no record facts to support their bald assertion that Mr. Cruz's lungs may have contained microscopic soot particles at the time of his death or, if they did, that the source of the microscopic soot was the space heater and not the cigarettes Mr. Cruz smoked the night he died.

11.    Lastly, plaintiffs contend that a factual dispute exists as to causation based upon the existence of circumstantial evidence, separate and apart from their inadmissible expert testimony, from which a jury may infer that the smoke detector should have sounded before Mr. Cruz was incapacitated by carbon monoxide. Although Texas law governs the elements of plaintiffs' causes of action, the sufficiency of evidence is a matter of federal law. See Helene Curtis Industries, Inc. v. Pruitt, 385 F.2d 841, 850 (5th Cir. 1967). Accordingly, plaintiffs are correct that causation may be inferred from circumstantial evidence and legitimate inferences drawn therefrom, however, material facts may not be proved through unreasonable inferences drawn from the evidence. See Fenner v. General Motors Corp., 657 F.2d 647, 651 (5th Cir. 1981). In considering the evidence the jury is confined to only those inferences which are reasonably and logically drawn from the facts and/or surrounding circumstances. Id.

Page 5

12.     An inference as to an ultimate issue of fact is deemed unreasonable, and without probative force, if it would allow a jury to rest its verdict on mere speculation and conjecture.  See Bridges v. Groendyke Transport, Inc., 553 F.2d 877, 878-79 (5th Cir. 1977).  Ultimate inferences are too speculative and conjectural to support a judgment if they are at war with uncontradicted or unimpeached facts.  See Fenner, 657 F.2d at 651; Helene Curtis Industries, 385 F.2d at 851.

13.     Further, a jury may not reasonably infer causation from meager circumstantial evidence that could give rise to any number of inferences, none more probable than the other.  See Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1388 (5th Cir. 1996); Dreijer v. Girod Motor Co., 294 F.2d 549, 555-556 (5th Cir. 1961); Lozano v. Lozano, 52 S.W.3d 141, 148 (Tex. 2001); Wright v. Wal-Mart Stores, Inc., 73 S.W.3d 552, 555 (Tex. App. – Houston 2002).  Thus, when circumstances are consistent with any possibility, and nothing shows that one is more probable than the other, no fact can be inferred.  Id.

14.     In the instant case, plaintiffs identified twelve pieces of circumstantial evidence (three of which are inadmissible pursuant to this Court's *Daubert Ruling*) from which the jury could allegedly infer that the smoke detector should have sounded before Mr. Cruz's death.  The circumstantial evidence upon which plaintiffs rely, however, is legally insufficient to support such an inference.  Specifically, the following circumstantial evidence has been identified by plaintiffs:

    a. The heater was in the living room, a few feet away from the smoke detector;

    b. Mr. Cruz's bedroom is down the hall from the room where the heater and smoke detector were located;

    c. The smoke detector was on the wall, between the heater and Mr. Cruz's bedroom, so that coming from the heater you would pass the detector before getting to the bedroom;

    d. The smoke detector is an ionization type, which is sensitive to small soot particles;

    e. There was a charged battery in the detector;

    f. The heater was producing both soot and carbon monoxide at the same time [citing Russell and McCain – ruled inadmissible];

    g. Even microscopic particles of soot would trigger the smoke

Page 6

detector's alarm;

h. It would take several hours for the carbon monoxide to cause Mr. Cruz to lose consciousness [citing Cramner and Russell – ruled inadmissible];

i. When an ionization type smoke detector is that close to a space heater it will trigger an alarm within minutes, not hours [citing Cramner and Russell – ruled inadmissible];

j. BRK states in its user manual for ionization smoke detectors that the detector should not be within 20 feet of a space heater or it will be triggered by the heater;

k. An ionization detector is sensitive, so that it triggers an alarm when it encounters small amounts of soot particles; and

l. The smoke detector never sounded despite the fact there were large quantities of soot found in Mr. Cruz's living room, around the detector, and on the detector.

15. As an initial matter, the factual allegations designated "f," "h" and "i" have no probative force, in light of this Court's *Daubert Ruling* prohibiting plaintiffs' experts from offering testimony as to when the smoke detector should have alarmed, when Mr. Cruz became incapacitated or died from the carbon monoxide and/or whether the detector should have alarmed before Mr. Cruz was incapacitated or died.

[1] (See *Daubert Ruling*, Exhibit M).

16. Assuming plaintiffs assertions constitute admissible evidence, which they do not, a jury could not "reasonably" infer from plaintiffs' twelve pieces of circumstantial evidence that the smoke detector should have sounded before Mr. Cruz became incapacitated. For this inference to be reasonable, and not the result of unguided speculation or compounding of unreasonable inferences, plaintiffs need to provide the jury with at least three pieces of additional evidence:

> The volume of emissions from the space heater that are required to trigger the alarm;
> The time at which a sufficient volume of emissions reached Mr. Cruz's smoke detector that would have caused a properly

---

[1]    Many of plaintiffs' remaining assertions are directly contrary to the evidence. For example, plaintiffs assert that BRK's user manual states that a smoke detector will alarm if placed within twenty feet of a space heater. The user manual does not make this statement, and interestingly, to support the assertion, plaintiffs cite the inadmissible testimony of their expert witness, Michael Schulz, instead of the user manual.

operating smoke detector to alarm; and

The timing, quantity and flow of soot and carbon monoxide produced by the heater.

17.    Without these additional facts, plaintiffs' suggested inference is no more plausible, nor supported by the circumstantial evidence, than any number of equally opposite inferences, such as that Mr. Cruz became incapacitated by carbon monoxide before the smoke detector should have alarmed from the emission of soot from the space heater.  Thus, because the circumstances are consistent with numerous other possibilities, and nothing shows that one is more probable than the other, this ultimate fact, which plaintiffs claim creates a dispute of material fact, cannot be reasonably inferred.  See Seven-Up Co., 86 F.3d at 1388; Dreijer, 294 F.2d at 555-556; Lozano, 52 S.W.3d at 148; Wright, 73 S.W.3d at 555.

18.    The circumstantial evidence plaintiffs' set forth in their response could never lead to an inference that the smoke detector should have alarmed before Mr. Cruz became incapacitated.  Such an inference would be worse than speculation since plaintiffs' own experts have offered the opinion that it would be impossible to determine the rate at which soot and/or carbon monoxide were produced.  (McCain, p. 8, Exhibit D.)  Where plaintiffs' experts cannot predict the rate of soot and carbon monoxide production from the facts at hand, a jury should not be permitted to speculate on the issue.  Therefore, any inference that relies upon the rate at which the space heater produced soot and carbon monoxide is unreasonable.

19.    Additionally, the ultimate inference proposed by plaintiffs is too speculative and abstract to support a judgment against BRK, because it is at odds with the undisputed facts that the space heater operated throughout the night, producing carbon monoxide and other products of combustion, but no perceptible soot, (Garcia Aff., p. 3, Exhibit E; Perez, pp. 2-3, Exhibit F), and that Mr. Cruz died of carbon monoxide poisoning before he inhaled any soot or smoke.  (Davenport, Exhibit H.)

Page 8

20.     Accordingly, plaintiffs' inability to prove factual causation mandates the entry of summary judgment as a matter of law in favor of BRK as to plaintiffs' strict products liability, negligence, negligence *per se* and breach of warranty claims.

**B.      Plaintiffs Cannot Sustain Their Burden of Proving Evidence
Sufficient To Warrant The Imposition of Punitive Damages.**

21.     BRK is entitled to summary judgment as a matter of law as to plaintiffs' punitive damages claims, because plaintiffs have not adduced any evidence to demonstrate that BRK's conduct was in any way fraudulent, malicious or grossly negligent.  Plaintiffs agree that the gross negligence standard in Texas is a very high standard.  Punitive damages may be awarded only if the claimant proves by clear and convincing evidence that the defendant acted with gross negligence, malice or otherwise morally culpable conduct.  See Celanese LTD. v. Chemical Waste Management, Inc., 75 S.W.3d 593, 599 (Tex. App. – Texarkana 2002); Wicker v. City of Galveston, 944 F. Supp. 553, 560 (S.D. Tex. 1996); see also Tex. Civ. Prac. & Rem. Code § 41.003(a) (Vernon 1997).

22.     To reach the jury on the issue of punitive damages, plaintiffs are required to present specific record evidence from which a jury could reasonably infer that BRK's actions or omissions created an extreme degree of risk, or that BRK proceeded with conscious indifference to the rights, safety, or welfare of others.  See Celanese, 75 S.W.3d at 599; see also Tex. Civ. Prac. & Rem. Code § 41.001(7) (Vernon 1997); Tex. Civ. Prac. & Rem. Code § 41.003(a) (Vernon 1997).

23.     As detailed below, the scintilla of evidence identified by plaintiffs in support of their punitive damages claim, however, is legally insufficient to warrant the imposition of punitive damages against BRK in this case.  Specifically, plaintiffs' rely exclusively upon pages 42 through 54 of the deposition transcript of their paid expert, B. Don Russell, as evidence that BRK knew it had a problem with its ionization type smoke detectors not timely signaling when they encountered sufficient amounts of smoke or soot to indicate a hazardous situation.

24.    However, the passage from Dr. Russell's deposition does not evidence that BRK knew it had a problem with the smoke detector model at issue here, the SA67D. To the contrary, this excerpt merely indicates that the only model of smoke detector Dr. Russell knows of that allegedly did not alarm because of the alleged defect, corrosion, was the model 1839, a hard-wired detector, manufactured by Pittway Corporation, not BRK, between 1985 and 1990. (See Deposition Testimony of Dr. Don Russell dated May 10, 2000 ("*Russell* Vol. I"), pp. 42-45, Exhibit L.) Significantly, Dr. Russell, in this same passage, concedes that the circuitry of the 1839 detector is different than battery-powered smoke detectors (i.e. SA67D smoke detector), and that studies have concluded that the differences in the drive circuitry make battery-operated detectors more resilient to the affects of corrosion. (*Russell* Vol. I, pp. 44-46, Exhibit L.) Thus, this proof, alone, certainly does not rise to the level of clear and convincing evidence needed for the imposition of punitive damages against BRK in this case.

25.    Accordingly, punitive damages may not be assessed and BRK is entitled to summary judgment dismissing plaintiffs prayer for punitive damages from this case.

## III.
## CONCLUSION

26.    In light of the above and BRK Brands' previously filed Brief, BRK Brands, Inc., respectfully requests this Honorable Court enter judgment in its favor and against plaintiffs Jose Garcia, Idalia Garcia, Individually and as Administratrix of the Estate of Manual Cruz and Cynthia Cox as Next Friend of Brittany Cox and award it fees, costs and grant such other further relief as the Court deems appropriate.

Respectfully submitted,

**ROERIG, OLIVEIRA & FISHER**

BY: _____
     Rene O. Oliveira
     State Bar No. 15254700
     Cameron County I.D. No. 3507
     Elizabeth G. Neally
     State Bar No. 14840400
     Cameron County I.D. No. 3506
     855 West Price Road, Suite 9
     Brownsville, TX 78520
     Tel: 956/542-5666
     Fax: 956/542-0016

**COZEN O'CONNOR**
     JAMES HELLER
     TERRY M. HENRY
     1900 Market Street
     Philadelphia, PA  19103
     Tel: 215/665-2000
     Fax: 215/665-2013

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certifies that a true and correct copy of the foregoing **Reply in Support of The Motion of Defendant Brk Brands, Inc. for  Summary Judgment,** has been served upon counsel of record by Certified Mail, Return Receipt Requested, on this 5th day of January, 2003, to wit:

Mr. Juan Gonzalez, Esq.
The Atrium, Suite 400
1300 North Tenth Street
McAllen, Texas 78501

Mr. Ray R. Marchan
**Eddington & Associates, L.L.P.**
1926 E. Elizabeth
Brownsville, Texas 78520

_____
              Elizabeth G. Neally

Page 11