**IN THE U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

FEB 2 1 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JOSE GARCIA, Individually, | : | |
| IDALIA GARCIA, Individually and | : | CIVIL ACTION |
| as Representative of the Estate of | : | |
| MANUEL CRUZ and CYNTHIA COX as | : | |
| Next Best Friend of Brittany Cox, | : | NO. B-98-186 |
| | : | |
| vs. | : | |
| | : | |
| BRK BRANDS, INC. | : | |

**PLAINTIFFS' PORTION
OF
JOINT PRETRIAL ORDER**

Pursuant to the Court's Procedures, Plaintiffs, Jose Garcia, Individually, and Idalia Garcia, Individually and as Representative of the Estate of Manuel Cruz; and Cynthia Cox as Next Friend of Brittany Cox, on one hand, and Defendant BRK Brands, Inc. on the other, file this Joint Pretrial Order.

1. **APPEARANCES OF COUNSEL**

   A. **Attorneys for Plaintiffs Jose Garcia, Individually and Idalia Garcia Individually and as Next Friend and as Representative of the Estate of Manuel Cruz**

      Juan Gonzalez
      Law Offices of Mark Cantu
      The Atrium, Suite 400
      1300 North Tenth Street
      McAllen, Texas 78501

**B.    Attorneys for Plaintiff Cynthia Cox as Next Friend of Brittany Cox**

Mikal C. Watts and Ray Marchan
Watts Law Firm, L.L.P.
1926 E. Elizabeth
Brownsville, Texas 78520

Bryan K. Harris
Harris & Mejia, L.L.P.
615 North Upper Broadway, Ste 1950
Corpus Christi, Texas  78403
(361) 879-0100
(361) 879-0117  FAX

**C.    Attorneys for Defendant BRK Brands, Inc.:**

James H. Heller
Terry M. Henry
Cozen O'Connor
1900 Market Street
Philadelphia, PA   19103
Telephone: (215) 665-2000
Facsimile: (215) 665-2013

Rene O. Oliveira
Elizabeth G. Neally
Roerig, Oliveira & Fisher, L.L.P.
855 W. Price Road, Suite 9
Brownsville, Texas 78520
Telephone: (956) 542-5666
Facsimile: (956) 542-0016

## 2.    PLAINTIFFS STATEMENT OF THE CASE

This wrongful death action arises out of the untimely death of Manuel Cruz.  Plaintiff

Brittany Cox was Mr. Cruz's minor daughter.  Idalia Garcia was Mr. Cruz's mother.

Manuel Cruz lived by himself in a house in San Benito, Texas.  He had a gas fueled space

heater in his house.  The heater was hooked to a propane gas tank; and the heater was vented, so

that the byproducts of the combustion process (i.e. soot and carbon monoxide) were in the house.

2

The heater had large amounts of the by products of combustion. The incomplete combustion is the byproduct of combustion soot contain both carbon monoxide and water vapor.

Mr. Cruz lived in a small, one-story house. One section of the house was the living room and kitchen. These were connected by a hallway to three bedrooms and a bath on the other side of the house. The heater was installed in the living room, near the hallway. At the time the heater was installed, Mr. Cruz already had a smoke detector installed on the wall of the hallway, very close to the heater.

About two weeks after the heater was installed, on Sunday, December 14, 1997, Manuel Cruz and Jose Garcia went on a double date. They came back to Mr. Cruz's house of approximately 10:30 p.m. When they got to the house, Mr. Cruz turned the heater on. Mr. Cruz and Mr. Garcia stayed up late. Mr. Cruz went to his bedroom and shut his door, and Mr. Garcia slept on the couch in the living room. Between 6:00 a.m. and 6:30 a.m., Mr. Garcia woke up and went home. When he awoke, Mr. Garcia had a headache. He called out "good-bye" to Mr. Cruz as he left, but did not attempt to go into his room.

Between 10:00 a.m. and noon on Monday, December 15, 1997, Cynthia Cox called Mr. Cruz at home to see if he would be joining her and their daughter Brittany. Mr. Cruz did not answer the phone.

On Tuesday, December 16, 1997, Kenya Sosa, Mr. Cruz's girlfriend, went to the house to check on Mr. Cruz. When she went into his bedroom, she discovered him dead, on his bed.

The pathologist at Valley Baptist Medical Center performed an autopsy of Manuel Cruz at approximately 10:30 a.m., on Wednesday, December 17, 1997. He determined Mr. Cruz had a carboxyhemoglobin level of 49.1% (which means Mr. Cruz died of carbon monoxide poisoning).

3

He also rendered a diagnosis that the body was "approximately 24 hours of post mortem interval."

The pathologist signed an affidavit on March 19, 2000 (more than two years after his examination), in which he stated, "[t]he conclusion I formed based on the finding of Mr. Cruz's autopsy was that he died of carbon monoxide poisoning before he inhaled any smoke or soot and more than 24 hours before his autopsy. The pathologist provided no reason, in his affidavit, for changing his opinion about the time of death from "approximately 24 hours" to "more than 24 hours". Further, he provided no basis for his conclusion about a lack of inhaled soot and smoke other than the initial finding that the larynx, trachea, bronchi, and lungs were unremarkable.

When Mr. Cruz's body was found on December 17, 1997, there was a large amount of soot in the house. It was on the wall, the ceiling, and even on the smoke detector. The heater was no longer running because it was out of fuel. When the smoke detector was still on the wall, somebody pushed its test button and the alarm sounded. It was determined that the battery in the smoke detector had a charge of more than 9 v It was determined that the battery in the smoke detector had a charge of more than 9 volts. It was also determined that the smoke detector never sounded from the time Mr. Cruz turned the heater on at 10:30 p.m. Sunday evening, until after Mr. Cruz's body was found on Tuesday evening.

Plaintiff Cox, Mr. Cruz's minor daughter, and Idalia Garcia, Mr. Cruz's mother, brought this wrongful death claim against BRK Brand, Inc., the manufacturer of the ionization detector in Mr. Cruz's house. They have asserted causes of action for strict products liability (design, manufacturing, and marketing defects), breach of warranty under 402B of the Restatement, negligence, breach of implied warranties, civil conspiracy, and gross negligence. BRK filed a 12(b)(6) motion to dismiss that was denied. It has now filed a motion for summary judgment seeking dismissal of all claims against it.

4

3.    **JURISDICTION**

This case is brought to Federal Court under the diversity jurisdiction of the court. State law controls on all substantive issues, including products liability laws.

4.    **MOTIONS**

The only motions pending before the Court of which BRK Brands is aware, are BRK Brands' Motion for Summary Judgment and Motions in Limine. Plaintiffs reurge and resubmit the excluded expert testimony.

5.    **CONTENTIONS OF THE PARTIES**

    A.    **Plaintiffs' Contentions**

1.    Plaintiffs contend that BRK Brands should be held liable for the death of Manual Cruz because a BRK Brands' smoke detector he placed in his home should have alarmed to the byproducts of combustion from the space heater Mr. Cruz installed in his home.

2.    Plaintiffs contend that there was enough byproducts of combustion in the house to trigger the detector.

3.    Plaintiffs contend that the alarm should have sounded before Mr. Cruz became incapacitated.

4.    The fact that Mr. Cruz and Mr. Garcia smoked a pack of cigarettes during the evening, it is not clear whether a trace amount of soot from the heater could have been detected in Mr. Cruz's lungs. The detector should have detected the byproducts of combustion, a few feet from the heater.

5.    The detector could have (and in fact should have) sounded before the byproducts of combustion got to the bedroom.  This is consistent with the fact that there was a large amount of soot found in the living room and not the bedroom.

6.    The smoke detector is an ionization type, which is sensitive to small combustion particles.

7.    There was a charged battery in the detector.

8.    The heater was producing byproducts of combustion.

9.    Even microscopic particles of these byproducts of combustion would trigger the detector's alarm.

10.    It would take several hours for the carbon monoxide to cause Mr. Cruz to lose consciousness.

11.    When an ionization type detector is that close to this space heater, it should trigger an alarm within minutes, not hours.

12.    BRK states in its user manual for ionization smoke detectors that the detector should not be within 20 feet of a space heater or it will be triggered by the heater.

13.    The smoke detector never sounded despite the fact there were large quantities of this byproducts of combustion found in Mr. Cruz's living room, around the detector, and on the detector.

14.    Plaintiffs contend that the purpose of a detector is to warn people of the presence of detectable amounts of the byproducts of combustion.

6

15.    BRK BRANDS, INC. was engaged in the business of designing, manufacturing, distributing and selling smoke detectors.

16.    The smoke detector was essentially in the same condition or in the reasonably foreseeable conditions when the detector was placed into the stream of commerce to be purchased by consumers.

17.    The defendant was being used in a proper and reasonably foreseeable manner by MANUEL CRUZ.

18.    The defector was Defectively designed, was in defective condition and unreasonably dangerous.

19.    The smoke detector was the producing cause of Manuel Cruz's asphyxiation and death including the damages and injuries suffered by Manuel Cruz and Jose Garcia, Individually.

20.    BRK BRANDS, INC. owed a duty to design, manufacture, distribute, sell, inspect and provide adequate instructions and warnings for the smoke detector and its components, so as not to cause injury.

21.    BRK BRANDS INC. violated its duty when it designed, manufactured, distributed, sold, failed to inspect and failed to provide adequate instructions and warnings regarding the defective smoke detector and its components and that deceased could have been injured, suffered damages or killed as a result of the acts or omissions act of defendant BRK BRANDS, INC. because of defendant's special knowledge of the product and its component parts.

22.    BRK BRANDS, INC. provided inadequate instructions and warnings.

23.    RK BRANDS, INC. impliedly and expressly guaranteed that the smoke detector and its component parts had been so designed, constructed, inspected and serviced that it would perform

7

the actual service for which it was designed and was of such quality that it would not fail under normal or foreseeable circumstances and cause injuries, damages or death.

24.     Such warranties were breached.

25.     BRK solicited the public to purchase the smoke detector.

26.     BRK warranted and guaranteed that said smoke detector and its component parts had either been properly constructed, or suitable for its expected purpose and safe.  MANUEL CRUZ as a foreseeable user, relied upon said defendant's warranties and guarantees.

27.     BRK breached said warranties.

28.     BRK BRANDS, INC. is guilty of negligence, negligence per se and gross negligence in the designing, testing, distributing, manufacturing, and selling of the smoke detector and its component systems.

29.     BRK failed to warn the public of the defect or defects described above.

30.     BRK committed errors during the design phase.

31.     BRK failed to install adequate safety devices.

32.     BRK failed in using and installing safety devices which failed in use.

33.     BRK failed to make adequate safety tests or checks after manufacture and/or prior to sale.

34.     BRK used unsafe or unsuitable materials in manufacture.

35.     BRK failed to plan and test foreseeable uses.

36.     BRK added unnecessary parts.

37.     BRK failed to keep abreast of scientific knowledge.

38.     BRK failed to measure up to or meet accepted industry standards.

39.     BRK failed to do adequate research.

40.     BRK failed to adopt safe designs to carry out the intended use.

41.     BRK failed to adopt safe designs to carry out reasonable inspection.

42.     BRK failed to provide for plaintiffs' safety under the circumstances.

43.     BRK failed to ensure the deliverance of a safe product.

44.     BRK designed, manufactured, and marketed a product that is/was defective in detecting smoke.

45.     BRK designed, manufactured and marketing a product that failed to give an audible warning alarm.

46.     BRK failed to warn of the unreasonably dangerous nature of the product.

47.     BRK advertised, marketed and sold its smoke detector in a manner designed to misrepresent the marketing and safety of the detectors by engaging in advertising and marketing programs which falsely represented, either directly or by implication, that the smoke detector was safe to use.

48.     BRK acted to conceal defects and dangers in its smoke detectors from the public, from injured persons, and from governmental agencies, rather than fulfilling its common law and statutory obligations to provide a non defective product, adequate warnings and to remedy said defects.

49.     BRK continued to design, market and sell its smoke detectors without substantial change after receiving sufficient knowledge as to the nature of the defect.

9

50.    BRK failed to timely recall the products in question when the defect was known to defendant.

51.    BRK failed to adequately warn.

52.    BRK failed to give, place or caused to be placed an adequate warning of any kind on about said smoke detector which would have alerted Manuel Cruz and others of the extent of danger of the smoke detector failing.

53.    BRK defectively designed in that there were no instructions or inadequate instructions, regarding the useful life of the smoke detector and its component systems and that as a result of such failure it caused injuries and death to the plaintiffs.

54.    BRK failed to recall its product when the defendant knew or should have known of its defective.

55.    BRK misconduct constituted gross negligence. Said gross negligence and conscious indifference was with respect to the rights, welfare and safety of the public and specifically Plaintiff.

56.    The detector was structurally defective and unsafe for its intended purpose and unreasonably dangerous to its users in that it was defectively designed and failed to operate safely.

57.    BRK BRANDS, INC.'s conduct constituted a total want of care and the utter disregard of duty.

58.    BRK BRANDS, INC. is strictly liable pursuant to §402a and §402b of the Restatement of Torts 2nd.

10

59.    BRK has a history of resisting proposed safety standards and  effectively utilizing the political process and their economic power to minimize the resulting economic cost that adoption of realistic minimum safety standards would naturally entail.

60.    At BRK, profit has had priority over safety.

61.    BRK engaged in a pattern of conduct or scheme to control the adoption of the Federal or State minimum regulatory standards, as well as industry standards.

62.    Manuel Cruz was a good health with a reasonable life expectancy of 46.0 additional years according to the U.S. Life Tables.

63.    Manuel Cruz had been energetic, helpful, and a good father and son.

64.    Manuel Cruz performed numerous and usual tasks in and about the family residence and gave and received, comfort, companionship and society.  Plaintiffs can prove cause in fact through circumstantial evidence.

65.    There is enough evidence for a jury to reasonably infer that enough soot reached the smoke detector to sound the alarm before Mr. Cruz became unconscious.

66.    There is circumstantial evidence for a jury to make the reasonable inference that Mr. Cruz would have heeded the warning.

67.    A manufacturer can be held liable for injuries caused by the failure of its product, even if the product was not the precipitating cause of the incident.

68.    Manufacturer's tort liability "should not be limited to [situations] in which the defect causes the accident, but should extend to situations in which the defect caused injuries over and above that which would have occurred from the accident, but for the defective design."

11

69.     The evidence of conspiracy goes to the issue of gross negligence and punitive damages.

70.     Even after this Court's *Daubert* rulings, there is still enough expert testimony, along with other evidence, for a jury to reach a reasonable inference that the alarm should have sounded before the carbon monoxide made Mr. Cruz lose consciousness.

71.     There are violations of the Consumer Product Safety Act (CPSA). Said violations are relevant to show the applicable standard of care for manufacturers of safety products.

72.     BRK knew or should have known it had a problem with its ionization type smoke detectors not timely signaling when they encountered sufficient amounts of smoke or soot to indicate a hazardous situation.

73.     Plaintiffs contend that BRK Brands should be held liable for the carbon monoxide poisoning death of Manual Cruz because a BRK Brands' smoke detector he placed in his home should have alarmed to the soot produced by the improperly fueled and vented space heater Mr. Cruz installed in his home.

### B.      BRK Brands' Contentions

Plaintiffs have no evidence demonstrating that the smoke detector is responsible for Mr. Cruz' death. To do so, plaintiffs would have to show that the space heater produced sufficient quantities of soot or smoke that the smoke detector should have alarmed before Mr. Cruz was incapacitated or killed by carbon monoxide. However, pursuant to the Court's Order on BRK Brands' *Daubert* motion, plaintiffs are unable to present evidence as to:

1.     how much smoke and/or carbon monoxide was produced by the space heater at anytime;

2.     when the space heater began producing smoke in relation to the carbon monoxide;

3.     when smoke reached the smoke detector in sufficient quantities to cause it to alarm; and

12

4.      when Mr. Cruz became incapacitated or died.

Therefore, it is impossible for plaintiffs to prove that the smoke detector should have alarmed before Mr. Cruz became incapacitated from the carbon monoxide the heater was producing.

Plaintiffs seek to impose liability upon Defendant BRK Brands, Inc. for Mr. Cruz' death based upon allegations that a BRK smoke detector failed to alarm, even though the detector did not directly inflict physical harm or start in motion of serious of events that resulted in Mr. Cruz's death and was not intended to serve as a carbon monoxide detector. Nothing the BRK smoke detector did or failed to do resulted in physical harm to Mr. Cruz or could have prevented the harm Mr. Cruz suffered.

A product manufacturer cannot be held liable for injury resulting from an incident against which the product was not intended to protect and BRK Brands has never claimed that smoke detectors will alarm in response to carbon monoxide. Industry and government standards to which smoke detectors are manufacture do not require that they provide early warnings of carbon monoxide poisoning hazards.

To the extent that plaintiffs are pursuing causes of action for violation of the Texas Deceptive Trade Practices Act, civil conspiracy and violation of the Consumer Product safety Act, or seek punitive damages, plaintiffs have no evidence to support their allegations and plaintiffs cannot prove one or more elements to these purported causes of action.

C.      **AFFIRMATIVE DEFENSES:**

In addition to the affirmative defenses encompassed in the above defenses, BRK Brands contends that the following affirmative defenses apply to this case.

1.      The product described in Plaintiffs' First Amended Original Complaints was misused, improperly applied, or improperly installed by a party other than BRK Brands, and therefore, plaintiffs may not recover against BRK Brands.

13

2.    Plaintiffs are barred from recovering damages for breach of implied warranties that were part of a valid disclaimer by BRK Brands.

3.    In the unlikely event that any issue on exemplary damages against BRK Brands may be submitted to the jury and/or to be awarded, BRK Brands invokes the definitions, requirements and limitations on exemplary damages provided by §41.001 et seq. Of the Texas Civil Practice & Remedies Code.

4.    If it is proven that BRK Brands manufactured any products installed in Mr. Cruz's home, plaintiffs cannot recover any consequential damages because they are expressly excluded by a written limited warranty.

5.    Plaintiffs' claims for punitive damages are barred in a strict liability defect case involving a mass-produced, widely marketed product.

6.    Plaintiffs' causes of action are barred in whole or in party by the Doctrines of Latches, Waiver and Estoppel.

7.    Plaintiffs' First Amended Complaints is defective in that they have failed to join indispensable parties, among whom is Martin Industries, manufacturer of the space heater that produced fatal levels of carbon monoxide in Mr. Cruz' home.

8.    BRK Brands relies upon the Doctrine of Comparative Fault as a bar to, or mitigate, any recovery by any plaintiff in this action.

9.    The Plaintiffs' alleged damages resulted from independent, superseding and/or intervening causes unrelated to any conduct of BRK Brands.

10.    BRK Brands, Inc. relies upon the Doctrine of Comparative Fault, and avers that plaintiffs' injuries and damages were directly and proximately caused by Manuel Cruz' negligence.  Mr. Cruz's negligence, upon information and belief, includes but is not limited to

14

causing his own death, which resulted in the injuries and damages, if any, plaintiffs claim to have suffered as a result of his death.

11.    Mr. Cruz's failure to exercise reasonable care by installing a space heater in his home, or by having a space heater installed in his house, without proper or adequate ventilation for the reasonably foreseeable flue gases, such as carbon monoxide, that would be produced by the space heater was the direct and proximate cause of his death.

12.    Mr. Cruz's failure to exercise reasonable care by installing a space heater in his home, or by having a space heater installed in his home, supplied with an improper fuel that resulted in a deficient fuel mixture was the direct and proximate cause of his death.

13.    Mr. Cruz's failure to exercise reasonable care by installing a device to provide early warning of carbon monoxide poisoning danger was the direct and proximate cause of his death.

14.    The product plaintiffs claim was defective, a smoke detector, was not designed, manufactured, marketed, or sold for the intended purpose of providing early warning or carbon monoxide poisoning hazards.

15.    It was not reasonably foreseeable that Mr. Cruz would rely upon a smoke detector to provide early warning of carbon monoxide poisoning hazards.

16.    BRK Brands relies upon the Doctrine of Comparative Fault and avers, upon information and belief, that a non-party manufactured the space heater that caused, along with Manuel Cruz's own negligence, the death of Manuel Cruz, which resulted in the injuries and damages, if any, plaintiffs claim to have suffered as a result of his death.

17.    Plaintiffs' alleged injuries and damages were not directly and proximately caused by any act or omission of BRK Brands.

15

18.     BRK Brands denies that it is guilty of any negligence or wrong doing of any nature whatsoever, denies that it manufactured or sold any product that was in a defective condition or unreasonably dangerous in any regard and specifically denies that it is liable to plaintiffs under any theory of law alleged in the First Amended Original Petition.

19.     To the extent Plaintiffs allege fraud, those allegations are not pled with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

20.     Mr. Cruz' smoke detector alarmed two or three months before his death.

21.     BRK Brands did not breach any warranties, express or implied.

22.     BRK Brands, Inc. denies that it was guilty of any fraudulent conduct.

23.     Due to spoliation, BRK Brands has been prejudiced in that it has been unable to make an appropriate investigation in order to prepare defenses on its own behalf.

24.     Plaintiffs have failed to state a claim for which relief can be granted for breach of warranty.

25.     Plaintiffs have failed to state a claim for which relief can be granted for violation of the Texas Deceptive Trade Practices Act.

26.     Plaintiffs have failed to state a claim for which relief can be granted under a civil conspiracy theory.

27.     Plaintiffs have failed to state a claim for which relief can be granted for violation of the Consumer Product Safety Act.

28.     Plaintiffs' claims are barred, in whole or in part, because conditions precedent to Plaintiffs' recovery have not occurred. For example, and without limitation, Plaintiffs failed to provide written notice prior to suit as required by §17.05(a) of the Texas Business and Commerce Code (Texas DTPA).

29.    Plaintiffs' claims are barred, in whole or in part, because the injuries, damages, and losses alleged in Plaintiffs' pleadings, none being admitted, were proximately caused in whole or in part by the fault or negligence of Plaintiffs or others.  Accordingly, Plaintiffs' claims are barred or must be reduced under the doctrine of contributory or comparative fault.

## 6.    ADMISSION OF FACT

1.           Plaintiff Jose Garcia is not Manuel Cruz' natural or adoptive parent, but is his step-father.

2.           Manuel Cruz lived at 190 Thomas Lane, San Benito, Texas.

3.           His house had no central heating or air conditioning system.

4.           To provide heat, Mr. Cruz installed a large, gas-fueled space heater, which he fueled with a supply of LP-Gas (liquid propane gas).

5.           The heater produced byproducts of combustion which infiltrated the nearby detector.

6.           On Sunday, December 14, 1997, the day before he died, Manuel Cruz spent time with his friend Jose Garcia.

7.           At approximately 10:30 p.m., the heater was turned on and continued to run throughout the night.

8.           At about 4:00 a.m., Mr. Cruz and Mr. Garcia went to bed, with Mr. Garcia sleeping on a couch in the living room beneath a window opened about an inch.

9.           Between 6:00 and 6:30 a.m., with the heater still running, Mr. Garcia woke with a headache and went home.

10.          Before leaving, Mr. Garcia shouted good-bye to Mr. Cruz, but received no response.

17

11.      At 9:00 a.m. on Monday, about three hours after Mr. Garcia left, Mr. Cruz was to have met his daughter, Brittany Cox, and her mother Cynthia at the Zoo, but he never appeared.

12.      Between 10:00 a.m. and 12:00 noon, Cynthia Cox called Mr. Cruz at home to see if he would be joining them.

13.      No one answered the phone and she assumed that he had simply forgotten about the visit.

14.      On Tuesday night, December 16, 1997, Kenya Sosa, went to Mr. Cruz' house to see if he was home.

15.      When she entered his house she discovered him dead on his bed.

16.      The medical examiner observed and concluded that Mr. Cruz died of carbon monoxide poisoning.

17.      Mr. Cruz's asphyxiation was the result of not being warned of the presence of the byproducts of combustion.

18.      The BRK Brands detector model SA67D was listed by Underwriters Laboratories and met or exceeded all standards applicable to residential detectors.

19.      Mr. Cruz' detector alarmed two or three months before his death.

20.      A detector will only alarm when smoke reaches the detection chamber in sufficient quantities to trigger the detection device.

21.      The quantity of smoke necessary to trigger the alarm will be partly a function of the sensitivity at which the particular detector is set.

22.      The setting of the smoke detector is crucial because smoke from a hostile fire is no different than smoke from a friendly (intended) fire, such as cooking and space heaters,

18

and, as of the date of the fire, there were no devices capable of distinguishing between smoke from a friendly fire and from a hostile fire.

23.          Although there are many potentially dangerous conditions that may exist in a home, smoke detectors are designed to sound when the threshold limit of particles are detected.

24.          Carbon monoxide is a colorless, odorless, tasteless gas that can be produced by the incomplete burning of fuel, usually from gas-fueled appliances or a wood burning fire place in the home.

25.          Carbon monoxide poisoning can render a person unresponsive before incapacitating or fatal levels are reached.


**7.    CONTESTED ISSUES OF FACT**

1.      Whether the smoke detector was properly powered at the time of Mr. Cruz' death (was the battery properly installed).

2.      Is the battery that plaintiffs produced with the smoke detector the battery that was installed in the smoke detector at the time of Mr. Cruz' death?

3.      The time of Mr. Cruz' of incapacitation.

4.      The time of Mr. Cruz' death.

5.      Whether the detector alarmed.

6.      Whether plaintiffs' investigator, Mac McClintock, pushed the test button when he discovered the smoke detector in Mr. Cruz' house.

7.    Whether the space heater generated sufficient smoke or soot to cause a properly operating ionization detector to alarm.

8.    When, if at all, the space heater generated a sufficient amount of smoke or soot to cause a properly operating ionization detector to alarm.

9.    Whether the space heater generated a sufficient amount of smoke or soot to cause a properly operating ionization detector to alarm before Mr. Cruz' became incapacitated.

10.    Whether Mr. Cruz would have been able to or respond to a smoke detector alarm.

11.    What is the expected behavior of a reasonable person by an ionization detector.

12.    The medical examiner, Dwight S. Davenport, stated in his affidavit which was signed on March 19, 2000 (more than two years after his examination) that there was no soot in Mr. Cruz's lung and concluded that Mr. Cruz died of carbon monoxide poisoning before he inhaled any smoke or soot. The pathologist provided no reason, in his affidavit, for changing his opinion about the time of death from "approximately 24 hours" to "more than 24 hours." Further he provided no basis for his conclusion about a lack of inhaled soot and smoke other than the initial finding that the larynx, trachea, bronchi, and lungs were unremarkable.

13.    Whether there is no dispute that Mr. Cruz' carbon monoxide poisoning death was caused by the continuing operation of an un-vented and improperly fueled space heater in his home.

14.    Whether nothing the smoke detector did or failed to do resulted in physical harm to Mr. Cruz, or could have prevented the harm Mr. Cruz suffered

15.    Whether Plaintiffs have evidence demonstrating that the detector's failure is a proximate or producing cause of Mr. Cruz' death. Whether plaintiffs can show that the space

20

heater produced sufficient quantities of the byproducts of combustion that the ionization detector should have alarmed before Mr. Cruz was incapacitated or killed by carbon monoxide.

16.    Whether, plaintiffs are able to present evidence as to:

1.    how much smoke and/or carbon monoxide was produced by the space heater at anytime;

2,    when the space heater began producing smoke in relation to the carbon monoxide;

3.    when smoke reached the smoke detector in sufficient quantities to cause it to alarm; and

4.    when Mr. Cruz became incapacitated or died.

Whether, it is possible for plaintiffs to prove that the smoke detector should have alarmed before Mr. Cruz became incapacitated from the carbon monoxide the heater was producing.

17.    Whether Plaintiffs can impose liability upon Defendant BRK Brands, Inc. for Mr. Cruz' death based upon allegations that a BRK ionization detector failed to alarm, even though the detector did not directly inflict physical harm or start in motion of serious of events that resulted in Mr. Cruz's death and was not intended to serve as a carbon monoxide detector.

18.    Whether BRK's ionization detector's operation resulted in physical harm to Mr. Cruz or could have prevented the harm that Plaintiff's suffered.

19.    Whether when an ionization type smoke detector is that close to a space heater it will trigger an alarm within minutes, not hours.

20.    Whether BRK states in its user manual for ionization smoke detectors that the detector should not be within 20 feet of a space heater or it will be triggered by the heater.

21.    Whether the smoke detector never sounded despite the fact there were large quantities of soot found in Mr. Cruz's living room, around the detector, and on the detector.

22.    Whether the smoke detector failed to sound an audible warning causing Manuel Cruz to asphyxiate.

23.    Whether the smoke detector was properly powered at the time of Mr. Cruz' death.

21

24.    Whether the battery was properly installed.

25.    Whether the battery that plaintiffs produced with the smoke detector was the battery that was installed in the smoke detector at the time of Mr. Cruz' death?

## 8.    AGREED PROPOSITIONS OF LAW

1.    In diversity cases, such as this, Texas law determines the quality and quantum of evidence required to establish a cause of action. *Jones v. Wal-Mat Stores, Inc.* 870 F.2d 982, 986 (5th Cir. 1989); *Erie Railroad Co. v. Tompkins*, 304 U.S.64, 78, 58 S.Ct. 817 (1938).

2.    An action to recover damages under the Texas wrongful death statute is for the exclusive benefit of the surviving spouse, children and parents of the deceased.  Texas Civ. Prac. & Rem. Code §71.004(a).

3.    Although Texas law governs the elements of plaintiffs' causes of action, the sufficiency of evidence is a matter of federal law.  See Helene Curtis Industries, Inc. v. Pruitt, 385 F.2d 841, 850 (5th Cir. 1967).

4.    To recover for injuries under either a strict products liability, negligence, negligence per se or breach of warranty theory, the plaintiffs must prove, among other things, causation. See Ambrosio v. Carter's Shooting Center, 20 S.W.3d 262, 265 (Tex. App. – Houston [14 Dist.] 2000); Minnesota Mining and Manufacturing Co. v. Atterbury, 978 S.W.2d 183, 197 (Tex. App. 1998).

5.    To succeed on their negligence, negligence per se and/or breach of warranty theories, the plaintiffs must prove that BRK's conduct and/or the product defect was the proximate cause of their injuries.  See General Motors Corp. v. Saenz, 873 S.W.2d 353, 357 (Tex. 1993); Ambrosio, 20 S.W.3d at 265 (discussing negligence and negligence per se);

22

Minnesota Mining and Manufacturing Co. v. Atterbury, 978 S.W.2d 183, 197 (Tex. App. 1998) (discussing breach of warranty).

6.      However, to recover for strict products liability, the plaintiffs need only establish that the defect at issue was a producing cause of their injuries.  See Amstadt v. United States Brass Co., 919 S.W.2d 644, 648 (Tex. 1996); Minnesota Mining and Manufacturing, 978 S.W.2d at 197.

7.      A producing cause has been defined as "an efficient, exciting or contributing cause that, in a natural sequence, produces the injuries or damages complained of and but for which, such injuries or damages would not have occurred."   Minnesota Mining and Manufacturing, 978 S.W.2d at 197; see also Haynes & Boone v. Bowser Boulden Ltd., 896 S.W.2d 179 (Tex. 1995).

8.      The difference between proximate and producing cause is that proof of proximate cause entails a showing of foreseeability, while proof of producing cause does not.  See Saenz, 873 S.W.2d at 357; Roberts v. Healey, 991 S.W.2d 873, 878 (Tex. App. – Houston [14th Div.] 1999).

9.      Although a producing cause need not be foreseeable, both producing and proximate cause require that the defendant's conduct be a "cause-in-fact" of plaintiffs' injuries. See Union Pump Co. v. Allbritton, 898 S.W.2d 773, 775 (Tex. 1995); Minnesota Mining and Manufacturing, 978 S.W.2d at 197; Dinkelman v. Toyota Motor Sales, U.S.A., No. 3:98-CV-0400-H, 1999 U.S. Dist. LEXIS 1448, *6 (Feb. 4, 1999 N.D. Tex.).

23

10.   In other words, the defendant's act or omission must be a substantial factor in bringing about the plaintiffs' injury, and that without that act or omission, no harm would have occurred. See Ambrosio, 20 S.W.3d at 266; Roberts, 991 S.W.2d at 878. The act or omission need not be the sole cause." *E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 458-59 (Tex.1992).

11.   The jury is allowed to infer cause in fact "from the circumstances surrounding the event. *Mosley v. Excell Corp.* 109 F.3d 1006, 1009 (5th Cir. 1997); *Bartley v. Euclid, Inc.*, 158 F.3d 261, 272 (5th Cir. 1998).

*12.*   [C]ircumstantial evidence is not legally insufficient merely because more than one reasonable inference may be drawn from it. If circumstancial evidence will support more than one reasonable inference, it is for the jury to decide which is more reasonable..." *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex.2001).

13.   Cause-in-fact, commonly referred to as factual causation, must be proven by evidence of probative force, and cannot be established by mere conjecture, guess or speculation. See Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995); Ambrosio, 20 S.W.3d at 266; Roberts, 991 S.W.2d at 878. Cause in fact is "a particularly apt question for jury determination." *Farley v. MM Cattle Co.,* 592 S.W.2d 751, 756 (Tex. 1975).

14.   Cause-in-fact is not shown if the defendant's act or omission did no more than furnish a condition that made the injury possible. Ambrosio, 20 S.W.3d at 266; Roberts, 991 S.W.2d at 878.

15.   In other words, cause-in-fact does not exist as a matter of law when the defendant's conduct was too attenuated or remotely connected to plaintiffs' injury. See

24

Ambrosio, 20 S.W.3d at 267; Wheaton Van Lines, Inc. v. Mason, 925 S.W.2d 722, 728 (Tex. App. – Fort Worth 1996).

16.    To prevail on their claim for breach of implied warranty of merchantability under the Texas Deceptive Trade Practice Act, plaintiffs must prove that the smoke detector at issue: (a) was defective when it left BRK's possession; and (b) was unfit for the ordinary purposes for which it is used because of a lack of something necessary for adequacy.  See Sipes v. General Motors Corp., 946 S.W.2d 143, 158 (Tex. App. 1997).

17.    The defect in an implied warranty of merchantability case means the condition of the goods that, because of a lack of something necessary for adequacy, renders them unfit for the ordinary purpose for which they are used.  Id.; see also Hyundai Motor Co. v. Rodriguez, 995 S.W.2d 661, 665 (Tex. 1999); Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442 (Tex. 1989).

18.    However, in a case involving a claim for personal injuries, strict liability and breach of warranty, concepts of "defect" are functionally identical.  Hyundai, supra.

19.    More than mere commission of a tort is required for the imposition of punitive damages.  Guilbeau v. Anderson, 841 S.W.2d 517, 520 (Tex. App. – Houston [14th Dist.] 1992); Transportation Insurance Co. v. Moriel, 879 S.W.2d 10, 16 (Tex. 1994).

20.    Under Texas law, punitive damages may be awarded only if the claimant proves by clear and convincing evidence that the defendant acted with gross negligence, malice or otherwise morally culpable conduct.  See Celanese LTD. v. Chemical Waste Management, Inc., 75 S.W.3d 593, 599 (Tex. App. – Texarkana 2002); Wicker v. City of Galveston, 944 F. Supp. 553, 560 (S.D. Tex. 1996); see also Tex. Civ. Prac. & Rem. Code § 41.003(a) (Vernon 1997).

21.    Specifically, punitive damages may not be imposed, absent clear and convincing proof of the following:

    (A)    a specific intent by the <u>defendant</u> to cause substantial injury to the claimant [this element demonstrates malice]; <u>**or**</u>

    (B)    an act or omission:

        (i)    which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; <u>**and**</u>

        (ii)    of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others [prongs (B)(i) and (ii), taken together, demonstrate both malice and gross negligence].

22.    Tex. Civ. Prac. & Rem. Code § 41.001(7) (Vernon 1997) (emphasis added); <u>Celanese</u>, 75 S.W.3d at 599; <u>see</u> <u>also</u> Tex. Civ. Prac. & Rem. Code § 41.003(a) (Vernon 1997). The objective component of malice and gross negligence is a function of the magnitude and probability of the potential injury, and can never be satisfied by conduct creating a remote possibility of injury or even a high probability of minor harm; rather the alleged conduct must have created the likelihood of serious injury. See <u>Celanese</u>, 75 S.W.3d at 599-600; <u>General Motors Corp. v. Sanchez</u>, 997 S.W.2d 584, 596 (Tex. 1999); <u>Universal Servs. Co. v. Ung</u>, 904 S.W.2d 638, 641 (Tex. 1995).

23.    Plaintiffs must prove that the defendant had "actual subjective awareness of the risk involved, but nevertheless proceed[ed] in conscious indifference to the rights, safety or welfare of others." <u>Moriel</u>, 879 S.W.2d at 23; <u>Celanese</u>, 75 S.W.3d at 599.

24.    An act or omission that is merely thoughtless, careless or inordinately risky cannot be grossly negligent or malicious, and does not support a claim for punitive damages. See <u>Wicker</u>, 944 F. Supp. at 560.

26

25.    Evidence of simple negligence is not enough to prove either the objective or subjective elements required to establish a claim for punitive damages. Moriel, 879 S.W.2d at 22; Celanese, 75 S.W.3d at 599-600.

26.    Further, punitive damages may not be assessed against a defendant as a result of harm caused by a product which complies with all government and industry standards and requirements. See e.g. Barger v. Garden Way, Inc., 499 S.E.2d 737, 743 (Ga. App. 1998) (compliance with government regulations "does tend to show that there is no clear and convincing evidence of willful misconduct"); Satcher v. Honda Motor Corp., 52 F.3d 1311, 1317 (5th Cir. 1995); Mercer v. Pittway Corp., 616 N.W.2d 602, 618 (Iowa 2000) (compliance with the UL 217 standard shows there can be a reasonable disagreement over the relative risks in the manufacture and production of ionization smoke detectors, thereby precluding an award of punitive damages).

27.    Plaintiffs are not required to present direct and positive proof, because the jury is allowed to infer cause in fact "from the circumstances surrounding the event." *Mosley v. Excel Corp.,* 109 F.3d 1003, 1009 (5th Cir. 1997); *Bartley v. Euclid, Inc.,* 158 F.3d 261, 272 (5th Cir. 1998)

28.    The Texas Supreme Court has stated that cause in fact is "a particularly apt question for jury determination."

## 9.    CONTESTED ISSUES OF LAW

1.    Material facts may not be proved through unreasonable inferences drawn from the evidence. See Fenner v. General Motors Corp., 657 F.2d 647, 651 (5th Cir. 1981).

2.    An inference as to an ultimate issue of fact is deemed unreasonable, and without probative force, if it would allow a jury to rest its verdict on mere speculation and conjecture. See Bridges v. Groendyke Transport, Inc., 553 F.2d 877, 878-79 (5th Cir. 1977).

3. Ultimate inferences are too speculative and conjectural to support a judgment if they are at war with uncontradicted or unimpeached facts. See Fenner, 657 F.2d at 651; Helene Curtis Industries, 385 F.2d at 851.

4. A jury may not reasonably infer causation from meager circumstantial evidence that could give rise to any number of inferences, none more probable than the other. See Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1388 (5th Cir. 1996); Dreijer v. Girod Motor Co., 294 F.2d 549, 555-556 (5th Cir. 1961); Lozano v. Lozano, 52 S.W.3d 141, 148 (Tex. 2001); Wright v. Wal-Mart Stores, Inc., 73 S.W.3d 552, 555 (Tex. App. – Houston 2002).

5. Thus, when circumstances are consistent with any possibility, and nothing shows that one is more probable than the other, no fact can be inferred. See Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1388 (5th Cir. 1996); Dreijer v. Girod Motor Co., 294 F.2d 549, 555-556 (5th Cir. 1961); Lozano v. Lozano, 52 S.W.3d 141, 148 (Tex. 2001); Wright v. Wal-Mart Stores, Inc., 73 S.W.3d 552, 555 (Tex. App. – Houston 2002).

## 10. EXHIBITS

### A. Plaintiffs' Exhibits.

See Exhibit "C", for the list of exhibits plaintiff expects to offer into evidence during trial. In accordance with Appendix B of the Local Rules of the United States District Court for the Southern District of Texas, a party requiring authentication of an exhibit must notify the offering counsel in writing within five days after the exhibit is listed and made available; failure to object in advance of the trial in writing concedes authenticity. Plaintiffs hereby notifies defendant to authenticate any and all medical records.

### B. BRK Brands' Exhibits

See Exhibit "__", for the list of exhibits defendant expects to offer into evidence during trial. In accordance with Appendix B of the Local Rules of the United States District Court for

28

the Southern District of Texas, a party requiring authentication of an exhibit must notify the offering counsel in writing within five days after the exhibit is listed and made available; failure to object in advance of the trial in writing concedes authenticity. BRK Brands hereby notifies defendant to authenticate any and all medical records.

## 11.    WITNESSES

### A.    Plaintiffs' Witnesses

See Exhibit "A" for the list of witnesses who plaintiffs may call at trial to offer testimony in support of its case in chief. If Plaintiffs determine that it will call other witnesses at trial, their names, addresses and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses.

### B.    BRK Brands' Witnesses

See Exhibit "__" for the list of witnesses who defendant may call at trial to offer testimony in support of its case in chief. If defendant determines that it will call other witnesses at trial, their names, addresses and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses.

## 12.    SETTLEMENTS

The parties attempted to resolve the present dispute through mediation on April 25, 2000, and February 6, 2003, but were unsuccessful. All settlement efforts have been exhausted and will have to be tried. Plaintiffs allege a lack of good faith effort of the part of defendants.

## 13.    TRIAL.

### A.    Plaintiffs

Plaintiffs anticipate 24 hours of testimony.

### B.    BRK Brands

Defendant anticipates 24 hours of testimony.  Defendant will provide monitors and other devices, if necessary, to view exhibits and other exhibits.  However, BRK Brands requests that the Court make available an interface device so that images stored on a lap-top computer may be used during trial.

BRK Brands also respectfully request the Court's flexibility in scheduling this matter for trial or in calling witnesses out of turn.  This defendant, its counsel and many of its expert witnesses are set to begin trial on March 3, 2003 in the U.S. District Court for the Northern District of Texas, Amarillo before the Honorable Mary Lou Robinson.

## 14.    ATTACHMENTS

### C.    Plaintiffs

Proposed questions for the voir dire examination have been previously filed with the court.

Proposed charge, including instructions, definitions, and special interrogatories, with authority, attached as Exhibit "B"

Proposed Exhibit List attached hereto as Exhibit "C"

Proposed Motion in Limine attached here to as Exhibit "D";

### D.    BRK Brands

Proposed questions for the voir dire examination attached as Exhibit _____

Proposed charge, including instructions, definitions, and special interrogatories, with authority attached as Exhibit _____

Motion in Limine is attached as Exhibit "____"

_____        _____
United States District Judge                                                Date

30

APPROVED:

_Juan Gonzalez_ _(signature)_     _2/21/03_
Juan Gonzalez                                        Date
Attorney for Jose Garcia Individually and
Idalia Garcia, Individually and as Representative
of the Estate of Manuel Cruz, deceased


_Ray R. Marchan_ _(signature)_     _2/21/03_
Ray R. Marchan                                       Date
Attorney for Cynthia Cox as
Next Friend of Brittany Cox


_____     _____
Rene O. Oliveira                                     Date
Attorney for BRK Brands, Inc.

31

# Exhibit A

# IN THE U.S. DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **JOSE GARCIA, Individually** | § | |
| **IDALIA GARCIA, Individually** | § | |
| **and as Representative of the** | § | **Civil Action** |
| **Estate of MANUEL CRUZ and** | § | |
| **CYNTHIA COX as Next Best** | § | **No. B-98-186** |
| **Friend of BRITTANY COX** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **BRK BRANDS, INC.** | § | |

## PLAINTIFF CYNTHIA COX ANF OF BRITTANY COX'S WITNESS LIST

Cynthia Marie Cox
1500 South Tio
Weslaco, Texas 78596
(956) 968-8088
Knowledge of facts and circumstances surrounding decedent's death as a result of the incident made the basis of this lawsuit.

Brittany Marie Cox
1500 South Tio
Weslaco, Texas 78596
(956) 968-8088
Knowledge of facts and circumstances surrounding decedent's death as a result of the incident made the basis of this lawsuit.

Idalia Garcia-Mother of Deceased
174 Chappel
San Benito, Texas 78586
Knowledge of facts and circumstances surrounding decedent's death as a result of the incident made the basis of this lawsuit.

Jose Garcia-Father of Deceased
174 Chappel
San Benito, Texas 78586

Knowledge of facts and circumstances surrounding decedent's death as a result of the incident made the basis of this lawsuit.

BRK Brands, Inc.
c/o Elizabeth Neally
Roerig, Oliveira & Fisher, LLP
855 West Price Road, Suite 9
Brownsville, Texas 78520
956-542-5666
Knowledge of facts and circumstances surrounding decedent's death as a result of the incident made the basis of this lawsuit.

Sofia Castillo
194 Thomae Lane
San Benito, Texas 78586
Knowledge of facts and circumstances surrounding decedent's death as a result of the incident made the basis of this lawsuit.

Kenya E. Sosa
11070 Mead Road, Apt. 1403
Baton Rouge, LA
or
P. O. Box 2806
South Padre Island, Texas 78597
Knowledge of facts and circumstances surrounding decedent's death as a result of the incident made the basis of this lawsuit.

DeWitt S. Davenport, M. D.-Pathologist
Argullin/Picacio
Pathology Department
P. O. Drawer 2588
Harlingen, Texas 78551
Knowledge of facts and circumstances surrounding the autopsy of decedent's death as a result of the incident made the basis of this lawsuit. All medical providers are expected to testify fully as to history, examination, treatment, diagnosis, prognosis and causation as related to Plaintiff's injuries that form the basis of this suit. Additionally, Plaintiff may introduce all the health care provider's medical records through a qualified custodian of records.

Custodian of Records for
DeWitt S. Davenport, M. D.-Pathologist
Argullin/Picacio
Pathology Department
P. O. Drawer 2588
Harlingen, Texas 78551
Knowledge of facts and circumstances surrounding the autopsy of decedent's death as a result of the incident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the medical and financial records of DeWitt S. Davenport, M. D. pertaining to Decedent are under

the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business, and that the medical expenses incurred are reasonable and necessary.

Dr. Margie Cornwell
Pathology
P. O. Drawer 2588
Harlingen, Texas 78552
Knowledge of facts and circumstances surrounding the autopsy of decedent's death as a result of the incident made the basis of this lawsuit. All medical providers are expected to testify fully as to history, examination, treatment, diagnosis, prognosis and causation as related to Plaintiff's injuries that form the basis of this suit. Additionally, Plaintiff may introduce all the health care provider's medical records through a qualified custodian of records.

Custodian of Records for
Dr. Margie Cornwell
Pathology
P. O. Drawer 2588
Harlingen, Texas 78552
Knowledge of facts and circumstances surrounding the autopsy of decedent's death as a result of the incident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the medical and financial records of DeWitt S. Davenport, M. D. pertaining to Decedent are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business, and that the medical expenses incurred are reasonable and necessary.

Eloy Cano
Cameron County Sheriff's Department
860 East Harrison Street
Brownsville, Texas 78520
Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this lawsuit.

Custodian of Records for
Eloy Cano
Cameron County Sheriff's Department
860 East Harrison Street
Brownsville, Texas 78520
Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the records concerning the investigation of incident made the basis of this lawsuit, are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.

Bennie Ochoa, III
Justice of the Peace
Pct. 1, Place 1
302 Queen Isabella Blvd.
Port Isabel, Texas 78578
(956) 943-2520
Knowledge of facts and circumstances surrounding the death certificate
pertaining to the incident made the basis of this lawsuit.

Custodian of Records for
Bennie Ochoa, III
Justice of the Peace
Pct. 1, Place 1
302 Queen Isabella Blvd.
Port Isabel, Texas 78578
(956) 943-2520
Knowledge of facts and circumstances surrounding the death certificate
pertaining to the incident made the basis of this lawsuit. It is reasonably
anticipated that the custodian of records will testify that the records concerning
the death certificate investigation of incident made the basis of this lawsuit, are
under the supervision, custody and control of the custodian of records, that such
records were kept in the regular course of business.

Custodian of Records for
Valley Baptist Medical Center
2101 Pease Street
Harlingen, Texas 78551
(956) 389-1100
Knowledge of facts and circumstances surrounding the medical and financial
records of Valley Baptist Medical Center pertaining to decedent as a result of the
incident made the basis of this lawsuit. It is reasonably anticipated that the
custodian of records will testify that the medical and financial records of Valley
Baptist Medical Center pertaining to Decedent are under the supervision,
custody and control of the custodian of records, that such records were kept in
the regular course of business, and that the medical expenses incurred are
reasonable and necessary.

Custodian of Records for
Harlingen EMS
1705 Vermont
Harlingen, Texas 78550
(956) 428-3087
Knowledge of facts and circumstances surrounding the medical and financial
records of Harlingen EMS pertaining to decedent as a result of the incident made
the basis of this lawsuit. It is reasonably anticipated that the custodian of records
will testify that the medical and financial records of Harlingen EMS pertaining to
Decedent are under the supervision, custody and control of the custodian of

records, that such records were kept in the regular course of business, and that the medical expenses incurred are reasonable and necessary.

Desi Najera
Cameron County Fire Marshall
965 E. Harrison Street
Brownsville, Texas 78520
Knowledge of facts and circumstances surrounding decedent's death as a result of the incident made the basis of this lawsuit.

Custodian of Records for
Desi Najera
Cameron County Fire Marshall
965 E. Harrison Street
Brownsville, Texas 78520
Knowledge of facts and circumstances surrounding decedent's death as a result of the incident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the records of Desi Najera/Cameron County Fire Marshall pertaining to Decedent are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business, and that the medical expenses incurred are reasonable and necessary.

Custodian of Records for
City of Los Fresnos EMS
200 N. Brazil
Los Fresnos, Texas 78566
(956) 233-5768
Knowledge of facts and circumstances surrounding the medical and financial records of City of Los Fresnos EMS pertaining to decedent as a result of the incident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the medical and financial records of City of Los Fresnos EMS pertaining to Decedent are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business, and that the medical expenses incurred are reasonable and necessary.

Custodian of Records for
San Benito Fire Department
1413 South Reagan
San Benito, Texas 78586
Knowledge of facts and circumstances surrounding the investigation records of decedent as a result of the incident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the investigation records pertaining to Decedent are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business, and that the medical expenses incurred are reasonable and necessary.

Reed (Mack) McClintock
McClintock & Associates, Inc.
28295 IH 10 West Suite 4211
Boerne, Texas 78006
830-981-9544
Knowledge of facts and circumstances surrounding factual observations related
to the smoke detector and the heater's chain of custody. Also, knowledge of facts
and circumstances surrounding factual observations of the accident site.

Custodian of Records for
Reed (Mack) McClintock
McClintock & Associates, Inc.
28295 IH 10 West Suite 4211
Boerne, Texas 78006
830-981-9544
        It is reasonably anticipated that the custodian of records will testify that
the records  are under the supervision, custody and control of the custodian of
records, that such records were kept in the regular course of business, and that
the expenses incurred are reasonable and necessary

Mr. Doug Holmes
INTROSPECT
216-C North Wisconsin
League City, Texas 77573
281-332-0613
Knowledge of facts and circumstances surrounding the cause and origin of the
fire and accumulation of smoke and soot on the smoke detector.

Custodian of Records for
Mr. Doug Holmes
INTROSPECT
216-C North Wisconsin
League City, Texas 77573
281-332-0613
Knowledge of facts and circumstances surrounding the cause and origin of the
fire and accumulation of smoke and soot on the smoke detector. It is reasonably
anticipated that the custodian of records will testify that the records  are under
the supervision, custody and control of the custodian of records, that such
records were kept in the regular course of business, and that the expenses
incurred are reasonable and necessary

E  Wayne McCain, P. E.
2000 McCain Parkway
Pelham, Alabama 35124
205-663-7646
Knowledge of facts and circumstances surrounding factual observations related
to the smoke detector and the heater's chain of custody. Also, knowledge of facts
and circumstances surrounding factual observations of the accident site.

Custodian of Records for
E Wayne McCain, P. E.
2000 McCain Parkway
Pelham, Alabama 35124
205-663-7646
Knowledge of facts and circumstances surrounding factual observations related
to the smoke detector and the heater's chain of custody. Also, knowledge of facts
and circumstances surrounding factual observations of the accident site. It is
reasonably anticipated that the custodian of records will testify that the records
are under the supervision, custody and control of the custodian of records, that
such records were kept in the regular course of business, and that the expenses
incurred are reasonable and necessary

Dr. Don Russell
Texas A & M University
301 Werc
College Station, Texas 77843-3126
409-845-7912
Knowledge of facts and circumstances surrounding factual observations related
to the smoke detector and the heater's chain of custody. Also, knowledge of facts
and circumstances surrounding factual observations of the accident site.

Custodian of Records for
Dr. Don Russell
Texas A & M University
301 Werc
College Station, Texas 77843-3126
409-845-7912
Knowledge of facts and circumstances surrounding factual observations related
to the smoke detector and the heater's chain of custody. Also, knowledge of facts
and circumstances surrounding factual observations of the accident site. It is
reasonably anticipated that the custodian of records will testify that the records
are under the supervision, custody and control of the custodian of records, that
such records were kept in the regular course of business, and that the expenses
incurred are reasonable and necessary

Morris Crammer, Ph. D.
Crammer & Associates
13924 Rivercrest Drive
Little Rock, AR 72221
501-224-0240
Knowledge of facts and circumstances surrounding factual observations related
to the smoke detector and the heater's chain of custody. Also, knowledge of facts
and circumstances surrounding factual observations of the accident site.

Reed McClintock
28295 IH 10 West, Suite 4211
Boerne, Texas 78006
830-981-9455
Knowledge of facts and circumstances surrounding factual observations related
to the smoke detector and the heater's chain of custody.  Also, knowledge of facts
and circumstances surrounding factual observations of the accident site.

Michael J. Schultz
M.J. SCHULZ & ASSOCIATES, INC.
425 Hillandale Drive
Bartlett, IL  60103
Phone:  (630) 736-0747
Knowledge of facts and circumstances surrounding the accumulation of smoke
and soot to such an extent that the smoke detector would have sounded an alarm
at such time that would have prevented Mr. Cruz's demise.

Jesse Aronstein
Consulting Engineer
Mechanical & Materials Engineering
50 Pasture Lane
Poughkepsie, New York 12603
845-462-6452 or
Gallaway Lake, New York 12025
(914) 462-6452
Knowledge of facts and circumstances surrounding the accumulation of smoke
and soot to such an extent that the smoke detector would have sounded an alarm
at such time that would have prevented Mr. Cruz's demise.

Everett G. Dillman, Ph. D
President
International Business Planners
306 Thunderbird Drive
El Paso, Texas 79912
915-584-1124
Knowledge of facts and circumstances surrounding Plaintiff's damages.
Economist.

Custodian of Records for
Garza-Elizondo Funeral Home
209 West Taylor
Harlingen, Texas
(956) 423-5353
Knowledge of facts and circumstances surrounding the funeral records of
decedent as a result of the incident made the basis of this lawsuit. It is reasonably
anticipated that the custodian of records will testify that the investigation records
pertaining to Decedent are under the supervision, custody and control of the
custodian of records, that such records were kept in the regular course of
business, and that the medical expenses incurred are reasonable and necessary.

Custodian of Records for
Thomae-Garza Funeral Home
395 South Sam Houston
San Benito, Texas
(956) 399-1331
Knowledge of facts and circumstances surrounding the funeral records of
decedent as a result of the incident made the basis of this lawsuit. It is reasonably
anticipated that the custodian of records will testify that the investigation records
pertaining to Decedent are under the supervision, custody and control of the
custodian of records, that such records were kept in the regular course of
business, and that the medical expenses incurred are reasonable and necessary.

David Minnis
34 Aldon Road
Montgomery, Illinois  60538
Knowledge of facts and circumstances surrounding the BRK's manipulation of
testing and BRK's misrepresentations about the testing.

Ms. Lumbreras
Will supplement additional information

Officer Jose Luis Barreda
Sheriff's Department
954 E. Harrison Street
Brownsville, Texas 78520
(956) 544-9860
Knowledge of facts and circumstances surrounding the investigation of the
accident made the basis of this lawsuit.

Supervisor Robert F. Rodriguez
Sheriff's Department
954 E. Harrison Street
Brownsville, Texas 78520
(956) 544-9860
Knowledge of facts and circumstances surrounding the investigation of the
accident made the basis of this lawsuit.

Officer Gracie Paredes
Sheriff's Department
954 E. Harrison Street
Brownsville, Texas 78520
(956) 544-9860
Knowledge of facts and circumstances surrounding the investigation of the
accident made the basis of this lawsuit.

Mary Ann Flores
Sheriff's Department
954 E. Harrison Street
Brownsville, Texas 78520
(956) 544-9860
Knowledge of facts and circumstances surrounding the investigation of the
accident made the basis of this lawsuit.

Officer Roy Zepeda
Sheriff's Department
954 E. Harrison Street
Brownsville, Texas 78520
(956) 544-9860
or
c/o U. S. Marshalls Office
600 East Harrison
Brownsville, Texas 78520
956-548-2519
Knowledge of facts and circumstances surrounding the investigation of the
accident made the basis of this lawsuit.

Officer Jimmy Vasquez
Sheriff's Department
954 E. Harrison Street
Brownsville, Texas 78520
(956) 544-9860
or
c/o Kerville Sheriff's Office
400 Clearwater Paseo
Kerville, Texas 78028
830-896-1216
Knowledge of facts and circumstances surrounding the investigation of the
accident made the basis of this lawsuit.

Captain Rumaldo Rodriguez
Custodian of Records for
Officer Jose Luis Barreda
Supervisor Robert F. Rodriguez
Officer Gracie Paredes
Mary Ann Flores
Officer Roy Zepeda
Officer Jimmy Vasquez
Sheriff's Department
954 E. Harrison Street
Brownsville, Texas 78520
(956) 544-9860
Knowledge of facts and circumstances surrounding the investigation of the
accident made the basis of this lawsuit. It is reasonably anticipated that the
custodian of records will testify that the records concerning the investigation of
incident made the basis of this lawsuit, are under the supervision, custody and
control of the custodian of records, that such records were kept in the regular
course of business.

Officer Jorge Delgado
c/o Constable Abel Perez
974 East Harrison Street
Brownsville, Texas 78520
956-544-0859
Knowledge of facts and circumstances surrounding the investigation of the
accident made the basis of this lawsuit. First officer at the scene.

Officer Carlos Garza
c/o B.I.S.D. Police Department
1900 Price Road
Brownsville, Texas 78520
Knowledge of facts and circumstances surrounding the investigation of the
accident made the basis of this lawsuit. First officer at the scene.

Mike Martinez
Harlingen EMS
1705 Vermont
Harlingen, Texas 78550
(956) 428-3087
Knowledge of facts and circumstances surrounding the medical treatment of Mr.
Cruz as for injuries sustained as a result of the incident made the basis of this
lawsuit.

Aaron Garcia
Harlingen EMS
1705 Vermont
Harlingen, Texas 78550
(956) 428-3087
Knowledge of facts and circumstances surrounding the medical treatment of Mr.
Cruz as for injuries sustained as a result of the incident made the basis of this
lawsuit.

Danny Pozada
Harlingen EMS
1705 Vermont
Harlingen, Texas 78550
(956) 428-3087
Knowledge of facts and circumstances surrounding the medical treatment of Mr.
Cruz as for injuries sustained as a result of the incident made the basis of this
lawsuit.

Custodian of Records for
Harlingen EMS
1705 Vermont
Harlingen, Texas 78550
(956) 428-3087
Knowledge of facts and circumstances surrounding the medical and financial
records of Harlingen EMS pertaining to decedent as a result of the incident made
the basis of this lawsuit. It is reasonably anticipated that the custodian of records
will testify that the medical and financial records of Harlingen EMS pertaining to
Decedent are under the supervision, custody and control of the custodian of
records, that such records were kept in the regular course of business, and that
the medical expenses incurred are reasonable and necessary.

Joseph Hernandez
City of Los Fresnos EMS
200 N. Brazil
Los Fresnos, Texas 78566
(956) 233-5768
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Custodian of Records
Joseph Hernandez
City of Los Fresnos EMS
200 N. Brazil
Los Fresnos, Texas 78566
(956) 233-5768
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Armando Lucio
Fire Chief
San Benito Fire Department
143 S. Reagan
San Benito, Texas 78586
(956) 361-3857
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Custodian of Records for
Armando Lucio
Fire Chief
San Benito Fire Department
143 S. Reagan
San Benito, Texas 78586
(956) 361-3857
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Custodian of Records for
Panasonic
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Custodian of Records for
Martin Industries
East Tennessee Street
Florence, Alabama 35360
205-767-0330
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Custodian of Records for
Underwriters Laboratories, Inc.
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Various Unnamed Employees
U. S. Marshall's Office
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Mark Devine, BRK Brands, Inc.
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Custodian of Records for
BRK Brands, Inc.
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Lee M. Blum, Ph. D. DABFT
Forensic Toxicologist
National Medical Service, Inc.
3701 Welsh Road
Willow Grove, PA 19090
215-657-4900
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Richard J. Roby, PE Ph. D.
Technical Director
Combustion Science & Engineering, Inc.
9160 Rumsey Road, Suite B-1
Columbia, Maryland 21045
410-884-3266
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Michael S. Klassen, Ph. D. P.E.
Principal Research Engineer
Combustion Science & Engineering, Inc.
9160 Rumsey Road, Suite B-1
Columbia, Maryland 21045
410-884-3266
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Richard L. P. Custer, MSc
Custer Powell Incorporated
160 East Main Street
Westborough, MA 01581
508-616-9990
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Andrew T. Armstrong, Ph. D.
Armstrong Forensic Laboratory, Inc.
330 Loch'N Green Trail
Arlington, Texas 7612
817-275-2691
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Lori A. Streit, Ph. D.
Unified Engineering Inc.
78 Eisenhower Lane North
Lombard, Illinois 60148
630-261-3031
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Dr. Robert C. Bux
Bexar County
Forensic Science Center
7337 Louis Pasteur
San Antonio, Texas 78229-4565
210-335-4054
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Carlos H. Cascos
Pattillo, Brown & Hill, LLP
765 E. Seventh Street
Brownsville, Texas 78520
956-544-7778
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Donald Galler, MS, PE
Electric & Engineering Solutions
Massachusetts Institute of Technology
Room 4-133
77 Massachusetts Avenue
Cambridge, Massachusetts 02139
617-253-4554
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Jose Garcia
3651 FM 802
Brownsville, Texas 78520
956-544-1048
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

John Cruz
4701 William R. King Rd.
Newton Grove, North Carolina
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Julio Gonzales
Federal Petroleum Co.
5694 E. 14th Street
Brownsville, Texas 78520
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Custodian of Records for
Julio Gonzales
Federal Petroleum Co.
5694 E. 14th Street
Brownsville, Texas 78520
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Jose Garcia
Laguna Vista Police Department
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Marisa Last name unknown
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Rosalinda Perez
250 South McCullough
San Benito, Texas
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Custodian of Records for
Port Isabel Police Department
110 W. Hickman Avenue
Port Isabel, Texas 78578
956-943-2283
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Thelma Sanchez
San Benito, Texas
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Javier Mendoza
San Benito, Texas
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Richard LP Custer, MSC
Custer Power Incorporated
160 East Main Street
Westborough, Massachusetts 01581
508-616-9990
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Judd Clayton, Jr.
Clayton & Associate Consultants
1614-A Oleander Drive
Dickinson, Texas 77539
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Terry Alan Dees
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Willy Alva
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

Douglas Lee Holmes
Knowledge of facts and circumstances surrounding decedent's death as a result
of the incident made the basis of this lawsuit.

## THE FOLLOWING LIST CONTAINS NAMES OF PERSONS INVOLVED IN OTHER CASES AGAINST BRK

Jennifer Morales
1509 S. Pierce
Amarillo, Texas 79101Michelle Jones
Plaintiff, mother of Isiah Morales, deceased and Marcy Morales, minor

Pedro Morales
235 East 3rd Room 102
Hereford, Texas 79045
Plaintiff, father of Isiah Morales, deceased and Marcy Morales, minor

Duain Gomez
2711 S. Seminole
Amarillo, Texas
Witnessed fire

Eddy O'Bonnon
2913 S. Ricks
Amarillo, Texas
Witnessed fire

Jehu Salazar
2700 S. Seminole
Amarillo, Texas
Witnessed fire

Rosalina Castillo
2412 S. Buchana
Amarillo, Texas
Witnessed fire

Glonda Moore
P.O. Box 32391
Amarillo, Texas
Owned home where fire occurred

Rudy Ramirez
2710 S. Seminole
Amarillo, Texas
Witnessed fire

Christine Ramirez
2710 S. Seminole
Amarillo, Texas
πWitnessed fire

Deanna Ramirez
2710 S. Seminole
Amarillo, Texas
Witnessed fire

Becky Ramirez
2710 S. Seminole
Amarillo, Texas
Witnessed fire

Lieutenant Chadwick
Amarillo Police Department
Officer in Charge

Lieutenant Ed Smith
Amarillo Police Department
Crime Scene log custodian

Sergeant Watkins
Amarillo Police Department
Initial Officer in Charge

Sergeant Burgess
Special Crimes Unit
Amarillo Police Department
Investigated and Photographed scene

Sergeant Jones
Special Crimes Unit
Amarillo Police Department
Investigated and video taped scene

Officer Poston
Amarillo Police Department
Patrolman and photographed scene

Officer Garcia
Amarillo Police Department
Patrolman/witness

Officer Perez
Amarillo Police Department
Patrolman/witness

Officer Riddelspurger
Amarillo Police Department
Patrolman/witness

Officer Taylor
Amarillo Police Department
Patrolman/crime scene log

Officer Willis
Amarillo Police Department
Patrolman/photographed scene

Officer Vogel
Amarillo Police Department
Patrolman/witness

Kent Gardner
400 S. Van Buren
Amarillo, Texas
Fire Marshall's Office
Investigator/crime scene log

Gary Jackson
400 S. Van Buren
Amarillo, Texas
Fire Marshall's Office
Investigator

Terry Bible
400 S. Van Buren
Amarillo, Texas
Fire Marshall's Office
Investigator

Terry McKinney
400 S. Van Buren
Amarillo, Texas
Fire Marshall's Office
Investigator

Amarillo Fire Department
911 operators
custodian of records

Chief Duane Gause
Amarillo Fire Department
District Chief

Lt. Steve Barrera
Amarillo Fire Department
Witness/prepared report

Firefighter Alvarado
Amarillo Fire Department
Fire suppression/witness

Firefighter Lyons
Amarillo Fire Department
Fire suppression/witness

Michael A. Rohl
Former Vice President and Chief Financial Officer
BRK Brands, Inc.
3901 Liberty Street
Aurora, Illinois 60504

Beth Weber
Customer Service Supervisor
BRK Brands, Inc.
780 McClure Road
Aurora, Illinois 60504-2495
708-851-7330

Ronald Hejnal
BRK Brands, Inc.
780 McClure Road
Aurora, Illinois 60504-2495
708-851-7330

Carlos A. Moros
BRK Brands, Inc.
780 McClure Road
Aurora, Illinois 60504-2495
708-851-7330

Michele L. Odean
BRK Brands, Inc.
780 McClure Road
Aurora, Illinois 60504-2495
708-851-7330

Mary K. Olson
BRK Brands, Inc.
780 McClure Road
Aurora, Illinois 60504-2495
708-851-7330

Elizabeth Stone
BRK Brands, Inc.
780 McClure Road
Aurora, Illinois 60504-2495
708-851-7330

Kathleen M. Wass
BRK Brands, Inc.
780 McClure Road
Aurora, Illinois 60504-2495
708-851-7330

Franz X. Wieshuber
BRK Brands, Inc.
780 McClure Road
Aurora, Illinois 60504-2495
708-851-7330

Gary Lederer
Address and phone number unknown

Nathan R. Mercer
Suffered a similar loss
4930 Main Court
Davenport, Iowa 52804
319-388-0990

Jennifer Mercer
Suffered a similar loss
2615 North Pine, Apt. 3
Davenport, Iowa 52804
319-388-9334

Carlos Aleman, Sr.
Suffered a similar loss
1019 Plover Street
Rockport, Texas 78382
512-727-0321

Juanita M. Aleman
Suffered a similar loss
1019 Plover Street
Rockport, Texas 78382
512-727-0321

Mary Gordon
Suffered a similar loss

UL and ULC
Paul Paddt
John Parsinnen
Jim Wistmar

CPSC
Dennis Blasius
Wisconsin

David A. Minnis
Former BRK Employee

Jim Woodburn
Employee of BRK

Emma Lambruso **Incorrectly named Emma Lumbreros**
Employee of BRK

Fred Comforti
Ed Duran
Paul Vargo
Nick Bellavia
King Harris
Patricia Mataya
Leo Guthart
John Kunzer
William F. Betzner
Mark Devine
Rosemary Pathe
Joyce Van Lier
Ron Zigarski
Dick Terry
Jim Slater
Stan Dedrick
Dave Kelley
Glen Schultz
Employees or former employees of BRK

Michael Shultz
Fire Modeler

Dr. Jesse Aronstein
PhD who may offer testimony regarding contacts on the alarm
50 Pasture Lane
Poughkeepsie, N.Y. 12603
914-462-6452

George Shoenfelds
Employee of BRK

Clinton Thetford
Cause and Origin investigator
Jack Long Investigations
P.O. Box 65600-193
806-766-7329

All consumers listed in Exhibit A
Entitled: <u>Customer Complaints of No Response to
Smoke by Ionization Smoke Detectors 1990-1996</u>

Lubbock County Medical Examiner
Dr. Glen R. Groben
3502 9th Street, Suite 390
Lubbock, Texas 79415

Texas Panhandle Mental Health Authority
Stacy Sandorskey and Custodian of records and bills
Dr. Veeramachaneni
Shelly Fraley

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE GARCIA, INDIVIDUALLY | § | |
| AND AS REPRESENTATIVE | § | |
| OF THE ESTATE OF MANUEL | § | |
| CRUZ, IDALIA GARCIA, | § | |
| INDIVIDUALLY;  and  CYNTHIA | § | |
| COX AS NEXT BEST FRIEND OF | § | CIVIL ACTION |
| BRITTANY COX | § | |
| | § | NO. B-98-186 |
| VS. | § | |
| | § | |
| BRK BRANDS, INC. | § | |

## PLAINTIFFS' PROPOSED CHARGE TO THE JURY

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence.  By this is meant the greater weight and degree of credible evidence before you.  In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so.  In determining whether any fact has been proved by a preponderance of the

evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

[You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted.]

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions which you have previously been given. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

1. Do not let bias, prejudice or sympathy play any part in your deliberations.

2. In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the Court, that is, what you have seen and heard in this courtroom, together with the law as given you by the Court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3. Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

4. You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answers.

5. You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not

agree to answer a certain question one way if others will agree to answer another question another way.

6.    You must render your verdict based upon a unanimous verdict all of you must agree upon all of the answers made and to the entire verdict.  You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than six jurors.  If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury.  If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given you because your conduct is subject to review the same as that of the witnesses, parties, attorneys and the Judge.  If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

The presiding juror or any other who observes a violation of the Court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used in this charge in a sense which varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed.  A "Yes" answer must be based on a preponderance of the evidence.  If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No."   Whenever a question requires other than a "Yes" or "No" answer, your answer must be based on a preponderance of the evidence.[1]

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence -- such as

---

[1]    1 State Bar of Texas, Texas Pattern Jury Charge, *PJC 1.03 (1989)*.

testimony of an eyewitness. The other is indirect or circumstantial evidence -- the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.[2]

You are instructed that a fact may be established by direct evidence, by circumstantial evidence, or by both direct and circumstantial evidence. A fact is established by direct evidence when proved by witnesses who saw the act done or heard the words spoken or by documentary evidence. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.[3]

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field -- he is called an expert witness -- is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.[4]   If the plaintiffs have proven their claim against the defendant by a preponderance of the evidence, you must determine the damages to which the plaintiffs are entitled. You should not interpret the fact that I have given instructions about the plaintiffs' damages as an indication in any way that I believe that the plaintiffs should, or should not, win this case. It is your task first to decide whether the defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable and that the plaintiffs are entitled to recover money from the defendant.[5]

---

[2]   *Pattern Jury Charges for the Fifth Circuit* (1992)

[3]   1 State Bar of Texas, Texas Pattern Jury Charge, PJC 1.07 (1987).

[4]   *Pattern Jury Charges for the Fifth Circuit* (1992)

[5]   *Pattern Jury Charges for the Fifth Circuit* 15.1 (1992).

If you find that the defendant is liable to the plaintiffs, then you must determine an amount that is fair compensation for all of the plaintiffs' damages. These damages are called "compensatory damages." The purpose of compensatory damages is to make the plaintiffs whole—that is, to compensate the plaintiffs for the damage that the plaintiffs have suffered. Compensatory damages are not limited to expenses that the plaintiffs may have incurred because of their injuries and deaths. If the plaintiffs wins, they are entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that they have suffered because of the defendant's conduct.

You may award compensatory damages only for injuries that the plaintiffs proves were proximately caused by the defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the plaintiffs' damages, no more and no less. You should not award compensatory damages for speculative injuries, but only for those injuries which the plaintiffs have actually suffered or that the plaintiffs are reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiffs prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:[6]

---

[6]    *Pattern Jury Charges for the Fifth Circuit* 15.2 (1992)

1.    You may award damages for any bodily injury that the plaintiffs sustained and any pain and suffering, disability, mental anguish, and/or loss of capacity for enjoyment of life that the plaintiffs experienced in the past or will experience in the future as a result of the bodily injury.  No evidence of the value of intangible things, such as mental or physical pain and suffering, has been or need be introduced.  You are not trying to determine value, but an amount that will fairly compensate the plaintiffs for the damages they have suffered.  There is no exact standard for fixing the compensation to be awarded for these elements of damage.  Any award that you make should be fair in the light of the evidence.[7]

2.    You may award damages for aggravation of an existing disease or physical defect or activation of any such latent condition resulting from physical injury to the plaintiffs.  If you find that there was such an aggravation, you should determine, if you can, what portion of the plaintiffs' condition resulted from the aggravation, and make allowance in your verdict only for the aggravation.[8]

3.    You may award damages for the reasonable value or expense or hospitalization and medical and nursing care and treatment that the plaintiff will require because of their injuries which were caused by the defendant's wrongful conduct.[9]

4.    You may award damages for any earnings lost, any working time lost, and any loss of ability to earn money sustained in the past and any such loss in the future.[10]

---

[7]     *Pattern Jury Charges for the Fifth Circuit* 15.4 (1992)

[8]     *Pattern Jury Charges for the Fifth Circuit* 15.5 (1992)

[9]     *Pattern Jury Charges for the Fifth Circuit* 15.6 (1992)

[10]    *Pattern Jury Charges for the Fifth Circuit* 15.7 (1992)

"Preponderance of the evidence" means the greater weight and degree of credible testimony or evidence introduced before you and admitted in this case.[11]

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.[12] One theory of recovery for each of the plaintiffs in these cases is that they have sustained damages for personal injuries alleged to have been suffered as a result of negligence on the part of the defendants.

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.[13]

[14] "Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.[15]

However, because the amount of care exercised by a reasonably prudent person varies in proportion to the danger known to be involved in what is being done, it follows that the amount of caution required, in the use of ordinary care, will vary with the nature of what is being done, and all the surrounding circumstances shown by the evidence in the case.  To put it another way, any increase in foreseeable danger requires increased care.[16]

---

[11]    1 *State Bar of Texas, Texas Pattern Jury Charges* PJC 1.03 (1989).

[12]    *Pattern Jury Charges for the Fifth Circuit* (1992)

[13]    1 *State Bar of Texas, Texas Pattern Jury Charges, PJC 2.01 (1989).*

[14]    1 *State Bar of Texas, Texas Pattern Jury Charges, PJC 2.01 (1989).*

[16]    *Pattern Jury Charges for the Fifth Circuit* 80.06 (1987).

"Gross negligence" means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected.[17]

You are further instructed that you may award "exemplary damages" if the plaintiff has proved "gross negligence," as previously defined above.

"Exemplary damages" means an amount of money that you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount you may have found as actual damages.[18]

If you determine that the defendant's conduct was so shocking and offensive as to justify an award of exemplary damages, you may exercise your discretion to award those damages. In making any award of exemplary damages, you should consider that the purpose of exemplary damages is to punish a defendant for shocking conduct, and to deter the defendant and others from engaging in similar conduct in the future. The law does not require you to award exemplary damages, however, if you decide to award exemplary damages, you must use sound reason in setting the amount of the damages. The amount of an award of exemplary damages must not reflect bias, prejudice, or sympathy toward any party. however, the amount can be as large as you believe necessary to fulfill the purposes of exemplary damages. You may consider the financial resources of the defendant in fixing the amount of exemplary damages and you may impose exemplary damages against the defendant.

---

[17]    Tex. Civ. Prac. & Rem. Code Ann. § 41.001(5).

[18]    1 *State Bar of Texas, Texas Pattern Jury Charges* PJC 7.06 (1987).

In calculating past and future damages, you should do so as follows:

1.  Damages Accrued:  If you find for the plaintiffs, they are entitled to recover an amount that will fairly compensate them for any damages they have suffered to date.

2.  Calculation of Future Damages:  If you find that the plaintiffs are reasonably certain to suffer damages in the future from their injuries, then you should award them the amount you believe would fairly compensate them for such future damages.  In calculating future damages, you should consider the standard table of mortality as compiled by the United States Bureau of the Census, or other recognized mortality table.

3.  Reduction of Future Damages to Present Value:  An award of future damages necessarily requires that payment be made now for a loss that plaintiffs will not actually suffer until some future date.  If you should find that the plaintiffs are entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages.

    If you award damages for loss of future earnings, you must consider two particular factors:

    a.  You should reduce any award by the amount of the expenses that the plaintiffs would have incurred in making those earnings.

    b.  If you make an award for future loss of earnings, you must reduce it to present value by considering the interest that the plaintiff could earn on the amount of the award if they made a relatively risk-free investment.  The reason you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to the plaintiffs if they receives it today than if he received it in the future,

when he would otherwise have earned it.  It is more valuable because the plaintiff can earn interest on it for the period of time between the date of the award and the date they would have earned the money.  Thus you should adjust the amount of any award for future loss of earnings by the amount of interest that the plaintiffs can earn on that amount in the future.

If you make any award for future medical expenses, you should adjust or discount the award to present value in the same manner as with loss of future earnings.

However, you must not make any adjustment to present value for any damages you may award for future pain  and suffering or future mental anguish.[19]

You must not award compensatory damages more than once for the same injury.  For example, if the plaintiffs prevails on their claims and establishes a dollar amount for his injuries, you must not award them any additional compensatory damages on each claim.  The plaintiffs are only entitled to be made whole once, and may not recover more than they have lost.  Of course, if different injuries are attributed to the separate claims, then you must compensate the plaintiffs fully for all of their injuries.

With respect to exemplary damages, you may make separate awards on each claim that plaintiffs have established.

Now I will read you the questions that you are to answer.

---

[19]   *Pattern Jury Charges for the Fifth Circuit* 15.3 (1992)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE GARCIA, INDIVIDUALLY | § | |
| AND AS REPRESENTATIVE | § | |
| OF THE ESTATE OF MANUEL | § | |
| CRUZ, IDALIA GARCIA, | § | |
| INDIVIDUALLY; and CYNTHIA | § | |
| COX AS NEXT BEST FRIEND OF | § | CIVIL ACTION |
| BRITTANY COX | § | |
| | § | NO. B-98-186 |
| VS. | § | |
| | § | |
| BRK BRANDS, INC. | § | |

## PLAINTIFF'S JURY QUESTIONS

### QUESTION NO. 1

Did the negligence, if any, of BRK Brands, Inc. proximately cause the occurrence or injury in question?

"Negligence" when used with respect to an owner or occupier of a premises, means failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier knows about or in the exercise of ordinary care should know about."

"Ordinary care" when used with respect to an owner or occupier of a premises, means that degree of care which would be used by an owner or occupier of ordinary prudence under the same or similar circumstances.

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. They may be more than one proximate cause.

Answer "Yes" or "No.:

Answer: _____

**PJC 66.3  and  70.2**

## QUESTION NO. 2

Was there a manufacturing defect in the detector at the time it left the possession of BRK Brands, Inc. that was a producing cause of the occurrence in question?

"Producing cause" means an efficient, exciting, or contributing cause that, in a natural sequence, produces the occurrence. There may be more than one producing cause.

A "defect" means a condition of the product that renders it unreasonably dangerous. An "unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics.

Answer "Yes" or "No"

Answer:     _____

**PJC 71.3**

## QUESTION NO. 3.

Was there a design defect in the detector at the time it left the possession of BRK Brands, Inc. that was a producing cause of the occurrence in question?

A "design defect" is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.

Answer "yes" or "no."

Answer: _____

**PJC 71.4**

## QUESTION NO. 4.

Was there a defect in the marketing of the detector at the time it left the possession of BRK Brands, Inc. that was a producing cause of the occurrence in question?

A "marketing defect" with respect to the product means the failure to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have known or failure to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed.

"Adequate" warnings and instructions mean warnings and instructions given in a form that could reasonably be expected to catch the attention of a reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the product's use; and the content of the warnings and instructions must be comprehensible to the average user and must convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent person.

An "unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product with the ordinary knowledge common to the community as to the product's characteristics.

Answer:  "yes" or "no."

ANSWER:    _____

**PJC 71.5**

## QUESTION NO. 5.

**Was there a misrepresentation by BRK BRANDS, INC. that was a producing cause of the occurrence in question?**

There was a misrepresentation if --

1.    BRK Brands, Inc. represented to the public that the ionization detector would sense sufficient amount of particles from the by-products of combustion to alert its users timely; and

2.    the ionization detector sensor failed to possess the most sufficient amount of particles from the by-products of combustion to alert its users timely; and

3.    the representation about the stability of the ionisation detector sensor failed to possess the most sufficient amount of particles from the by-products of combustion to alert its users timely; and,

4.    Manuel Cruz relied on the representation made by BRK Brands, Inc. in purchasing the ionisation detector in question.

A "material fact" is a fact that is important to a normal purchaser by which the purchaser may justifiably be expected to be influenced in making the decision to buy the product.

Answer:    "yes or "no."

Answer:    _____

**PJC 71.6**

## QUESTION NO. 6.

**Was the ionization detector supplied by BRK Brands, Inc. unfit for the ordinary purposes for which such ionization detectors are used because of a defect, and, if so, was such unfit condition a proximate cause of the occurrence in question?**

A "defect" means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy.

Answer:  "yes" or "no."

Answer: _____

**PJC 71.7**

## QUESTION NO. 7.

**What sum of money, if paid now in cash, would fairly and reasonably compensate Brittany Cox, for her damages, if any, resulting from the death of Manuel Cruz?**

Consider the elements of damages listed below and none other.  Consider each element separately.  Do not include damages for one element in any other element.  Do not include interest on any amount of damages you find.

Do not reduce the amounts, if any, if answers because of the negligence, if any, of Brittany Cox.

a.     Pecuniary loss.

"Pecuniary loss" means the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, that Brittany Cox, in reasonable probability, would have received from Manuel Cruz had he lived.

b.     Loss of companionship and society.

"Loss of companionship and society" means the loss of the positive benefits flowing from the love, comfort, companionship, and society that Brittany Cox, in reasonable probability, would have received from Manuel Cruz had he lived.

c.     Mental anguish.

"Mental anguish" means the emotional pain, torment, and suffering experienced by Brittany Cox because of the death of Manuel Cruz.

In determining damages for elements *b* and *c*, you may consider the relationship between Brittany Cox and Manuel Cruz, their living arrangements, any extended absences from one another, the harmony of their family relations, and their common interests and activities.  You are reminded that elements *b* and *c*, like the other element of damages, are separate, and, in awarding damages for one element, you shall not include damages for the other.

Answer, with respect to the elements listed above, in dollars and cents, for damages, if any, that -----

were sustained in the past;          Answer:          _____

in reasonable probability will
be sustained in the future..          Answer:          _____

**PJC 81.3**

## VERDICT OF THE JURY

We the jury, have answered the foregoing special issues in the manner indicated in this verdict form, and return these answers into Court as our verdict.

_____

FOREMAN OR FOREWOMAN

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE, DIVISION

| | | |
|---|---|---|
| JOSE GARCIA, INDIVIDUALLY | § | |
| AND AS REPRESENTATIVE OF THE | § | |
| ESTATE OF MANUEL CRUZ; IDALIA | § | |
| GARCIA, INDIVIDUALLY; AND CYNTHIA | § | |
| COX, INDIVIDUALLY AND AS NEXT | § | CIVIL ACTION NO. B-98-186 |
| FRIEND OF BRITTANY COX | § | |
| | § | |
| v. | § | |
| | § | |
| BRK BRANDS, INC. | § | |

## PLAINTIFFS' PROPOSED DEFINITIONS, INSTRUCTIONS AND QUESTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Jose Garcia, Individually and as Representative of the Estate of Manuel Cruz, Idalia Garcia, Individually, Plaintiffs in the above-entitled and numbered proceeding, and, prior to the submission of charge of the jury, file these Proposed Definitions, Instructions and Questions and request that they be included in the Court's charge to the jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that these Proposed Definitions, Instructions and Questions be included in the Court's charge to the jury.

Respectfully submitted,

By: _____
JUAN A. GONZALEZ
Attorney in Charge
Federal No. 3472
State Bar No. 08129310

OF COUNSEL: GLENN D. ROMERO
Federal No. 7734

1

**LAW OFFICE OF MARK A CANTU**
The Atrium
1300 N. 10th Street, Ste. 400
McAllen, Texas 78501
Telephone: (956) 687-8181
Fax: (956) 687-8868

ATTORNEYS FOR PLAINTIFFS
JOSE GARCIA, INDIVIDUALLY
AND AS REPRESENTATIVE OF
THE ESTATE OF MANUEL CRUZ
AND IDALIA GARCIA,
INDIVIDUALLY

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing instrument was delivered via hand delivery, telefax, certified mail return receipt requested and/or regular mail to the following counsel of record on this the 31st day January 2002.

Rene Oliveira/Elizabeth Neally
**ROERIG, OLIVEIRA & FISHER, L.L.P.**
**855 West Price Rd, Suite 9**
Brownsville, Texas 78520

Terry M. Henry
James Heller
**COZEN O'CONNOR**
1900 Market Street
Philadelphia, PA 19103

Ray R. Marchan
**WATTS & HEARD, L.L.P.**
1926 East Elizabeth
Brownsville, Texas 78520

Juan A. Gonzalez

2

## REQUESTED DEFINITION NO. _____

**"NEGLIGENCE,"**   means failure to use ordinary care, that is failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____        Included in the Court's Charge.

_____        Refused.

_____        Modified, and as modified, Included in the Court's Charge.

SIGNED the _____ day of _____, 2003.

_____
JUDGE PRESIDING

3

**REQUESTED DEFINITION NO._____**

**"ORDINARY CARE,"** means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

**<u>ORDER</u>**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____    Included in the Court's Charge.

_____    Refused.

_____    Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____
JUDGE PRESIDING

4

**REQUESTED DEFINITION NO. _____**

**PJC 71.3      Manufacturing Defect**

A **"DEFECT"** means a condition of the product that renders it unreasonably dangerous.

An "unreasonably dangerous" product is one that is dangerous to an extent beyond that

which would be contemplated by the ordinary user of the product, with the ordinary

knowledge common to the community as to the product's characteristics.

**ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before

the presentation of the charge to the jury that the above and foregoing DEFINITION was

presented to the Court for the inclusion in the Charge to the jury and the same was:

_____      Included in the Court's Charge.

_____      Refused.

_____      Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____
JUDGE PRESIDING

5

**REQUESTED DEFINITION NO. _____**

**PJC 71.4B     Design Defect—Causes of Action Accruing on or after September 1, 1993**

A **"DESIGN DEFECT"** is a condition of the product that renders its unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.  For a design defect to exist there must have been a safer alternative design.

**ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____     Included in the Court's Charge.

_____     Refused.

_____     Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____
JUDGE PRESIDING

6

**REQUESTED DEFINITION NO. _____**

**PJC 71.4B   Design Defect—Causes of Action Accruing on or after September 1, 1993**

**"SAFER ALTERNATIVE DESIGN"** means a product design other than the one actually used that in reasonably probability—

    (1)    would have prevented or significantly reduced the risk of the {occurrence [injury] [occurrence or injury] in question without substantially impairing the product's utility and

    (2)    was economically and technologically feasible at the time the product left the control of  BRK BRANDS, INC. by the application of existing or reasonably achievable scientific knowledge.

**ORDER**

    BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

    _____    Included in the Court's Charge.

    _____    Refused.

    _____    Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

                                          _____
                                          JUDGE PRESIDING

**REQUESTED DEFINITION NO. _____**

**PJC 71.5    Marketing Defect—No Warning or Instruction or Inadequate Warnings or Instructions for Use Given with Product**

A **"MARKETING DEFECT"** with respect to the product means the failure to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known or failure to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed.

**ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____    Included in the Court's Charge.

_____    Refused.

_____    Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____
JUDGE PRESIDING

**REQUESTED DEFINITION NO._____**

**PJC 71.5    Marketing Defect—No Warning or Instruction or Inadequate Warnings or Instructions for Use Given with Product**

"**ADEQUATE**" warnings and instructions mean warnings and instructions given in a form that could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the products use; and the content of the warnings and instructions must be comprehensible to the average user and must convey a fair indication that the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent person.

**<u>ORDER</u>**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____    Included in the Court's Charge.

_____    Refused.

_____    Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____
JUDGE PRESIDING

9

REQUESTED DEFINITION NO. _____

**PJC 81.5     Wrongful Death Damages – Claim of Surviving Parents of Adult Child**

"**PECUNIARY LOSS**"  means the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that IDALIA GARCIA and JOSE GARCIA, in reasonable probability, would have received from MANUEL CRUZ had he lived.

**ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

    _____    Included in the Court's Charge.

    _____    Refused.

    _____    Modified, and as modified, Included in the Court's Charge.

SIGNED the _____ day of _____, 2003.

_____

JUDGE PRESIDING

10

REQUESTED DEFINITION NO. _____

**PJC 81.5**     **Wrongful Death Damages – Claim of Surviving Parents of Adult Child**

"LOSS OF COMPANIONSHIP AND SOCIETY" means the loss of the positive benefits flowing from the love, comfort, companionship, and society that IDALIA GARCIA and JOSE GARCIA, in reasonable probability, would have received from MANUEL CRUZ had he lived.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____        Included in the Court's Charge.

_____        Refused.

_____        Modified, and as modified, Included in the Court's Charge.

SIGNED the _____ day of _____, 2003.

_____
JUDGE PRESIDING

11

**REQUESTED DEFINITION NO. _____**

**PJC 81.5      Wrongful Death Damages – Claim of Surviving Parents of Adult Child**

"**MENTAL ANGUISH**" means the emotional pain, torment, and suffering experienced by IDALIA GARCIA and JOSE GARCIA because of the death of MANUEL CRUZ.

**ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____      Included in the Court's Charge.

_____      Refused.

_____      Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____
JUDGE PRESIDING

12

## REQUESTED DEFINITION NO. _____

**PJC 82.2**    **Survival Damages—Compensatory Damages**

"**PAIN AND MENTAL ANGUISH**" means the conscious physical pain and emotional pain, torment, and suffering experienced by MANUEL CRUZ before his death as a result of the occurrence in question.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____    Included in the Court's Charge.

_____    Refused.

_____    Modified, and as modified, Included in the Court's Charge.

SIGNED the _____ day of _____, 2003.

_____
JUDGE PRESIDING

**REQUESTED DEFINITION NO. _____**

**PJC 82.2    Survival Damages—Compensatory Damages**

"**FUNERAL AND BURIAL EXPENSES**" means the reasonable amount of expenses for funeral and burial for MANUEL CRUZ reasonably suitable to his station in life.

**ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____        Included in the Court's Charge.

_____        Refused.

_____        Modified, and as modified, Included in the Court's Charge.

SIGNED the _____ day of _____, 2003.

_____
JUDGE PRESIDING

**REQUESTED DEFINITION NO. _____**

**PJC 80.6B    Personal Injury Damages—Exemplary Damages— Causes of Action Accruing on or after September 1, 1995**

**"EXEMPLARY DAMAGES"** means any damages awarded as a penalty or by way of punishment.  Exemplary damages includes punitive damages.

**<u>ORDER</u>**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____        Included in the Court's Charge.

_____        Refused.

_____        Modified, and as modified, Included in the Court's Charge.

SIGNED the _____ day of _____, 2003.

_____
JUDGE PRESIDING

15

## REQUESTED DEFINITION NO._____

**PJC 71.7    Breach of Implied Warranty of Merchantability
(Tex.UCC § 2.34(B)(3))**

A **"DEFECT"** means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of lack of something necessary for adequacy.

## **ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____    Included in the Court's Charge.

_____    Refused.

_____    Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____
JUDGE PRESIDING

16

## REQUESTED DEFINITION NO. _____

**PJC 70.2      Proximate Cause—Products Liability**

"**PROXIMATE CAUSE**" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____      Included in the Court's Charge.

_____      Refused.

_____      Modified, and as modified, Included in the Court's Charge.

SIGNED the _____ day of _____, 2003.


_____
JUDGE PRESIDING

17

**REQUESTED DEFINITION NO. _____**

**PJC 70.1    Producing Cause**

"**PRODUCING CAUSE**" means an efficient, exciting, or contributing cause that, in a natural sequence, produces the [occurrence or injury], There may be more than one producing cause.

**ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____        Included in the Court's Charge.

_____        Refused.

_____        Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____

JUDGE PRESIDING

18

## REQUESTED DEFINITION NO. _____

§ 101.42

**"BURDEN OF PROOF"** When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

## **ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____    Included in the Court's Charge.

_____    Refused.

_____    Modified, and as modified, Included in the Court's Charge.

SIGNED the _____ day of _____, 2003.

_____
JUDGE PRESIDING

19

**REQUESTED DEFINITION NO. _____**

**§ 101.42        Direct and Circumstantial Evidence**

**"DIRECT EVIDENCE"** is direct proof of a fact, such as testimony by a witness about the witness said or hear or did.  "Circumstantial evidence"  is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  You are to decide how much weight to give any evidence.

**ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing DEFINITION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____        Included in the Court's Charge.

_____        Refused.

_____        Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____
JUDGE PRESIDING

20

## REQUESTED INSTRUCTION NO._____

You now have heard all the evidence, and it is my duty to instruct you concerning the law applicable to this case. I will read the instructions to you and send a copy with you to the jury room.

It is your duty as jurors to follow the law as I state it to you, and to apply that law to the facts as you find them from the evidence in the case. You are not to single out any one instruction alone or any group of instructions as stating the law. You must consider all the instructions as a whole. Neither of you are to be concerned with the wisdom of a rule of law stated by me.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be governed by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

## **ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing INSTRUCTION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____    Included in the Court's Charge.

_____    Refused.

_____    Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

                                    _____
                                    JUDGE PRESIDING

21

**REQUESTED INSTRUCTION NO._____**

§ 101.43      **Credibility of Witnesses**

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything witness says, part of it, or none of it. In considering the testimony of any witness, you may take into account many factors, including the witness' opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness' memory; the witness' appearance and manner while testifying; the witness' interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness' testimony; and the reasonableness of the witness' testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

**ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before

the presentation of the charge to the jury that the above and foregoing INSTRUCTION

was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____        Included in the Court's Charge.

_____        Refused.

_____        Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____
JUDGE PRESIDING

22

## REQUESTED INSTRUCTION NO._____

**§ 101.49      Ruling on Objections**

When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received into evidence.  If I sustain the objection, the question cannot be answered and the exhibit cannot be received into evidence.

If I sustain an objection to a question or the admission of an exhibit, you must ignore the question and must not guess what the answer to the question might have been. In addition, you must not consider evidence that I have ordered stricken from the record.

## **ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing INSTRUCTION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____          Included in the Court's Charge.

_____          Refused.

_____          Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____
JUDGE PRESIDING

### REQUESTED INSTRUCTION NO._____

### CONSIDERATION OF EVIDENCE

You must consider only the evidence in this case. However, you may draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. You may make such deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence you may consider. One is direct evidence-such as testimony of an eyewitness. The other is indirect or circumstantial evidence_the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence both direct and circumstantial.

Pattern Jury Instruction of the District Judges Association of the Fifth Circuit, Civil Cases, Instruction No. 2.18 (1999)

### ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing INSTRUCTION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____    Included in the Court's Charge.

_____    Refused.

_____    Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____
JUDGE PRESIDING

24

REQUESTED INSTRUCTION NO._____

**INFERENCES AND PRESUMPTION**

**§ 104.20 "Inferences" Defined**

You are to consider only the evidence in the case.   However, you are not limited to the statements of the witnesses.  In other words, you are not limited to what you see and hear as the witnesses testify.  You may draw from the facts that you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

**ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before

the presentation of the charge to the jury that the above and foregoing INSTRUCTION

was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____        Included in the Court's Charge.

_____        Refused.

_____        Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.


_____
JUDGE PRESIDING

25

## REQUESTED INSTRUCTION NO._____

### EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

1.    This charge may be elaborated on in the following manner:

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Pattern Jury Instruction of the District Judges Association of the Fifth Circuit, Civil Cases, Instruction No. 2.19 (1999)

### ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before

the presentation of the charge to the jury that the above and foregoing INSTRUCTION

was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____    Included in the Court's Charge.

_____    Refused.

_____    Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____
JUDGE PRESIDING

26

## GENERAL INSTRUCTIONS FOR CHARGE

**MEMBERS OF THE JURY:**

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have an opinion about the facts of this case.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of the may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make the deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider improperly finding the truth as to the facts in the case. One is direct evidence-such as testimony of an eyewitness. The other is indirect or circumstantial evidence-the proof of a chain of

27

circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field_he is called an expert witness_ is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testified regularly as an expert witness and his income.

When you retire to the jury room to deliberate on your Verdict, you may take [this charge with you as well as] exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. [You may now retire to the jury room to conduct your deliberations.]

Pattern Jury Instruction of the District Judges Association of the Fifth Circuit, Civil Cases, Instruction No. 3.1 (1999)


**See § 1201, Introduction to the Final Charge_Province of the Court and of the Jury.**

When you retire to the jury room to deliberate on your verdict, you may take [this charge with you as well as] exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during

28

the trial.  After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise direct by me.  You must never disclose to anyone not even to me, your numerical division on any question.

Pattern Jury Instruction of the District Judges Association of the Fifth Circuit, Civil Cases, Instruction No. 3.1 (1999)

**REQUESTED QUESTION NO. _____**

Did the negligence, if any, of those named below proximately cause the occurrence in question?

Answer "Yes" or "No" for each of the following:

a.      BRK BRANDS, INC.          _____

b.      MANUEL CRUZ               _____

**<u>ORDER</u>**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing QUESTION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____          Included in the Court's Charge.

_____          Refused.

_____          Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

                                    _____

                                    JUDGE PRESIDING

If, in answer to Question No. _____, you have found that the negligence of more than one of the persons named above proximately caused the occurrence, then answer Question No. _____. Otherwise, do not answer Question No. _____.

### REQUESTED QUESTION NO. _____

What percentage of the negligence that caused the occurrence do you find to be attributable to each of those found by you, in your answer to Question No. _____, to have been negligent?

The percentages you find must total 100 percent. The negligence attributable to a person named below is not necessarily measured by the number of acts or omissions found.

a.    BRK BRANDS, INC.        _____ %

b.    MANUEL CRUZ            _____ %


    Total                _____ %


### ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before

the presentation of the charge to the jury that the above and foregoing QUESTION was

presented to the Court for the inclusion in the Charge to the jury and the same was:

    _____        Included in the Court's Charge.

    _____        Refused.

    _____        Modified, and as modified, Included in the Court's Charge.

SIGNED the _____ day of _____, 2003.


                        _____
                        JUDGE PRESIDING

31

**REQUESTED QUESTION NO. _____**

Was there a manufacturing defect in the smoke alarm at the time it left the possession of BRK BRANDS, INC. that was a producing cause of the [occurrence or injury] in question?

> A "defect" means a condition of the product that renders it unreasonably dangerous. An "unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as the product's characteristics.

Answer "Yes" or "No".

Answer: _____

**<u>ORDER</u>**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing QUESTION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____    Included in the Court's Charge.

_____    Refused.

_____    Modified, and as modified, Included in the Court's Charge.

SIGNED the _____ day of _____, 2003.

_____
JUDGE PRESIDING

**REQUESTED QUESTION NO. _____**

**PJC 71.4B    Design Defect—Causes of Action Accruing on or after September 1, 1993**

Was there a design defect in the smoke alarm at the time it left the possession of BRK BRANDS, INC. that was a producing cause of the [occurrence or injury] in question?

A "design defect" is a condition of the product that renders its unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. For a design defect to exist there must have been a safer alternative design.

"Safer alternative design" means a product design other than the one actually used that in reasonably probability—

(1) would have prevented or significantly reduced the risk of the [occurrence or injury] in question without substantially impairing the product's utility and

(2) was economically and technologically feasible at the time the product left the control of BRK BRANDS, INC. by the application of existing or reasonably achievable scientific knowledge.

Answer "Yes" or "No."

Answer_____

**ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing QUESTION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____     Included in the Court's Charge.

_____     Refused.

_____     Modified, and as modified, Included in the Court's Charge.

SIGNED the _____ day of _____, 2003.


_____
JUDGE PRESIDING

34

**REQUESTED QUESTION NO. _____**

Was there a defect in the marketing of the smoke alarm at the time it left the possession of BRK BRANDS, INC. that was a producing cause of the [occurrence or injury] in question?

A "marketing defect" with respect to the product means the failure to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known or failure to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed.

"Adequate" warnings and instructions mean warnings and instructions given in a form that could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the products use; and the content of the warnings and instructions must be comprehensible to the average user and must convey a fair indication that the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent person.

An "unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product with the ordinary knowledge common to the community as to the product's characteristics.

Answer "Yes" or "No"

Answer: _____

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing QUESTION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____     Included in the Court's Charge.

_____     Refused.

35

_____        Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____
**JUDGE PRESIDING**

**REQUESTED QUESTION NO. _____**

What sum of money, if paid now in cash, would fairly and reasonably compensate IDALIA GARCIA and JOSE GARCIA for their damages, if any, resulting from the death of MANUEL CRUZ?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

a.    Pecuniary loss.

"Pecuniary loss" means the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that IDALIA GARCIA and JOSE GARCIA, in reasonable probability, would have received from MANUEL CRUZ had he lived.

b.    Loss of companionship and society.

"Loss of companionship and society" means the loss of the positive benefits flowing from the love, comfort, companionship, and society that IDALIA GARCIA and JOSE GARCIA, in reasonable probability, would have received from MANUEL CRUZ had he lived.

c.    Mental anguish.

"Mental anguish" means the emotional pain, torment, and suffering experienced by IDALIA GARCIA and JOSE GARCIA because of the death of MANUEL CRUZ.

In determining damages for elements *b* and *c*, you may consider the relationship between MANUEL CRUZ and his parents, their living arrangements, any extended absences from one another, the harmony of their family relations, and their common interests and activities. You are reminded that elements *b* and *c*, like the other elements of damages, are separate, and, in awarding damages for one element, you shall not include damages for the other.

Do not reduce the amounts, if any, in your answers because of the negligence, if any, of MANUEL CRUZ.

Answer, with respect to the elements listed above, in dollars and cents for damages, if any, that —

37

Were sustained in the past by

IDALIA GARCIA          Answer:_____

JOSE GARCIA            Answer:_____

In reasonable probability will
be sustained in the future by

IDALIA GARCIA          Answer:_____

JOSE GARCIA            Answer:_____

## **ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before

the presentation of the charge to the jury that the above and foregoing QUESTION was

presented to the Court for the inclusion in the Charge to the jury and the same was:

_____        Included in the Court's Charge.

_____        Refused.

_____        Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____
JUDGE PRESIDING

## REQUESTED QUESTION NO. _____

What sum of money, if any, should be assessed against BRK BRANDS, INC. and awarded to IDALIA GARCIA and JOSE GARCIA as exemplary damages for the death of MANUEL CRUZ?

"Exemplary damages" means any damages awarded as a penalty or by way of punishment. Exemplary damages includes punitive damages.

In determining the amount of exemplary damages, you shall consider evidence, if any, relating to —

a.    The nature of the wrong.

b.    The character of the conduct involved.

c.    The degree of culpability of the wrongdoer.

d.    The situation and sensibilities of the parties concerned.

e.    The extent to which such conduct offends a public sense of justice and propriety.

f.    The  net worth of  BRK BRANDS, INC.

Answer in dollars and cents, if any.

Answer:_____

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing QUESTION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____        Included in the Court's Charge.

39

_____        Refused.

_____        Modified, and as modified, Included in the Court's Charge.

SIGNED the _____ day of _____, 2003.


                                          _____
                                          JUDGE PRESIDING

**REQUESTED QUESTION NO. _____**

What sum of money would have fairly and reasonably compensated IDALIA GARCIA for —

a.    Pain mental anguish.

"Pain and mental anguish" means the conscious physical pain and emotional pain, torment, and suffering experienced by MANUEL CRUZ before his death as a result of the occurrence in question.

b.    Medical expenses.

"Medical expenses" means the reasonable expense of the necessary *medical* and *hospital care* received by MANUEL CRUZ for treatment of injuries sustained by him as a result of the occurrence in question.

c.    Funeral and burial expenses.

"Funeral and burial expenses" means the reasonable amount of expenses for funeral and burial for MANUEL CRUZ reasonably suitable to his station in life.

Do not reduce the amount, if any, in your answer because of the negligence, if any, of MANUEL CRUZ.

Answer in dollars and cents for damages, if any.

Answer: _____

## **ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before

the presentation of the charge to the jury that the above and foregoing QUESTION was

presented to the Court for the inclusion in the Charge to the jury and the same was:

_____        Included in the Court's Charge.

_____        Refused.

41

_____    Modified, and as modified, Included in the Court's Charge.


SIGNED the _____day of _____, 2003.


                                    _____
                                    JUDGE PRESIDING

**REQUESTED QUESTION NO. _____**

What sum of money, if any, should be assessed against BRK BRANDS, INC. and awarded to IDALIA GARCIA as exemplary damages for the conduct found in response to Question _____[question authorizing potential recovery of punitive damages]?

> "Exemplary damages" means any damages awarded as a penalty or by way of punishment. Exemplary damages includes punitive damages.

In determining the amount of exemplary damages you should consider evidence, if any, relating to:

a.    The nature of the wrong.

b.    The character of the conduct involved.

c.    The degree of culpability of the wrongdoer.

d.    The situation and sensibilities of the parties concerned.

e.    The extent to which such conduct offends a public sense of justice and propriety.

f.    The net worth of BRK BRANDS, INC.

Answer in dollars and cents, if any.

Answer:_____


**<u>ORDER</u>**

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing QUESTION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____        Included in the Court's Charge.

43

_____          Refused.

_____          Modified, and as modified, Included in the Court's Charge.


SIGNED the _____day of _____, 2003.


                                        _____
                                        JUDGE PRESIDING

## REQUESTED QUESTION NO. _____

Was BRK BRANDS, INC. part of a conspiracy that damaged MANUEL CRUZ?

To be part of a conspiracy, BRK BRANDS, INC. and another person or person must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in the damages to MANUEL CRUZ. One or more person involved in the conspiracy must have performed some act or acts to further the conspiracy.

Answer:_____

## ORDER

BE IT REMEMBERED that on the date of the signing of this Order and before the presentation of the charge to the jury that the above and foregoing QUESTION was presented to the Court for the inclusion in the Charge to the jury and the same was:

_____    Included in the Court's Charge.

_____    Refused.

_____    Modified, and as modified, Included in the Court's Charge.

SIGNED the _____ day of _____, 2003.

_____
JUDGE PRESIDING

45

**REQUESTED QUESTION NO. _____**

Was the smoke alarm supplied by BRK BRANDS, INC. unfit for the ordinary purposes for which such smoke alarms are used because of a defect, and, if so, was such unfit condition a proximate cause of the occurrence or injury in question?

A "defect" means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of lack of something necessary for adequacy.

Answer "Yes" or "No."

Answer:_____

**ORDER**

BE IT REMEMBERED that on the date of the signing of this Order and before

the presentation of the charge to the jury that the above and foregoing QUESTION was

presented to the Court for the inclusion in the Charge to the jury and the same was:

_____    Included in the Court's Charge.

_____    Refused.

_____    Modified, and as modified, Included in the Court's Charge.

SIGNED the _____day of _____, 2003.

_____
JUDGE PRESIDING

# Exhibit C

UNITED STATES DISTRICT COURT § SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JOSE GARCIA, Individually, IDALIA GARCIA, Individually and as Representatives of the Estate of MANUEL CRUZ and CYNTHIA COX as next friend of Brittany Cox, Plaintiff<br><br>vs.<br><br><br><br>**List of:**<br>**Cynthia Cox ANF of Brittany Cox** | CASE NO. B-98-186<br><br><br><br>**EXHIBIT LIST** |

PAGE 1 OF ____ PAGES

| EX. | DESCRIPTION | ADM. | EXD. |
|---|---|---|---|
| 1. | Deposition(s) of Jesse Aronstein with attachments and/or Video and articles compiled by Mr. Aronstein | | |
| 2. | Deposition(s) of Morris Cranmer with attachments and/or Video and articles compiled by Mr. Aronstein | | |
| 3. | Deposition of Douglas Lee Holmes with attachments and/or Video and articles compiled by Mr. Aronstein | | |
| 4. | Deposition Terry Dees with attachments and/or Video and articles compiled by Mr. Aronstein | | |

5.    Deposition of E. Wayne McCain
      with attachments and/or Video
      and articles compiled by Mr. Aronstein

6.    Deposition of B. Don Russell
      with attachments and/or Video
      and articles compiled by Mr. Aronstein

7.    Deposition(s) of Michael Schulz
      with attachments and/or Video
      and articles compiled by Mr. Aronstein

8.    Autopsy and Affidavit of Dewitt S. Davenport, M.D.

9.    Fire Incident Study, National Smoke Detector Project
      CPSC (January 1995)

10.   National Fire Alarm Code Handbook (NFPA 72)
      Third Edition

11.   Smoke Detector Operability Survey,
      Report of Findings CPSC (October 1994)

12.   "Studies Assess Performance of Residential Detectors"
      (NFPA 87) January/February 1993 Edition

13.   "Study of Deterioration of Separable Electrical
      Contacts in Smoke Detectors," (dated 11/16/94)

14.  Underwriters Laboratory Standard 217

15.  Deposition(s) of Douglas Holmes
     with attachments and/or Video
     and articles compiled by Mr. Holmes

16.  Deposition of Thomas Eager
     with attachments and/or Video
     and articles compiled by Mr. Eager

17.  Deposition of Richard Custer
     with attachments and/or Video
     and articles compiled by Mr. Custer

18.  Deposition of Cynthia Cox
     with attachments and/or Video

19.  Deposition of Elmer Wayne McCain, P.E.
     with attachments and/or Video
     and articles compiled by Mr. McCain

20.  Deposition of Jose Guadalupe Garcia
     with attachments and/or Video

21.  Deposition of Oralia Idalia Garcia
     with attachments and/or Video

22.  Deposition of Reed (Mac) McClintock
     with attachments and/or Video
     and articles compiled by Mr. McClintock

23.  Deposition of Nick Bellavia
     with attachments and/or Video

24.   Deposition of Robert J. Ross
      with attachments and/or Video
      and articles compiled by Mr. Ross

25.   Deposition of Nick Bellavia
      with attachments and/or Video

26.   Deposition of Lori Streit
      with attachments and/or Video

27.   Deposition of Alton Patton
      with attachments and/or Video

28.   Deposition of Andrew Armstrong
      with attachments and/or Video

29.   Deposition of Richard Custer
      with attachments and/or Video

30.   Deposition of Mark Devine
      with attachments and/or Video

31.   Deposition of Carlo Cascos
      with attachments and/or Video

32.   Deposition of Thomas Eager
      with attachments and/or Video

33.   Witness Statement of Kenya E. Sosa

34.   Affidavit of Bennie Ochoa

35. Affidavit of Aaron Garcia

36. Photographs produced in discovery

37. Newspaper Article

38. First Alert Article entitled
    "Fire Safety Information"

39. Complete Product Catalog

40. Harlingen EMS Records

41. Valley Baptist Medical Center - Pathology Records

42. Cameron County Sheriff's Dept. Records

43. Records from Valley Baptist Medical Center

44. Cameron County Fire Marshall Records

45. City of Los Fresnos EMS Records

46. Records from San Benito Fire Dept.

47. Incident Records from Justice of the
    Peace, Bennie Ochoa, III

48. Funeral Records for Garza-Elizondo Funeral Home

49.    Thomae Garza Funeral Home Records

50.    Forensic Toxicologists Records

51.    Deposition of David Minnis

52.    Interview & Videotape of Emma Lombruso

53.    Medical Illustrations of Manuel Cruz's Carbon
       Monoxide Poisoning

54.    U.S. Life Tables

55.    Death Certificate

56.    Analysis of the Smoke Detectors by Mike Pish

57.    BRK Catalog

58.    First Alert Safety Information

59.    Martin Industries Heater/Model #V24301-MS-2

60.    The National Smoke Detector Project

61.    Smoke Detector Operability Survey Report of Findings

62. Fire Incident Study National Smoke Detector Project

63. 10/28/00 ltr from CPSC with attachments related to CPSC Investigations

64. Incident Report

65. First Alert-Safety Education Center

66. Fire Incident Study Sample Analysis

67. Preliminary Fire Dynamics Report (Introspect)

68. Photographs of boiler

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE GARCIA, INDIVIDUALLY | § | |
| AND AS REPRESENTATIVE | § | |
| OF THE ESTATE OF MANUEL | § | |
| CRUZ, IDALIA GARCIA, | § | |
| INDIVIDUALLY; and CYNTHIA | § | |
| COX AS NEXT BEST FRIEND OF | § | CIVIL ACTION |
| BRITTANY COX | § | |
| | § | NO. B-98-186 |
| VS. | § | |
| | § | |
| BRK BRANDS, INC. | § | |

## PLAINTIFFS' MOTION IN LIMINE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, RAY R. MARCHAN, Attorney for Plaintiff, CYNTHIA COX AS NEXT BEST FRIEND OF BRITTANY COX, and before commencement of the voir dire examination of the jury panel, respectfully moves that counsel for the defense and through such counsel, any and all defense witnesses be instructed by appropriate order of this Honorable Court to refrain from making any mention or interrogation directly or indirectly, in any manner whatsoever concerning any of the matters herein set forth, without first approaching the bench and obtaining a ruling from the Court out of the presence and out of the hearing of all prospective jurors and jurors ultimately selected in this cause in regard to any alleged theory of admissibility of such matters, to wit:

I.

That PLAINTIFF received, have been entitled to receive, will receive, or will become entitled to receive, or could have applied and/or received

any benefits  of  any kind  or character from a  collateral source, including but not limited to such collateral  source  benefits  as  the following:

(a)  Services  furnished  without  charge.  City of Fort Worth v. Barlow, 313 S.W. 2d; 68 A.L.R. 2d 876.

(b) Benefits from collateral insurance coverage.  American Cooperage Co. v. Clemons, 364 S.W.2d 705; 13 A.L.R. 355.

(d)  Compensation for time not actually worked.  Texas Central Ry. Co. v. Cameron, 149 S.W. 709; Missouri Pacific Railroad Co. v. Jarrard, 65 Tex. 560; Houston Belt & Terminal Ry. Co. v. Johansen, 107 Tex. 336, 179 S.W.853.

(e)  Social Security or any kind of pension benefits.  Texas Cities Gas Co. v. Dickens, 156 S.W.2d 1010, aff'd 140 Tex. 133, 168 S.W.2d 208; Mosley v. Texas & Pacific Ry. Co., 191 S.W.2d 55; Missouri Pacific Railroad Co. v. Wellingham, 348 S.W.2d 764; A. H. Bull Steamship Co. v. Ligon, 285  F.2d 936, 75 A.L.R. 885.

( f)  Worker's Compensation or similar benefits.  Meyer v. Thorns, 143 Tex. 502, 186 S.W.2d 801; 77 A.L.R. 2d 1158; Tipton v. Scony Mobil Oil Co., 315 F.2d 660.

II.

The Plaintiff's personal habits, including his temper, sexual, or drinking habits, since there is no allegation that such habits contributed in any way to the occurrence made the basis of this  suit, or whether Plaintiff has received personal criticism for any job performance in any way not specifically related to the occurrence in question.  McCarty v. Gappelberg, 273 S.W. 2d 943 (Civ. App. - Fort Worth 1954, ref. n.r.e.).

III.

That any recovery by the Plaintiffs either would or would not be subject to federal income  taxation or any other form of taxation.  MK&T Railroad v. McFerrin, 291 S.W. 2d 931, (Tex.  Sup.  Ct. 1965).

### IV.

Any crimes or offenses or allegations against Plaintiffs and/or the witnesses not involving moral turpitude or which are remote, or if involving moral turpitude only those which resulted in felony convictions, for the reason that same would be immaterial and irrelevant to any issue in this cause and would be incurably prejudicial.

### V.

The date that Plaintiff consulted or retained her attorney for the reason that same would be immaterial and irrelevant to any issue in this cause any matters or transactions between plaintiff and her attorney and/or any matters which plaintiff's attorney has performed services in plaintiff's behalf. That is, any actions done in behalf of Plaintiffs by their attorney are to be considered acts of the plaintiff and not identified to the jury as acts of plaintiff's counsel.

### VI.

From eliciting or permitting lay witnesses to testify as to matters not within their personal knowledge including speculation and opinions.  Texas Rules of Evidence 602.  Texas & Pac. Fy. v. Reid, Tex. 439, 449-50, 31 S.W. 1058, 1061 (1895).

### VII.

Any hearsay statements by any persons who were witnesses to the accident or to the circumstances or events surrounding the accident.

### VIII.

Plaintiff requests that all counsel further be instructed not to tender, read from, or refer to any ex parte statement or report of any person not then and there present in Court to testify and to be cross-examined by counsel for Movant, and that Defendant's counsel be instructed not to suggest to the jury, by argument or otherwise, what would have been the testimony of any witness not actually called.  Texas Power and Light Co. v. Walker, 559 S.W.2d 403 (Tex.Civ.App.-Texarkana 1977, no writ); Sanders v. St. Paul Fire & Marine Ins. Co., 249 S.W.2d 516 (Tex.Civ.App.-Texarkana 1968, writ ref'd n.r.e.).

IX.

Should the Defendant wish to introduce any photographs, diagrams, graphs, charts, recordings or motion picture files into evidence, that the same be tendered to Court and opposing counsel, outside the presence of the Jury, and shown or exhibited to determine their relevance and suitability for introduction into evidence prior to and before informing the jury as to their existence or their tender into evidence by the Plaintiff.

X.

That Defendant be instructed not to make demands or requests before the jury for matters found or contained in Movant's file, which would include statements, pleadings, photographs, reports and other documents, nor to demand or request further or additional examinations, physical demonstrations, or other requests during the course of the trial in the presence of the jury.

XI.

Any evidence by experts who were not identified as testifying experts in responses to interrogatories and not designated by the time set forth in the pretrial order or local rule. Alldread v. City of Grenada, 988 F.2d 1425, 1435-36 (5th Cir. 1993).

XII.

Any evidence by an expert witness that is outside the scope of the expert's written opinion produced during pretrial discovery.

XIII.

Any evidence supporting an issue that was not contained in the final pretrial order. Life Care Centers, Inc. v. Charles Town Assocs., 79 F.3d 496, 507 (6th Cir. 1996).

XIV.

Any evidence defendant did not produce in discovery. Defendant should not be permitted to present any witness it did not name in their answers to interrogatories, or any evidence they did not produce in response to any discovery.

## XV.

Any attempt to elicit testimony from plaintiff about communications with their attorneys.  Such communications are privileged.

## XVI.

References to the filing of this Motion In Limine or to  any  ruling by the Court in response to this motion, such references are inherently prejudicial in that they suggest or infer that the movant has sought to prohibit proof or that the court has excluded proof  of  matters  damaging to movant's case.

## XVII.

That Plaintiff and/or the witnesses and/or parties have (a) had unrelated prior or subsequent claims, suits, or settlements, or the amounts thereof, or (b) ever given sworn testimony before in other actions. In this connection, Plaintiff do not seek to preclude the Defendants from showing any unrelated injury and the effects thereof to the extent material to the lawsuit, and based upon reasonable medical probability, but objects only to a showing of unrelated claims, suits, or settlements for the reason that the same would be immaterial and irrelevant to any issue in this cause and would be incurably prejudicial even though objections were timely made and sustained.  St. Paul Fire & Marine Insurance v. Murphee, 357 S.W.2d 744, (Tex.1962).

## XVIII.

That the plaintiff in this lawsuit is looking for someone to sue with "deep pockets" because one of the defendant might not have so much money available to satisfy a judgment as some other defendant herein.

## XIX.

That the plaintiff and/or their attorneys will receive any punitive damages awarded and/or that they would get a tremendous windfall by the award of punitive damages.  Such comments are impermissible and prejudicial comments on the effect of jury answers.

XX.

Through verbal remark, questioning or attempted introduction of documentary evidence of anything relating to the character of any parties or witnesses until such time as the door has been opened for such evidence and counsel has approached the bench outside the hearing of the Jury and requested permission to pursue the line of evidence. Texas Rules of Civil Evidence 401, 405, 606, 608 and 609; see also Crumpton v. Confederation Life Ins. Co., 672 F.2d 1248, 1251-1253 (5th Cir. 1982), rehearing denied, 679 F.2d 250 (1982).

XXI.

Reference to or quotation from prior pleadings of any party that have now been abandoned. Additionally, any reference to any other party that may have been in this action and which are not now in this action either because of dismissals or releases.

XXII.

Any reference to or mention of jury verdicts in other cases in which Ray R. Marchan, Mikal Watts, Eddington & Associates, L.L.P., or Watts Law Firm, L.L.P. or any of their lawyers have been involved, or the size of any jury verdict in any such case.

XXIII.

Any inquiry to any of the veniremen whether they have seen any of the lawyers from Eddington & Associates, L.L.P., or Watts Law Firm, L.L.P., on television, as such inquiry is calculated only to create a misleading impression that plaintiff's counsels advertise on TV, when it is untrue and would create prejudice against plaintiff's counsel.

XXIV.

Sidebar comments or inferences that the editing of deposition testimony is improper.

## XXV.

Sidebar comments or inferences that videotaped depositions are improper or for purposes of intimidation.

## XXVI.

Sidebar comments that deposition testimony of persons present in the courtroom is improper or unnecessary.

## XXVII.

Sidebar comments about who may have noticed a particular deposition or who may have been asking particular questions during a deposition, as these matters are irrelevant and serve only to prejudice and confuse the jury.

## XXVIII.

Any defense attorney's personal opinion about the justness of the plaintiff's case, the credibility of any witnesses, or any other of the defense counsel's personal experiences or opinions from any source whatsoever. Texas Disciplinary Rules of Professional Conduct, Rule 3.04(c)(3).

## XXIX.

Sidebar comments or inferences that use of videotape equipment or computers is a "sideshow", "star wars", or other type high tech production.

## XXX.

Impeachment of the plaintiff on any matter which is collateral to this lawsuit and which is not relevant or germane to the plaintiff's claims or defenses alleged by the defendants, without first demonstrating to the satisfaction of the court a predicate for the relevancy of such matters.

## XXXI.

Not to mention that Plaintiff's attorneys and/or Plaintiff sued large corporations such as defendants without having a legitimate basis for such lawsuit, or that such lawsuits filed by other plaintiffs against the defendants have been dismissed for any reasons, or resulted in any jury verdicts adverse to the Plaintiffs who filed the lawsuit.

XXXII.

Any accidents or injuries, claims, or settlements not related to the injuries made the basis of this suit.

XXXIII.

The financial affairs, wealth, or status of Plaintiffs. Such evidence is not relevant to any issues to this lawsuit.

XXXIV.

Any reference to the use of any assumed name or aliases used by any party or witness not relevant to any material fact in this action.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Motion be granted and sustained by appropriate order of this Honorable Court.

Respectfully submitted this the _____21_____ day of February, 2003.

WATTS LAW FIRM, L.L.P.
1926 E. Elizabeth
Brownsville, Texas  78520
(956)  544-0500

_____
RAY R. MARCHAN


CERTIFICATE OF SERVICE

I hereby certify that on this the _____21_____ day of February, 2003, a true and correct copy of the foregoing instrument was this forwarded, either by hand-delivery or by certified mail, return receipt requested, to all counsel of record.

_____
RAY R. MARCHAN

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

JOSE GARCIA, INDIVIDUALLY            §
AND AS REPRESENTATIVE                §
OF THE ESTATE OF MANUEL              §
CRUZ, IDALIA GARCIA,                 §
INDIVIDUALLY; and CYNTHIA            §
COX AS NEXT BEST FRIEND OF           §     CIVIL ACTION
BRITTANY COX                         §
                                     §     NO. B-98-186
VS.                                  §
                                     §
BRK BRANDS, INC.                     §

## ORDER ON PLAINTIFF'S MOTION IN LIMINE

CAME ON TO BE CONSIDERED, this the_____ day of _____, 2003, Plaintiff's Motion in Limine and after hearing argument of counsel and review of the evidence, the Court finds the following:

| 1. | GRANT | _____ | DENY |
| 2. | GRANT | _____ | DENY |
| 3. | GRANT | _____ | DENY |
| 4. | GRANT | _____ | DENY |
| 5. | GRANT | _____ | DENY |
| 6. | GRANT | _____ | DENY |
| 7. | GRANT | _____ | DENY |
| 8. | GRANT | _____ | DENY |
| 9. | GRANT | _____ | DENY |
| 10. | GRANT | _____ | DENY |
| 11. | GRANT | _____ | DENY |
| 12. | GRANT | _____ | DENY |
| 13. | GRANT | _____ | DENY |
| 15. | GRANT | _____ | DENY |
| 16. | GRANT | _____ | DENY |
| 17. | GRANT | _____ | DENY |
| 18. | GRANT | _____ | DENY |
| 19. | GRANT | _____ | DENY |
| 20. | GRANT | _____ | DENY |
| 21. | GRANT | _____ | DENY |

22. GRANT    _____    DENY
23. GRANT    _____    DENY
24. GRANT    _____    DENY
25. GRANT    _____    DENY
26. GRANT    _____    DENY
27. GRANT    _____    DENY
28. GRANT    _____    DENY
29. GRANT    _____    DENY
30. GRANT    _____    DENY
31. GRANT    _____    DENY
32. GRANT    _____    DENY
33. GRANT    _____    DENY
34. GRANT    _____    DENY

SIGNED this the_____ day of February, 2003.


_____
JUDGE PRESIDING